IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br> *Plaintiff*,<br><br> v.<br><br>FOOD AND DRUG ADMINISTRATION; ROBERT M. CALIFF, M.D., in his official capacity as Commissioner of Food and Drugs; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services,<br><br> *Defendants*. | Civil Action No. 24-cv-484 |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PUTATIVE INTERVENOR
LIQUIDIA TECHNOLOGIES, INC.'S MOTION TO INTERVENE

## Table of Contents

Introduction ................................................................................ 1

Background ............................................................................... 1

Argument .................................................................................. 8

    A.    Liquidia is entitled to intervene as of right. ..................... 8

        1.    Liquidia's motion is timely. .......................................... 9

        2.    Liquidia has a strong interest in the subject of the action, and the requested disposition will impede Liquidia's ability to protect its interests. ................................................................. 9

        3.    The FDA does not represent Liquidia's interests. .... 11

        4.    Liquidia has Article III standing. ............................. 12

    B.    Alternatively, permissive intervention is appropriate. ......................................................................... 13

Conclusion .............................................................................. 14

# Table of Authorities

Cases

*Apotex, Inc. v. FDA*,
  508 F. Supp. 2d 78 (D.D.C 2007) .................................................................................... 10

*Appleton v. FDA*,
  310 F. Supp. 2d 194 (D.D.C. 2004) ..................................................................................... 9

*Avadel CNS Pharms., LLC v. Becerra*,
  638 F. Supp. 3d 23 (D.D.C. 2022) ....................................................................................... 8

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
  527 F.3d 1278 (Fed. Cir. 2008) .......................................................................................... 13

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) ...................................................................................... 11, 12

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ..................................................................................*passim*

*Honeywell Int'l Inc. v. United States*,
  71 Fed. Cl. 759 (2006) ....................................................................................................... 10

*Jones v. Prince George's Cty.*,
  348 F.3d 1014 (D.C. Cir. 2003) ........................................................................................... 8

*Mass. Sch. of L. at Andover, Inc. v. United States*,
  118 F.3d 776 (D.C. Cir. 1997) ........................................................................................... 14

*Melinta Therapeutics, LLC v. U.S. Food & Drug Admin.*,
  No. CV 22-2190 (RC), 2022 WL 6100188 (D.D.C. Oct. 7, 2022) ............................................ 8

*Military Toxics Project v. EPA*,
  146 F.3d 948 (D.C. Cir. 1998) ........................................................................................... 12

*Mova Pharm. Corp. v. Shalala*,
  140 F.3d 1060 (D.C. Cir. 1998) ........................................................................................... 9

*Mylan Pharms. Inc. v. Bayer Intell. Prop. GmbH*,
  No. CV 23-556-RGA, 2024 WL 359468 (D. Del. Jan. 31, 2024) ................................... 10, 11

*Nat. Res. Def. Council, Inc. v. EPA,*
   99 F.R.D. 607 (D.D.C. 1983)..................................................................................... 10

*Otsuka Pharm. Co. v. Burwell,*
   302 F. Supp. 3d 375 (D.D.C. 2016) ............................................................................ 8

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) .................................................................................................. 12

*Textile Workers Union of Am., CIO v. Allendale Co.,*
   226 F.2d 765 (D.C. Cir. 1955) .................................................................................. 14

*The Wilderness Soc'y v. Babbitt,*
   104 F. Supp. 2d 10 (D.D.C. 2000) .............................................................................. 9

*Trbovich v. United Mine Workers of Am.,*
   404 U.S. 528 (1972) .................................................................................................. 11

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
   74 F.4th 1360 (Fed. Cir. 2023) ................................................................................... 4

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
   No. 2023-1805, 2023 WL 8794633 (Fed. Cir. Dec. 20, 2023) ................................... 4

*United Therapeutics Corporation v. Liquidia Techns., Inc.,*
   No. 1:23-CV-00975-RGA (Jan. 22, 2024) .................................................................. 5

*United Therapeutics Corporation v. Liquidia Techs., Inc.,*
   No. 1:20-CV-00755 (Dec. 28, 2021) ..................................................................... 1, 4

*Veloxis Pharm., Inc. v. FDA,*
   109 F. Supp. 3d 104 (D.D.C. 2015) ............................................................................ 2

*Wildearth Guardians v. Salazar,*
   272 F.R.D. 4 (D.D.C. 2010)........................................................................................ 9

Statutes

21 U.S.C. § 355(b)(2) ........................................................................................................ 1

21 U.S.C. § 355(c)(3)(C) .......................................................................................... 3, 5, 7

21 U.S.C. § 355(c)(3)(E)(iv) ............................................................................................. 4

35 U.S.C. § 271(e)(4)(A) .................................................................................................. 6

## I. Introduction

In this Administrative Procedure Act ("APA") action, United Therapeutics Corporation ("UTC") sues federal officers and agencies, seeking equitable and declaratory relief concerning the Food and Drug Administration's ("FDA's") purported decision to permit Liquidia Technologies, Inc. ("Liquidia") to amend a new drug application ("NDA") that has been pending and under FDA review for four years. Under Federal Rule of Civil Procedure 24(a), Liquidia indisputably has the right to intervene in this case: UTC complains about *Liquidia*'s amendment to *Liquidia*'s application for approval of *Liquidia*'s product; and UTC seeks relief that would force *Liquidia* to make additional submissions to the FDA and thereby delay approval of *Liquidia's* application. *See* Compl. p. 33. Whatever interest UTC may have in Liquidia's NDA—Liquidia will argue that UTC has none—that interest is far more attenuated than Liquidia's interest. At the very least, the Court should permit Liquidia to intervene under Federal Rule of Civil Procedure 24(b).[1]

## II. Background

In January 2020, Liquidia submitted an NDA to the FDA pursuant to Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(b)(2). *See* Compl. ¶ 5. NDAs submitted under Section 505(b)(2) are different from NDAs submitted under Section 505(b)(1) and from Abbreviated New Drug Applications submitted under Section 505(j). *See* Compl. ¶¶ 23, 25. Section 505(b)(2) NDAs must

---

[1]   Pursuant to Local Civil Rule 7(m), counsel for Liquidia has contacted counsel for UTC and the FDA regarding this motion. The FDA takes no position on Liquidia's motion, and UTC does not oppose Liquidia's motion.

1

demonstrate safety and efficacy of the proposed drug and may rely on studies, including clinical studies, conducted by others for which the applicant does not otherwise have a right of reference. *See Veloxis Pharm., Inc. v. FDA*, 109 F. Supp. 3d 104, 108–09 (D.D.C. 2015). Medical products marketed pursuant to 505(b)(2) NDAs provide patients with innovative alternatives to existing products, frequently providing important contributions to patient care.

Liquidia's NDA originally sought FDA approval to market a novel formulation of treprostinil inhalation powder (given the proposed brand name YUTREPIA™) for the treatment of one indication, pulmonary arterial hypertension ("PAH"), an indication for which UTC has provided the dominant treatments since 2002. *See* Compl. ¶ 5. Liquidia's NDA established the safety and efficacy of its product for this indication by relying, in part, on FDA's finding of safety and efficacy of UTC's TYVASO™, a solution of treprostinil that is administered through a nebulizer and originally approved for PAH. *See* Compl. ¶¶ 25, 38. In accordance with statutory requirements, Liquidia's NDA contained "Paragraph IV certifications," expressing Liquidia's view that YUTREPIA will not infringe patents listed in the FDA's Orange Book as covering TYVASO.[2] *See* Compl. ¶ 45–47. After receiving notice of Liquidia's Paragraph IV certifications, UTC sued Liquidia in the District of Delaware, alleging

---

[2] The relevant patents are U.S. Patent Nos. 9,339,507 ("'507 patent"), 9,358,240 ("'240 patent"), 9,593,066 ("'066 patent"), and 9,604,901 ("'901 patent"), and 10,716,793 ("'793 patent"). The '793 patent was not listed in the Orange Book at the time of the original submission of the YUTREPIA NDA, yet Liquidia nevertheless provided Paragraph IV certifications to this patent after its listing. *See* Compl. ¶ 46.

2

that YUTREPIA will infringe three of UTC's patents—the '066, '901, and '793 patents. *See* Compl. ¶ 49.

Ordinarily, the FDA's approval of a Section 505(b)(2) NDA "shall be made effective *immediately*" upon completion of its review. 21 U.S.C. § 355(c)(3)(C) (emphasis added). But if an infringement action is filed within 45 days of receiving a Paragraph IV notice, and if the subject of the action is one or more patents listed in the Orange Book "before the date on which the [NDA] (excluding an amendment or supplement to the application) was submitted," "the approval may be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the [Paragraph IV] notice … or such shorter or longer period as the court may order[.]" *Id.* Because UTC's infringement action was filed within the 45-day period and because it alleged infringement of two patents (the '066 and '901 patents) listed in the Orange Book before Liquidia filed its NDA, the FDA declined to issue an immediately effective approval of Liquidia's NDA. Instead, after finding that Liquidia's NDA satisfied all other relevant statutory and regulatory requirements, including the requirement to establish safety and effectiveness, the FDA issued a *tentative* approval, to become effective after either a 30-month period, the conclusion of the patent litigation, or the expiration of the patents. *See* Compl. ¶ 48.

Over the course of 2022 and 2023, Liquidia prevailed in the infringement litigation. Most of the claims of the '066 patent and all of the claims of the '793 patent were invalidated. Liquidia also was held not to infringe the valid claims of the '066

3

patent, and UTC stipulated that Liquidia did not infringe any claims of the '901 patent. *See* Compl. ¶¶ 49.[3]

While the litigation was still ongoing, UTC submitted a supplement to its NDA for TYVASO and obtained FDA approval to add the treatment of pulmonary hypertension associated with interstitial lung disease (PH-ILD) to improve exercise ability to the label for TYVASO. *See* Compl. ¶¶ 40, 42. In connection with this approval, UTC obtained a three-year market exclusivity, relating to the PH-ILD indication, which expires on March 31, 2024. *See* Compl. ¶ 42; *see also* 21 U.S.C. § 355(c)(3)(E)(iv).

Following TYVASO's approval for PH-ILD, Liquidia submitted an amendment to its tentatively approved NDA for YUTREPIA, seeking to add the PH-ILD indication to the label for YUTREPIA. Liquidia submitted this amendment on July 24, 2023. The amendment included additional Paragraph IV certifications, expressing Liquidia's view that marketing YUTREPIA for PH-ILD will not infringe six patents that UTC had listed in the Orange Book before July 24, 2023.[4] *See* Compl. ¶ 51.

On September 5, 2023, within 45 days of receiving notice of these new Paragraph IV certifications, UTC filed a new infringement action against Liquidia. UTC alleged that marketing YUTREPIA for PH-ILD would infringe a single patent, the

---

[3] *See also* Stipulation of Partial Judgment of Non-Infringement by United Therapeutics Corporation, *United Therapeutics Corporation v. Liquidia Techs., Inc.*, No. 1:20-CV-00755 (Dec. 28, 2021); *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360 (Fed. Cir. 2023), *cert. denied*, No. 23-804, 2024 WL 675262 (U.S. Feb. 20, 2024); *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 2023-1805, 2023 WL 8794633 (Fed. Cir. Dec. 20, 2023).

[4] The relevant patents are the '507, '240, '066, '901, '793 patents and U.S. Patent No. 10,376,525 ("'525 patent").

4

'793 patent—a patent that the Patent Trial and Appeal Board had, at that time, already invalidated (a decision that the Federal Circuit would soon affirm). *See* Compl. ¶¶ 49, 53. Two months into this second round of infringement litigation, on November 28, 2023, UTC was issued a new patent related to PH-ILD, U.S. Patent No. 11,826,327 ("'327 patent"), and promptly amended its complaint to allege that marketing YUTREPIA for PH-ILD would infringe that patent.[5] *See* Compl. ¶ 57. Two months after that, on January 22, 2024, UTC voluntarily dismissed its infringement claims regarding the '793 patent after the Federal Circuit affirmed that patent's total invalidation.[6] As a result, the only patent at issue in UTC's pending infringement action is the '327 patent, which was issued *after* Liquidia filed its original NDA for YUTREPIA, and even *after* Liquidia amended its NDA to add PH-ILD. *See* Compl. ¶ 58.

Under the Federal Food, Drug, and Cosmetic Act, UTC's pending infringement action could not trigger a delay of the FDA's approval of Liquidia's NDA. The statutory provision that allows the FDA to delay an NDA's effective date for 30 months is triggered only by infringement actions based on patents listed in the Orange Book "before the date on which the application (*excluding an amendment or supplement to the application*) was submitted." 21 U.S.C. § 355(c)(3)(C) (emphasis added). UTC did not list the '327 patent before Liquidia's NDA; indeed, UTC did not

---

[5] Similarly, UTC's U.S. Patent No. 11,723,887 ("'887 patent") was issued after Liquidia submitted its amendment to its NDA; however, UTC has not included the '887 patent in its second round of infringement litigation.

[6] *See* Stipulation and Proposed Order of Partial Dismissal Without Prejudice by United Therapeutics Corporation (ECF 16), *United Therapeutics Corporation v. Liquidia Techns., Inc.*, No. 1:23-CV-00975-RGA (Jan. 22, 2024).

5

even list the '327 patent before Liquidia's amendment to its NDA. So, while UTC is allowed to file infringement claims based on the '327 patent without regard to when the patent was issued or listed, *see* 35 U.S.C. § 271(e)(4)(A), the FDA's potential approval of Liquidia's amended NDA cannot be delayed by UTC's pending infringement action.[7]

Now UTC, facing its many failed allegations of patent infringement and the imminent expiration of its three-year market exclusivity relating to PH-ILD, is trying one last time to prevent the FDA from issuing an immediately effective approval of Liquidia's amended NDA. In late December 2023, more than five months *after* Liquidia submitted its amendment and sent UTC new Paragraph IV notices (July 24), more than three months *after* UTC responded by suing Liquidia for infringement (September 5), more than three months *after* the FDA accepted the amendment for substantive review (September 25),[8] and more than one month *after* UTC amended its complaint to allege infringement of the '327 patent (November 30), UTC sent a letter to the FDA, claiming that Liquidia's submission of the amendment was improper and demanding that the FDA reject the amendment. *See* Compl. ¶ 76. UTC argues that, in light of nonbinding guidance the FDA issued decades ago (which UTC discussed throughout its complaint and referred to as the Bundling Rule, but which, in Liquidia's view, has been superseded in relevant part),

---

[7] The '793 patent, which was the original subject of UTC's second infringement action, also did not trigger the 30-month stay provision because, while UTC listed that patent before the submission of Liquidia's amendment, UTC had not listed that patent before the submission of Liquidia's original NDA. *See* Compl. ¶ 74.

[8] *See also* Liquidia, Press Release: *FDA Accepts Submission to Add PH-ILD to YUTREPIA™ Label* (September 25, 2023).

6

Liquidia cannot add PH-ILD as a new indication by amending its existing NDA but instead must file a brand-new NDA. As UTC sees it, if Liquidia were required to file a brand-new NDA this year, Liquidia would have to submit brand-new Paragraph IV certifications, including one for the '327 patent listed in the Orange Book last November, and those certifications, in turn, would potentially trigger a 30-month stay of the FDA's approval of the brand-new NDA.[9]

After UTC submitted its December 2023 letter to the FDA and the FDA shared it with Liquidia in January 2024, Liquidia submitted its own letter explaining the many errors in UTC's positions. UTC submitted a reply letter on February 12, 2024. For its part, the FDA seems to be actively considering the matter; the agency has issued no formal response to the letters or taken any public action on the amended NDA since then. Too impatient to wait for the FDA's decision-making process to conclude, UTC initiated this APA action against the FDA on February 20 (barely a week after submitting its reply letter to FDA), ostensibly challenging FDA's acceptance of Liquidia's amendment to the NDA submitted back in July 2023. UTC claims this acceptance was final agency action and that it was arbitrary, capricious, and contrary to law. *See* Compl. ¶¶ 72, 81. As relief, UTC demands that

---

[9]     Liquidia disagrees with UTC's theory. Liquidia *can* amend its NDA to add PH-ILD to the label for YUTREPIA. Even if the FDA rejected the amendment for some reason, Liquidia still would not have to, and could not be forced to, file a brand new NDA to add PH-ILD to the label for YUTREPIA: Liquidia could accomplish that result through a *supplement* to its approved NDA, the exact process UTC used to add PH-ILD to the label for TYVASO. If Liquidia supplemented the NDA, the FDA could not stay effective approval for 30 months because, under 21 U.S.C. § 355(c)(3)(C), *both* amendments *and* supplements are disregarded for determining what patents can give rise to a 30-month stay.

7

the Court vacate the FDA's purported acceptance of the amendment and order the FDA to require Liquidia to submit a brand-new NDA. *See* Compl. ¶¶ 80, 83, 86, 92, 95.

## III.  Argument

A.  Liquidia is entitled to intervene as of right.

Under Federal Rule of Civil Procedure 24 (a)(2), a party may intervene in pending litigation as of right when (1) the motion is timely; (2) the applicant has an interest in the subject of the action; (3) the disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *Jones v. Prince George's Cty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing factors as "timeliness, interest, impairment of interest, and adequacy of representation").

It is commonplace for this Court to let NDA applicants intervene as of right when their marketplace competitors sue the FDA to halt or unwind the agency's approval of an NDA. *See e.g., Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23 (D.D.C. 2022); *Melinta Therapeutics, LLC v. U.S. Food & Drug Admin.*, No. CV 22-2190 (RC), 2022 WL 6100188 (D.D.C. Oct. 7, 2022), *appeal dismissed sub nom. Melinta Therapeutics, LLC v. United States Food & Drug Admin.*, No. 22-5288, 2022 WL 19723218 (D.C. Cir. Dec. 1, 2022); *Otsuka Pharm. Co. v. Burwell*, 302 F. Supp. 3d 375 (D.D.C. 2016), *aff'd sub nom. Otsuka Pharm. Co. v. Price*, 869 F.3d 987 (D.C. Cir. 2017). That outcome is consistent with the D.C. Circuit's "liberal

approach" to intervention in APA cases. *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). Liquidia easily satisfies the requirements for intervention as of right.

1. **Liquidia's motion is timely.**

    Liquidia is moving to intervene less than a month after UTC filed its complaint, before any responsive submissions, and before this Court has issued any orders. That timing fits comfortably within precedents granting intervention motions. *See Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (motion timely when filed within two months of notification of suit); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("As to timeliness, Upjohn sought to intervene a few weeks after Mova initiated its action…this cannot be regarded as untimely.").

    Intervention will not delay the proceedings or prejudice the parties. The Federal Defendants have not yet answered UTC's complaint. After intervening, Liquidia will coordinate with the Federal Defendants to avoid unnecessary delays.

2. **Liquidia has a strong interest in the subject of the action, and the requested disposition will impede Liquidia's ability to protect its interests.**

    An intervenor must show "an interest relating to the property or transaction which is the subject of the action[.]" *Fund for Animals*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)). "The test operates in large part as a 'practical guide,' with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 12–13 (D.D.C. 2010) (quoting *United States v. Morten*, 730 F. Supp. 2d 11, 16 (D.D.C. 2010)).

9

An intervenor "can be said to have a substantial and direct interest in the subject of th[e] litigation" where, as here, the plaintiff's success would mean that a governmental agency's "regulatory decisions, which are obviously in the intervenors' interests, will be set aside." *Nat. Res. Def. Council, Inc. v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).

Liquidia has a strong and direct interest here because UTC is attacking the FDA's decision in 2023 to accept Liquidia's amended NDA—a decision supposedly made during an administrative proceeding in which UTC is not even a party. UTC also wants this Court to determine whether the FDA can make its approval immediately effective. *See* Compl. p. 33(e). Liquidia has an obvious, concrete monetary interest in that issue. The effective date of an NDA determines when the applicant may begin selling its product, and the right to sell sooner is worth more than the right to sell later. *See, e.g.*, *Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C 2007) (granting motion to intervene where plaintiff sought to set aside FDA's decision to approve a drug); *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 764 (2006) (concluding that business and economic impairments constitute a direct interest for purposes of intervention).

This APA suit threatens Liquidia's ability to protect its interests. Should UTC prevail and the FDA be required to reject Liquidia's amendment of its NDA, UTC would likely extend its market exclusivity for TYVASO, no matter what Liquidia may do afterward. *Mylan Pharms. Inc. v. Bayer Intell. Prop. GmbH*, No. CV 23-556-RGA, 2024 WL 359468, at *7 (D. Del. Jan. 31, 2024), *report and recommenda-*

10

*tion adopted*, No. CV 23-556-RGA, 2024 WL 639941 (D. Del. Feb. 15, 2024) ("Depriving Mylan of [the] ability [to assert claims against the patent holder] could result in Mylan losing profits during a time it was excluded from the market by a patent that all parties agree Mylan does not infringe."). Significant financial losses of this sort satisfy the impairment prong. *See, e.g., id.*; *Fund for Animals*, 322 F.3d at 735 (holding that temporary revenue loss satisfies this prong).

3. The FDA does not represent Liquidia's interests.

The inadequacy-of-representation requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Accordingly, the showing required for inadequacy of representation is "not onerous." *Fund for Animals*, 322 F.3d at 735 (quotation omitted). Indeed, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'" *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citation omitted).

Plainly, UTC's interests are adverse to Liquidia's—in this case, as in all the cases UTC has filed challenging Y<small>UTREPIA</small>. And FDA's interests, though not necessarily adverse to Liquidia's, do differ substantially. Agencies have a range of public and institutional interests; thus, it is well established that "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. This case is no exception. Liquidia could suffer substantial

11

economic harm if UTC prevails; the FDA will not. An agency's obligation "is to represent the interests of the American people," not the commercial interests of Liquidia. *Id.* As a result, the Federal Defendants cannot adequately represent Liquidia's interests in this action.

4.  Liquidia has Article III standing.

A party can intervene as a defendant to uphold government action when it has Article III standing. *Fund for Animals*, 322 F.3d at 732–33 (intervening defendant showed injury-in-fact, causation, and redressability when the challenged government regulation threatened revenue and funding, that injury was "fairly traceable to the regulatory action," and a decision favorable to the government would prevent that loss from occurring). That means the party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317; *see, e.g.*, *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding companies, benefiting from an EPA rule regulating their products, had standing to intervene where petitioner challenged that rule). That standard is met here: If this Court were to grant the relief UTC seeks, then Liquidia's commercial interests will be harmed. *Fund for Animals*, 322 F.3d at 733 (finding standing where there was a

12

"threatened loss of tourist dollars" if the agency was forced to comply with petitioner's requested relief). Because UTC wants to delay YUTREPIA's entry into the market, it poses significant commercial harm to Liquidia, thereby affording Article III standing.

It follows that the causation and redressability elements of Article III standard are satisfied as well. Liquidia will suffer economic injury if UTC prevails but not if UTC fails. *See Fund for Animals*, 322 F.3d at 733 (holding that the causation element was satisfied because the injury at issue was "fairly traceable to the regulatory action … that the [opposing party sought] in the underlying lawsuit," and the redressability element was satisfied because "it [was] likely that a decision favorable to the [putative intervenor] would prevent that loss from occurring").

Accordingly, Liquidia has standing to intervene as of right. *See Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008) (holding that the elements of Article III standing are satisfied when the actions of a patent holder cause a delay in FDA approval such that the party seeking FDA approval is excluded from the market).

B.  Alternatively, permissive intervention is appropriate.

Liquidia also qualifies for permissive intervention under Rule 24(b)(1)(B) because Liquidia has a defense that has a question of law or fact in common with the main action. Putting aside Liquidia's concrete economic interest in its NDA, Liquidia is strongly motivated to defend the very actions that UTC challenges—asserting defenses that will likely be in common with the FDA's defense of the same actions.

13

Thus, the Court could reasonably permit Liquidia to intervene, especially as it will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Liquidia has promptly moved to intervene, and it intends to follow any scheduling order entered by the Court.

Beyond that, permitting Liquidia's intervention would enhance "litigative economy, reduce[] risks of inconsistency, and increase[] information (which might reduce the risk of error)," without "concomitant issue proliferation." *Mass. Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). Liquidia's intervention "would also promote judicial and administrative convenience by avoiding a multiplicity of proceedings and by bringing to the aid of the tribunal the parties who 'may know the most facts and can best explain their implications.'" *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 770 (D.C. Cir. 1955).

## IV.   Conclusion

The Court should grant Liquidia's motion for intervention as of right under Rule 24(a) or, alternatively, permissive intervention under Rule 24(b).

Dated: March 4, 2024                Respectfully submitted,

/s/ Bryan Killian
Bryan Killian (DC Bar No. 989803)
David B. Salmons (DC Bar No. 476299)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 373-6191
F: (202) 739-3001
bryan.killian@morganlewis.com
david.salmons@morganlewis.com

14