# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United Therapeutics Corp., Plaintiff,

v.

Food and Drug Admin., *et al.*, Defendants

and

Liquidia Techs., Inc., Intervenor-Defendant.

Case No. 24-cv-484-JDB

### Federal Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction

SAMUEL BAGENSTOS
General Counsel
Department of Health and Human
  Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel for
  Litigation
Food and Drug Administration

DANLI SONG
Associate Chief Counsel
Department of Health and Human
Services
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4397
Silver Spring, MD 20993
301-348-3932
Danli.Song@fda.hhs.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
  General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director

JAMES W. HARLOW
Acting Assistant Director

NOAH T. KATZEN
SAMUEL BALLINGRUD
Trial Attorneys
Consumer Protection Branch
Civil Division, Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 305-2428 (Katzen)
(202) 616-0509 (Ballingrud)
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov
Samuel.B.Ballingrud@usdoj.gov

TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

BACKGROUND..........................................................................................................3

    I.    505(b)(2) Applications and Paragraph IV Certifications.........................3

    II.   Patent Disputes Between UTC and Liquidia...............................................5

    III.  UTC Sues FDA Regarding Yutrepia............................................................8

LEGAL STANDARD.....................................................................................................9

ARGUMENT...............................................................................................................9

    I.    UTC is not likely to succeed on the merits...............................................10

        A.   No Article III case or controversy exists............................................10

        B.   UTC's claims are not prudentially ripe...............................................14

        C.   UTC does not challenge final agency action.......................................16

        D.   The Second Patent Litigation offers UTC an adequate remedy.......20

        E.   Although consideration of the merits is premature, UTC mischaracterizes FDA's guidance.............................................................................22

    II.   UTC has not demonstrated that it is likely to suffer an irreparable harm...........23

    III.  The balance of equities and public interest weigh against an injunction...........24

CONCLUSION...........................................................................................................25

TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner,*
   387 U.S. 136 (1967)................................................................................ 14, 15

*Air Transp. Ass'n of Am. v. Exp.-Imp. Bank of the U.S.,*
   840 F. Supp. 2d 327 (D.D.C. 2012)................................................................ 24

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.,*
   470 F. Supp. 3d 32 (D.D.C. 2020).................................................................. 9

*Am. Petroleum Inst. v. EPA,*
   683 F.3d 382 (D.C. Cir. 2012)................................................................. 10, 15

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015).......................................................................... 13

*Ass'n of Am. Physicians & Surgeons, Inc. v. FDA,*
   539 F. Supp. 2d 4 (D.D.C. 2008), *aff'd* 358 F. App'x 179 (D.C. Cir. 2009) ...... 19

*Atl. States Legal Found., Inc. v. EPA,*
   325 F.3d 281 (D.C. Cir. 2003)........................................................................ 15

*Avadel CNS Pharms., LLC v. Becerra,*
   638 F. Supp. 3d 23 (D.D.C. 2022)............................................................. 20-21

*Bennett v. Spear,*
   520 U.S. 154 (1997)........................................................................................ 17

*Bracco Diagnostics, Inc. v. Shalala,*
   963 F. Supp. 2d 20 (D.D.C. 1997)................................................................. 25

*Bristol-Myers Squibb Co. v. Shalala,*
   923 F. Supp. 212 (D.D.C. 1996) ................................................................... 15

*Cal. Ass'n of Private Postsecondary Sch. v. DeVos,*
   344 F. Supp. 3d 158 (D.D.C. 2018)............................................................... 24

*Cal. Communities Against Toxics v. EPA,*
   934 F. 3d 627 (D.C. Cir. 2019)...................................................................... 17

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006)....................................................................... 23

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice,*
   846 F.3d 1235 (D.C. Cir. 2017)..................................................................... 20

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)............................................................................... 10, 14

*Coal. for Common Sense in Gov't Procurement v. United States,*
  576 F. Supp. 2d 162 (D.D.C. 2008)................................................................. 24

*Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan,*
  709 F.2d 1521 (D.C. Cir. 1983)................................................................. 20

*Dep't of Transp. v. Pub. Citizen,*
  541 U.S. 752 (2004)................................................................. 14

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
  878, F.3d 371 (D.C. Cir. 2017)................................................................. 10

*\*Garcia v. Vilsack,*
  563 F.3d 519 (D.C. Cir. 2009)................................................................. 20, 22

*Gulf Oil Corp. v. Dep't of Energy,*
  514 F. Supp. 2d 1019 (D.D.C. 1981)................................................................. 24

*\*Hi-Tech Pharmacal Co., Inc. v. FDA,*
  587 F. Supp. 2d 1 (D.D.C. 2008)................................................................. 24

*Hughes v. Abell*
  No. 09-220, 2014 WL 12787807 (D.D.C. Feb. 10, 2014)................................................................. 11

*Indep. Equip. Dealers Ass'n v. EPA,*
  372 F.3d 420 (D.C. Cir. 2004)................................................................. 16

*\*King v. Leavitt,*
  475 F. Supp. 2d 67 (D.D.C. 2007)................................................................. 19

*\*Lannett Co., Inc. v. FDA,*
  300 F. Supp. 3d 34 (D.D.C. 2017)................................................................. 18

*\*League of Women Voters of U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016)................................................................. 9, 23

*Liquidia Techs., Inc. v. United Therapeutics Corp.,*
  No. IPR2021-00406, 2022 WL 2820717................................................................. 6

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997)................................................................. 9

*Mylan Labs. Ltd. v. FDA,*
  910 F. Supp. 2d 299 (D.D.C. 2012)................................................................. 24

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
  538 U.S. 803 (2003)................................................................. 14

*New York Reg'l Interconnect, Inc. v. FERC,*
  634 F.3d 581 (D.C. Cir. 2011)................................................................. 10, 11

*\*Nostrum Pharm., LLC v. FDA,*
  35 F. 4th 820 (D.C. Cir. 2022)................................................................. 17, 18

*Pfizer Inc. v. Shalala,*
  182 F.3d 975 (D.C. Cir. 1999) ........................................................................ 12

*Purepac Pharm. Co. v. Thompson,*
  354 F.3d 877 (D.C. Cir. 2004) .......................................................................... 4

*Sanofi-Aventis U.S. LLC v. FDA,*
  84 F. Supp. 2d (D.D.C. 2012) ........................................................................ 15

*Serono Labs., Inc. v. Shalala,*
  974 F. Supp. 29 (D.D.C. 1997) ...................................................................... 15

*TeleSTAR, Inc. v. FCC,*
  888 F.2d 132 (D.C. Cir. 1989) ................................................................. 18, 19

*Texas v. United States,*
  523 U.S. 296 (1998) ....................................................................................... 15

*Trump v. New York,*
  141 S. Ct. 530 (2020) ..................................................................................... 12

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
  74 F.4th 1360 (Fed. Cir. 2023) ......................................................................... 6

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
  No. 2023-1805, 2023 WL 8794633 (Fed. Cir. Dec. 20, 2023) ......................... 6

*United Transp. Union v. Interstate Commerce Comm'n,*
  871 F.2d 1114 (D.C. Cir. 1989) ..................................................................... 19

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n,*
  259 F.2d 921 (D.C. Cir. 1958) ....................................................................... 25

*Wade v. FCC,*
  986 F.2d 1433 (D.C. Cir. 1993) ..................................................................... 19

*Whitman v. Am. Trucking Assocs.,*
  531 U.S. 457 (2001) ................................................................................. 16, 17

*Whole Woman's Health Alliance v. FDA,*
  No. 3:23-cv-00019, 2023 WL 5401885 (W.D. Va. Aug. 21, 2023) ................ 23

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ............................................................................................. 9

*Wyo. Outdoor Council v. U.S. Forest Serv.,*
  165 F.3d 43 (D.C. Cir. 1999) ......................................................................... 10

**Statutes**

5 U.S.C. §

  551(4) ............................................................................................................ 16

551(6) ............................................................................................................... 16

551(8) ............................................................................................................... 16

551(10) ............................................................................................................. 16

551(11) ............................................................................................................. 16

551(13) ............................................................................................................. 16

704 ........................................................................................................ 16, 20, 21

21 U.S.C. §

355(a) ................................................................................................................. 3

355(b)(1)(A) ....................................................................................................... 3

355(b)(1)(A)(viii) ............................................................................................... 3

355(b)(2) ............................................................................................................ 4

355(b)(2)(A) ....................................................................................................... 4

355(b)(2)(B) ....................................................................................................... 4

355(b)(2)(A)(iv) ................................................................................................. 4

355(b)(3)(A)(C) .................................................................................................. 4

355(c)(3)(C) ..................................................................................... 4, 11, 13, 18

355(c)(3)(C)(i)-(iv) ............................................................................................ 5

355(c)(3)(C)(ii)(II) ............................................................................................ 5

355(c)(3)(E)(iv) ................................................................................................. 5

35 U.S.C. §

271(e)(2) ...................................................................................................... 4, 5, 6

**Regulations**

21 C.F.R. §

10.25(a) ............................................................................................................ 19

10.30 ................................................................................................................. 19

10.45(b) ............................................................................................................ 19

314.110(a) ........................................................................................................ 17

314.110(b) ........................................................................................................ 17

## INTRODUCTION

United Therapeutics Corp. (UTC) moves to preliminarily enjoin the U.S. Food and Drug Administration (FDA) from approving a competitor's new drug application (NDA). UTC and its competitor—Liquidia Technologies, Inc. (Liquidia)—are enmeshed in litigation about the validity and infringement of certain patents held by UTC. Recently, Liquidia submitted an amendment to add a new indication to its tentatively-approved NDA. FDA has acknowledged receipt of this amendment. UTC objected to that amendment in two letters to FDA, claiming the new indication submitted in the amendment was required to be submitted as a second NDA. According to UTC, had Liquidia submitted a second NDA instead of an amendment, FDA's approval of that second application would be subject to a statutory stay that was not available for Liquidia's amendment.

Instead of waiting for FDA's considered decision on the propriety of Liquidia's amendment, UTC moved this Court to preliminarily enjoin FDA's approval of the NDA as amended. But almost a week before doing so, UTC asked the federal district court hearing the patent litigation to preliminarily enjoin Liquidia from marketing its drug. UTC thus asks this Court to review, on an expedited schedule, a decision FDA has not made even as UTC seeks the same genre of relief it already sought from another court, albeit on different grounds. This motion for extraordinary relief should be denied for several reasons.

*First*, there is no Article III Case or Controversy between UTC and FDA. For both standing and constitutional ripeness, UTC must show an imminent injury caused by

FDA—not merely possible harms. But UTC's theory of injury relies on hypotheticals and counterfactuals about FDA's future decisions on the propriety of Liquidia's amendment and the approvability of Liquidia's amended application. Such speculation does not suffice for Article III jurisdiction.

*Second*, UTC's claims are not prudentially ripe. The principal issue in this case—whether FDA lawfully permitted Liquidia to amend its application—is not fit for judicial review because the agency has not actually decided the amendment was proper. Judicial review must await that decision and the agency's explanation behind it. Meanwhile, UTC suffers no significant hardship by waiting for the issue to become fit for review. If FDA approves Liquidia's application, UTC can seek review at that time just as drug manufacturers routinely do.

*Third*, UTC's Administrative Procedure Act (APA) suit does not challenge, as it must, a "final agency action." FDA has not taken "agency action" within the meaning of the APA, much less *final* agency action on the propriety of Liquidia's amendment. Moreover, FDA is still considering UTC's administrative request that FDA reject that amendment. Therefore, even if FDA had taken final agency action, it would be nonfinal as to UTC, and UTC's lawsuit would be incurably premature.

*Fourth*, APA review also is unavailable because UTC has an adequate alternative remedy: pursuing its earlier motion for a preliminary injunction in the patent litigation. UTC seeks a reprieve from competition pending resolution of the patent infringement claims. The court hearing those claims is best placed to provide that relief, as UTC already has asked that it do. That, not this APA suit, is UTC's remedy.

*Fifth*, UTC has not shown irreparable harm absent extraordinary relief. UTC's injuries are speculative and depend on the outcome of further proceedings before FDA and in the patent litigation. UTC also has not shown that any economic harm it might suffer would reach the magnitude demanded by the D.C. Circuit.

*Finally*, the public interest and equities weigh against injunctive relief. UTC has an alternative remedy, and the public interest lies in uninterrupted administrative processes—all for the purpose of preventing harm that remains speculative. Moreover, given the speculative nature of any harm at this point, UTC's requested injunction does not serve the purpose of the Hatch-Waxman Amendments to balance encouraging a speedy generic drug approval process while fostering innovation. The Court should deny UTC's motion for a temporary restraining order or preliminary injunction.

BACKGROUND

## I.    505(b)(2) Applications and Paragraph IV Certifications

Section 505(a) of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355(a), generally prohibits the introduction into interstate commerce of any "new drug" unapproved by FDA. To gain approval to market a new drug, an applicant files an NDA. *Id.* § 355(b)(1)(A). The application must contain, among other things, information on any patent that claims the drug or a method of using the drug if that patent could reasonably be the basis for an infringement claim if a person not licensed by the patent owner engaged in the manufacture, use, or sale of the drug. *Id.* § 355(b)(1)(A)(viii).

Congress also established a streamlined process in section 505(b)(2), by which an applicant can rely on FDA's finding of safety and/or effectiveness for a previously approved drug (known as the "listed drug"). *Id.* § 355(b)(2). A 505(b)(2) application must contain an appropriate patent certification or statement for each patent that covers the listed drug and was timely listed in FDA's "Orange Book." *Id.* § 355(b)(2)(A), (B). The Orange Book is "an FDA publication that includes all patent information that companies have submitted to the agency." *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 880 (D.C. Cir. 2004).

This case involves one type of patent certification: a Paragraph IV certification. In a Paragraph IV certification, the applicant attests that the patent at issue "is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." *Id.* § 355(b)(2)(A)(iv). The 505(b)(2) applicant next notifies the NDA holder of the listed drug and the owner of the listed patent covered by the Paragraph IV certification. *Id.* § 355(b)(3)(A)–(C). The act of submitting a 505(b)(2) application that contains a Paragraph IV certification is deemed an act of infringement of the listed patent. 35 U.S.C. § 271(e)(2)(A).

If a patent holder sues the 505(b)(2) applicant for infringement within 45 days of receiving the notice, a statutory stay may delay the approval of the 505(b)(2) application. Specifically, if the Paragraph IV certification covers a patent that was filed with FDA "before the date on which the application (excluding an amendment or supplement to the application) was submitted," FDA generally may not give final approval of the application for 30 months. 21 U.S.C. § 355(c)(3)(C). The length of this

stay can be varied by the patent litigation court. *Id.* § 355(c)(3)(C)(i)-(iv). If that court finds infringement and that judgment is not set aside on appeal, approval of the application will generally be enjoined until the patent expires. *Id.* § 355(c)(3)(C)(ii)(II); 35 U.S.C. § 271(e)(4)(A).

## II.   Patent Disputes Between UTC and Liquidia

UTC manufactures the drug Tyvaso (treprostinil) inhalation solution. In 2009, FDA approved Tyvaso to treat pulmonary arterial hypertension (PAH), and in 2021, the agency approved a new indication for the treatment of pulmonary hypertension associated with interstitial lung disease (PH-ILD). Upon approval of UTC's supplemental application for PH-ILD, FDA also recognized a three-year period of exclusivity for that supplement, which ends on March 31, 2024. 21 U.S.C. § 355(c)(3)(E)(iv); Compl., ECF No. 1 ¶¶ 42-43.

In January 2020, Liquidia filed a 505(b)(2) application for its treprostinil inhalation powder product, Yutrepia, for the treatment of PAH, which relied on FDA's previous findings of safety and effectiveness for Tyvaso. Liquidia submitted Paragraph IV certifications to the listed patents for Tyvaso in its application and timely notified UTC of the certifications. UTC then sued Liquidia in the District of Delaware for patent infringement, triggering the 30-month stay. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-cv-755-RGA (D. Del. filed June 4, 2020) (the First Patent Litigation).

In July 2020, while the First Patent Litigation was pending, UTC submitted U.S. Patent No. 10,716,793 for listing in the Orange Book. The following day, UTC amended its complaint to allege infringement of that patent. *See* First Am. Compl., *United*

*Therapeutics*, No. 20-cv-755-RGA, ECF No. 16 (D. Del. filed July 22, 2020). Liquidia amended its application in October 2020 to add a Paragraph IV certification to the '793 patent, after which it provided notice to UTC.

On September 9, 2022, the Delaware district court entered a final judgment in the First Patent Litigation, holding that Yutrepia infringed UTC's '793 patent. Final Judgment, *United Therapeutics*, 20-cv-755-RGA, ECF No. 436 (D. Del. Sept. 9, 2022). Under 35 U.S.C. § 271(e)(4)(A), the Delaware court entered an order preventing FDA from approving Yutrepia before May 14, 2027, when the '793 patent expires. *Id.* at 2, ¶ 4. That decision was affirmed on appeal. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360 (Fed. Cir. 2023), *cert. denied*, 2024 WL 675262 (U.S. Feb. 20, 2024).

However, in December 2023, Liquidia filed a motion under Federal Rule of Civil Procedure 60(b) to modify the judgment in the First Patent Litigation. Motion for Post-Judgment Relief, *United Therapeutics*, No. 20-cv-755-RGA, ECF Nos. 461 (D. Del. filed Dec. 26, 2023). The basis was the Federal Circuit's December 2023 affirmance of a decision by the Patent Trademark Appeal Board, *Liquidia Techs., Inc. v. United Therapeutics Corp.*, IPR2021-00406, 2022 WL 2820717 (PTAB Jul. 18, 2022), finding the '793 patent's claims unpatentable. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 2023-1805, 2023 WL 8794633 (Fed. Cir. Dec. 20, 2023).[1] . As of this filing, Liquidia's Rule 60(b) motion remains pending.

---

[1] On March 12, 2024, the Federal Circuit denied UTC's combined request for panel rehearing and rehearing en banc. Order, *United Therapeutics Corp., v. Liquidia Techs.*, Inc., No. 23-1805, ECF No. 63 (Fed. Cir. Mar. 12, 2024) (per curiam). UTC has indicated that it

Meanwhile, on July 24, 2023, Liquidia submitted an amendment to its Yutrepia NDA, adding a new indication for PH-ILD. In September 2023, FDA sent Liquidia an "Information Request" concerning its obligation to comply with patent certification and notice requirements. ECF No. 14-3. It indicated that the 45-day period during which a patent-infringement suit could trigger a 30-month stay applied to certain patents— namely, those that had been submitted for listing before the date on which the application was originally submitted and were the subject of Paragraph IV certifications in the amendment. ECF No. 14-3. (Since the '793 patent was listed after that date, it was not among those mentioned as triggering the 45-day clock.) FDA sent Liquidia a letter acknowledging its amendment shortly thereafter. Katzen Decl., Ex. A.

Six weeks after receiving Liquidia's Paragraph IV certifications accompanying the July 2023 amendment, UTC again sued Liquidia in the District of Delaware for infringement of the '793 patent. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 23-cv-00975 (D. Del. filed Sept. 5, 2023) (the Second Patent Litigation).

A few months later, on November 28, 2023, UTC filed U.S. Patent No. 11,826,327 for listing in the Orange Book and amended its complaint in the Second Patent Litigation to include infringement of the '327 patent. First Am. Compl., *United Therapeutics*, No. 23-cv-00975, ECF No. 8 (D. Del. Nov. 30, 2023). The parties later voluntarily dismissed the '793 patent from the Second Patent Litigation without

––––––––––––––––––––

intends to petition for a writ of certiorari by June 10, 2024. Letter, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-cv-755-RGA, ECF No. 475 (D. Del., filed on March 13, 2024).

prejudice, leaving only the '327 patent at issue. Stipulation, *United Therapeutics*, No. 23-cv-00975, ECF No. 16 (D. Del. Jan. 22, 2024).

On February 26, 2024, UTC moved for a preliminary injunction to prohibit Liquidia from manufacturing, selling, or distributing Yutrepia for PH-ILD pending a decision on the '327 patent. Mot. for Preliminary Injunction, *United Therapeutics*, No. 23-cv-00975, ECF No. 25 (D. Del. Feb. 26, 2024). That motion remains pending.

**III.  UTC Sues FDA Regarding Yutrepia**

UTC also raised objections to FDA about Liquidia's July 2023 amendment to the Yutrepia application. On December 29, 2023, approximately 5 months after Liquidia's amendment was submitted, UTC sent a letter to FDA challenging the putative "acceptance" of Liquidia's amendment and asking FDA to reject it. ECF No. 14-8 at 2. Both Liquidia and UTC submitted further correspondence to FDA on the issue, the last of which was received by FDA in mid-February 2024. *See* ECF Nos. 14-9, 14-10. FDA continues to consider the propriety of the amendment and has not reached a decision. It intends to respond to UTC and Liquidia when it has done so.

Rather than wait for FDA to consider and respond to the exchange of letters, on February 20, 2024—just days after the letter exchange concluded—UTC filed this lawsuit challenging FDA's alleged "acceptance" of Liquidia's amendment. Compl., ECF No. 1. On March 4, UTC moved for a TRO or preliminary injunction, ECF No. 14, seeking to prevent FDA from approving Liquidia's application. FDA now opposes that motion.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must "make a clear showing that four factors, taken together, warrant relief: [1] likely success on the merits, [2] likely irreparable harm in the absence of preliminary relief, [3] a balance of equities in its favor, and [4] accord with the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (internal quotation marks omitted). The last two factors merge where the federal government is the opposing party. *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020). A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

## ARGUMENT

UTC has not met its burden to clearly establish its entitlement to extraordinary relief. UTC is not likely to succeed on the merits for several reasons. *First*, no genuine Article III case or controversy likely exists between UTC and FDA. *Second*, the company's claims are not prudentially ripe absent further administrative developments. *Third*, and relatedly, UTC has not challenged any "agency action," much less the "final agency action" required by the APA. *Fourth*, APA relief is also unavailable because UTC has an adequate alternative remedy through its patent infringement litigation against Liquidia.

UTC also is not entitled to a TRO or preliminary injunction because it has not clearly shown irreparable harm. The company's purported injuries are speculative. And any hypothetical economic harm is insufficient to meet the case law's standard for irreparability. Nor does UTC explain why any alleged loss of a "statutory right" is beyond remediation. Finally, the balance of equities and public interest further weigh against the premature and unwarranted interference in FDA's decisionmaking process that UTC requests.

## I.    UTC is not likely to succeed on the merits

### A.  No Article III case or controversy exists

"A plaintiff unlikely to have standing is *ipso facto* unlikely to succeed" on the merits. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017). And UTC lacks standing or constitutionally ripe claims.

For standing, UTC must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Similarly, ripeness requires "an injury-in-fact that is 'imminent' or 'certainly impending.'" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012); *see Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) ("Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness requirement excludes cases not involving present injury."). In short, Article III requires a plaintiff whose injury is not continent on "hypothetical chain of events, none of which is certain to occur." *New York Reg'l*

*Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011); *see also Hughes v. Abell*, CV 09-220 (JDB), 2014 WL 12787807, at *5 (D.D.C. Feb. 10, 2014) (Bates, J.) ("speculative and contingent harm is insufficient to support standing").

UTC's alleged injuries depend upon a long chain of speculation. The company assumes that: (1) FDA has actually determined Liquidia's amendment is proper and the application approvable; (2) had the agency not done so, the amendment would have been rejected in September 2023; (3) had FDA rejected the amendment (either then or later), Liquidia would have submitted a second NDA and paid a filing fee of $1,621,013 or $3,242,026; and (4) Liquidia's second NDA would have postdated UTC's submission of the '327 patent for listing with FDA. UTC has not shown it can establish that any of these is certain, much less all of them.

UTC concedes that its alleged injuries depend on FDA approving Liquidia's amended 505(b)(2) application. Pl. Mem., ECF No. 14-1, at 30. But FDA has *not* approved that application. Nor has it determined that Liquidia's amendment is proper. Rather, the agency's Information Request, a routine procedural correspondence, reminded Liquidia of its patent notification obligations and reflected the unexceptional proposition that, when Paragraph IV certifications are made in an amendment, the 45-day period that triggers a 30-month stay applies only with respect to patents listed before the date of the original NDA submission. ECF No. 14-3 at 1 ("We note that the 45-day period [for a lawsuit to trigger the 30-month stay] does apply with respect to the paragraph IV certifications for [patents listed before the date of the application]") (emphasis omitted); *accord* 21 U.S.C. § 355(c)(3)(C) (making the 30-month stay provision

11

contingent on the patent being submitted for listing "before the date on which the application (excluding *an amendment* or supplement to the application) was submitted"). In making this uncontroversial observation,[2] FDA did not determine that the amendment was proper.

Indeed, following UTC's letter to FDA protesting the amendment, FDA obtained UTC's agreement to provide its letter to Liquidia and Liquidia's agreement to provide its response letter to UTC, followed by UTC's agreement to provide its response letter to Liquidia. FDA solicited this exchange to have the benefit of the detailed views of both companies. After receiving these submissions, FDA is actively considering them. ECF No. 14-8. Because the agency's future resolution is unknown and UTC's alleged injury will not materialize unless FDA determines that the amendment was proper and approves the application, UTC fails Article III's imminence requirement. *See Pfizer Inc. v. Shalala*, 182 F.3d 975, 979 (D.C. Cir. 1999) (holding that challenge to "FDA's acceptance of" a drug application "for processing" was not ripe until "FDA . . . approves [the] application").

UTC's attempts to paper over this deficiency only accentuate how its allegations are "riddled with contingencies and speculation that impede judicial review." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam). For example, UTC implicitly assumes that, had FDA rejected the amendment, Liquidia would have responded by submitting

---

[2] UTC agrees that "a patent cannot be the basis of a 30-month stay if it issues after submission of the follow-on manufacturer's original application -- even if the follow-on manufacturer then submits an amendment." Pl. Mem. 2. It argues only that an amendment was not a proper vehicle for seeking approval of the PH-ILD indication.

a second NDA, which would have required the payment of significant Prescription

Drug User Fee Amendment (PDUFA) application fees ranging from $1,621,013 to

$3,242,026 at the time of submission. *See* FDA, *Prescription Drug User Fee Amendments*,

https://perma.cc/Q2YV-WAH7.[3] But this is sheer speculation. To avoid triggering a

30-month stay, Liquidia could instead have withdrawn its amendment and waited for

FDA to approve its original, tentatively-approved application for the PAH indication.

Then, once approved, it could file a supplemental application seeking approval of the

PH-ILD indication, which (like an amendment) would not require the payment of

PDUFA fees or trigger a 30-month stay. *See* 21 U.S.C. § 355(c)(3)(C) (providing that the

stay is not triggered by a lawsuit alleging infringement of patents that were the subject

of Paragraph IV certifications and were submitted to FDA after "the date on which the

application (excluding an amendment *or supplement* to the application) was submitted")

(emphasis added). Indeed, the statute permits Liquidia to pursue that course *even now* if

Liquidia's amendment is ultimately rejected. *See Arpaio v. Obama*, 797 F.3d 11, 21 (D.C.

Cir. 2015) ("When considering any chain of allegations for standing purposes, we may

reject as overly speculative those links which are predictions of future events (especially

future actions to be taken by third parties), as well as predictions of future injury that

are not normally susceptible of labelling as 'true' or 'false.'") (internal quotations

omitted).

---

[3] Under limited circumstances, a fee waiver for a new application may be available. We are not aware of any basis to conclude that a waiver would have been available for this hypothetical new NDA, nor has UTC suggested one.

And even if Liquidia had filed a second NDA, it remains speculative whether UTC could have obtained the 30-month stay it now seeks. This is because UTC submitted the '327 patent to FDA more than four months after FDA received Liquidia's amendment. *See* Compl. ¶ 56. So, if Liquidia had filed a second application before the '327 patent was submitted for listing, that patent could not have formed the basis for a 30-month stay. This "highly attenuated chain of possibilities[] does not satisfy" Article III's injury requirement. *Clapper*, 568 U.S. at 410. Furthermore, dependent on speculation about what Liquidia would have done and when, this theory cannot support standing against FDA. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004) ("[W]here an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect.").

### B.  UTC's claims are not prudentially ripe

Even if UTC could clear the hurdle of Article III at this stage, it has not met its burden to show that its claims are prudentially ripe. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner,* 387 U.S. 136, 148–149 (1967)). Thus, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated,

14

or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

In considering ripeness, courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys*, 387 U.S. at 149. UTC cannot meet its burden to establish either. The issues are not fit for review because FDA has not yet completed its consideration of the arguments made in the parties' letter exchanges and determined whether Liquidia's July 2023 amendment was properly submitted. To make that decision, FDA must address the numerous complex factual and regulatory issues that the parties have raised. Once the agency "appl[ies] its expertise," judicial review could occur in a "more final and concrete setting." *Am. Petroleum Inst.*, 683 F.3d at 388.

UTC also has not shown it is likely to face hardship if review were deferred because it can challenge any subsequent FDA decision finding the amendment proper. *See Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003) (no hardship when plaintiff "may protect all of their rights and claims by returning to court when the controversy ripens"). Indeed, were FDA to finally approve Liquidia's amended application, UTC could pursue post-approval relief—as drug manufacturers often do. *See, e.g.*, *Sanofi-Aventis U.S. LLC v. FDA*, 84 F. Supp. 2d 195 (D.D.C. 2012) (considering motion for a preliminary injunction filed by drug manufacturer after FDA's approval of competitor's application); *Serono Labs., Inc. v. Shalala*, 974 F. Supp. 29 (D.D.C. 1997) (same), *vacated*, 158 F.3d 1313 (D.C. Cir. 1997); *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996) (same).

### C.  UTC does not challenge final agency action

UTC is also not entitled to relief under the APA because it does not show that it challenges "agency action" or "final agency action." 5 U.S.C. § 704.

The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). And it provides specific definitions for "rule," "order," "license," "sanction," and "relief." *Id.* § 551(4), (6), (8), (10), (11). These cover "manner[s] in which an agency may exercise its *power*," *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 478 (2001) (emphasis added), but they are "not so all-encompassing as to authorize . . . judicial review over everything done by an administrative agency," *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.). Indeed, UTC does not identify any conduct of FDA that fits the defined contours of "agency action."

Although UTC asserts that FDA "accepted" Liquidia's amendment, it identifies no specific action constituting acceptance. In fact, FDA has *not* "accepted" the amendment or determined that Liquidia's amendment is proper. To be sure, in September 2023, the agency implied that an amendment containing a Paragraph IV certification to the '793 patent would not trigger a 30-month stay because Liquidia originally submitted its NDA prior to the listing of that patent, and shortly thereafter "acknowledge[d] receipt of" the amendment, Katzen Decl., Ex. A, but UTC has not shown that either exercised "power" or otherwise meets the definition of "agency action."

16

Nor has UTC shown that any "agency action" was "final." Finality has two requirements. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). FDA's acknowledgement of Liquidia's amendment satisfies neither *Bennett* condition. Only when an agency "has rendered its last word on the matter in question is its action 'final' and thus reviewable." *Whitman*, 531 U.S. at 478.

*First*, neither FDA's Information Request nor its acknowledgment of receipt of Liquidia's amendment consummated the process of deciding whether that amendment was proper. In assessing that process, courts "take as their North Star the unique constellation of statutes and regulations that govern the action at issue." *Cal. Communities Against Toxics v. EPA*, 934 F. 3d 627, 632 (D.C. Cir. 2019). Here, the FDCA and implementing regulations collectively establish a drug approval process with a number of "interim step[s]" but a single culmination point: "FDA's final determination on the application." *Nostrum Pharm., LLC v. FDA*, 35 F. 4th 820, 825 (D.C. Cir. 2022).

While that final determination is reviewable, the interim steps are not. For example, FDA may issue a "complete response letter" if it "determines that [it] will not approve the application or abbreviated application in its present form." 21 C.F.R. § 314.110(a). Because a complete response letter requires further action from an applicant, *see id.* § 314.110(b), courts have held that such letters are not final agency

17

action. *Nostrum*, 35 F. 4th at 825; *Lannett Co., Inc. v. FDA*, 300 F. Supp. 3d 34, 43-44 (D.D.C. 2017). That reasoning compels the same conclusion here. "[M]ultiple doors for further processing" remain open after FDA's receipt of Liquidia's amendment, including, as UTC has argued to the agency, a determination that the amendment was not proper. *Nostrum*, 35 F.4th at 826. UTC and Liquidia's letter exchange is still under consideration by the agency. Thus, UTC cannot show that FDA's decisionmaking process has concluded.

*Second*, UTC has not shown that FDA's Information Request or acknowledgement of receipt of Liquidia's amendment had legal consequences or determined UTC's or Liquidia's rights or obligations. UTC argues that it cannot obtain a 30-month stay based on Liquidia's Paragraph IV certifications submitted via amendment with respect to patents that were not listed at the time Liquidia's NDA was originally submitted. Pl. Mem. 21. But that flows not from anything FDA has done, but from the interplay between § 355(c)(3)(C) and the fact that Liquidia has submitted an amendment, not a second new drug application. FDA has not determined the propriety of the amendment at this time. And even if FDA ultimately determines that the amendment was not proper, UTC can obtain a 30-month stay only if Liquidia then chooses to submit a second new application and the other elements of § 355(c)(3)(C) that government the availability of a 30-month stay are satisfied.

Even if FDA had taken final agency action, UTC's pending administrative request that FDA reject the amendment independently renders this judicial challenge "incurably premature." *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) (per

curiam). Because "a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order[]," *Wade v. FCC*, 986 F.2d 1433, 1433 (D.C. Cir. 1993) (per curiam), a "pending petition for administrative reconsideration renders the underlying agency action nonfinal, and hence unreviewable, with respect to the petitioning party," *TeleSTAR*, 888 F.2d at 133 (quoting *United Transp. Union v. Interstate Commerce Comm'n*, 871 F.2d 1114, 1114 (D.C. Cir. 1989)). The rule applies where a request is "*in substance* a petition for reconsideration," even if it is not styled as such. *King v. Leavitt*, 475 F. Supp. 2d 67, 72 (D.D.C. 2007) (emphasis added). As noted, FDA has not made any determination, final or otherwise, on whether Liquidia's amendment is proper. But even if FDA had taken final agency action "accepting" that amendment and determining it to be proper, then UTC's December 29 letter would be, in substance, a request to reconsider that decision, and UTC's lawsuit would be incurably premature.

Exhaustion principles reinforce that conclusion. By regulation, "[a] request that [FDA] take or refrain from taking any form of administrative action must first be the subject of a final administrative decision . . . before any legal action is filed in a court complaining of the action or failure to act." 21 C.F.R. § 10.45(b); *see also id.* §§ 10.25(a), 10.30. As this Court has recognized, § 10.45(b) ensures the agency has an opportunity to "address new arguments that were never presented to the agency." *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 22 (D.D.C. 2008) (Bates, J.), *aff'd* 358 F. App'x 179 (D.C. Cir. 2009). Judicial review thus would be inappropriate before FDA has made a final administrative determination on UTC's argument (not previously presented to the agency) that Liquidia's amendment is improper.

### D.  The Second Patent Litigation offers UTC an adequate remedy

Even if UTC challenged final agency action, the APA further requires the

company have no other "adequate remedy." 5 U.S.C. § 704. To qualify as adequate, "the

alternative remedy need not provide relief identical to relief under the APA, so long as

it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).

Where no "yawning gap" exists between the relief offered under the APA and that

offered through the alternative avenue, the alternative is adequate. *Citizens for*

*Responsibility & Ethics in Washington v. Dep't of Justice*, 846 F.3d 1235, 1246 (D.C. Cir.

2017). That is so even if the plaintiff may not be able to obtain all the relief it might have

obtained under the APA, *id.* at 1244, or the adequate remedy involves a claim against a

private party, *Garcia*, 563 F.3d at 522, or that remedy is less effective than relief against

the agency, *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521,

1533 (D.C. Cir. 1983).

*Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23 (D.D.C. 2022), illustrates

the point. There, the court held that patent litigation between private parties provided

an adequate alternative remedy to an APA suit against FDA. The court explained that

"the test for determining the adequacy of relief is not whether there is perfect alignment

of the legal 'questions' before the respective courts," but whether "the remedies

available to the plaintiff" can "put the plaintiff in the position in which they seek to be

placed." *Id.* at 33. In short, "the adequate remedy inquiry focuses on the outcome

sought by movant rather than the questions they raise in their pleadings." *Id.* at 34.

"Indeed, the outcome available in the alternative cause of action need not even be 'as

effective as an APA lawsuit' so long as the remedy is of the 'same genre.'" *Id.* (internal citations omitted).

Relief in the Second Patent Litigation can put UTC in the same position that it seeks to be put in by this litigation. In this case, UTC wants relief that it believes will enable it to get a 30-month stay to block approval of Yutrepia for PH-ILD while the patent litigation is pending. *See, e.g.*, Compl. ¶ 80, pp. 33-34. In the Second Patent Litigation, UTC is currently seeking the same genre of relief: a preliminary injunction prohibiting Liquidia from manufacturing, selling, or distributing Yutrepia for PH-ILD pending a decision on infringement of the '327 patent. Mot. for Preliminary Injunction, *United Therapeutics*, No. 23-cv-00975, ECF No. 25 (D. Del. Feb. 26, 2024). If UTC is correct that Liquidia would submit a second NDA for the PH-ILD indication if UTC prevailed in this case, then either that relief or the preliminary relief sought in the Second Patent Litigation would get UTC what it wants.

Although UTC may prefer the APA as the vehicle for effectuating its hoped-for temporary block of Yutrepia for PH-ILD, Congress specified in 5 U.S.C. § 704 that an APA action is unavailable if another avenue for relief is available. As UTC's motion for a preliminary injunction in the patent proceeding reflects, alternative relief is available to it because an NDA holder or patent owner may assert a claim of patent infringement against the 505(b)(2) applicant in response to the notice of Paragraph IV certification and may seek injunctive relief during the pendency of the litigation despite the absence of a 30-month stay. And UTC cannot circumvent the "adequate remedy" bar based on the identity of the defendant. *Cf.* Pl. Mem. 31-32 (arguing that UTC's injuries are not

remediable in the patent litigation because that litigation raises different issues and the remedies run against Liquidia). A plaintiff cannot "maintain an action under the APA directly against a federal agency for failure to investigate and rectify the wrongdoing of a third party where Congress had provided the plaintiff with a private right of action against the third party." *Garcia*, 563 F.3d at 524-25 (describing development of the adequate remedy jurisprudence). "The relevant question under the APA . . . is not whether private lawsuits against the third-party wrongdoer are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate." *Id.* at 525. Because the Second Patent Litigation affords UTC an adequate remedy, UTC cannot proceed under the APA before this Court.

### E. Although consideration of the merits is premature, UTC mischaracterizes FDA's guidance

The Court should not consider the merits of UTC's claims. FDA has made no determination—final or otherwise—that Liquidia's amendment is proper. And FDA cannot defend the merits of a decision not yet made.

UTC's principal contention is that FDA's guidance establishes a bright-line rule against amendments adding new indications. Pl. Mem. 1. As FDA makes clear above, it is considering the various arguments by UTC and Liquidia in their letters and will address them prior to a decision on Liquidia's application. In the meantime, the Court does not need to decide the substantive merits of UTC's claims in order to deny a TRO and preliminary injunction here and should not automatically accept UTC's characterization of that guidance as a binding rule.

**II.   UTC has not demonstrated that it is likely to suffer an irreparable harm**

UTC also has not satisfied the D.C. Circuit's "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Under this standard, the movant must clearly show harm that is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and that is beyond remediation. *League of Women Voters*, 838 F.3d at 7-8 (cleaned up). UTC's proffered injuries do not meet the D.C. Circuit's test.

As discussed, all of UTC's harms are speculative. *See supra* pp. 10-16. FDA has not determined the propriety of Liquidia's amendment, much less whether its amended application is approvable. Thus, it is not "certain" that UTC will suffer any injury—all of which depend on how FDA resolves those issues. *League of Women Voters*, 838 F.3d at 7. Moreover, the judgment in the First Patent Litigation blocks FDA approval of Yutrepia until 2027. Final Judgment, *United Therapeutics*, 20-cv-755-RGA, ECF No. 436, at 2 ¶ 4 (D. Del. Sept. 9, 2022). Although UTC fears modification of that order, this Court should not issue a TRO or preliminary injunction based on a prediction of what another court might do. *See Whole Woman's Health Alliance v. FDA*, No. 3:23-cv-00019, 2023 WL 5401885, at *8 (W.D. Va. Aug. 21, 2023) ("[I]t is neither necessary nor appropriate to issue a preliminary injunction in anticipation of or because of a ruling from another court.").

Apart from the injuries' speculative nature, UTC erroneously contends that its alleged economic harm qualifies as irreparable simply because it cannot recover

23

damages from FDA. *See* Pl. Mem. 31-32. That is "not the law of this Circuit" though because it "effectively eliminate[s] the irreparable harm requirement" for sovereign defendants. *Air Transp. Ass'n of Am. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012). Rather, "even where the United States is the defendant, 'a plaintiff must establish that the economic harm is so severe as to cause extreme hardship to the business.'" *Cal. Ass'n of Private Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 171 (D.D.C. 2018) (quoting *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008)); *see, e.g.*, *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (Bates, J.) ("To shoehorn potential economic loss into a showing of irreparable harm, a plaintiff must establish that the economic harm is so severe as to 'cause extreme hardship to the business' or threaten its very existence.") (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 2d 1019, 1025 (D.D.C. 1981)).

UTC fails to make that showing. The company claims "harm in the form of price erosion, lost market share, and loss of goodwill," Pl. Mem. 32, but it does not suggest that these injuries will cause extreme hardship to the company or threaten its existence. "In short, the harm [UTC] alleges . . . is really just economic, and given [UTC's] status as a leading . . . manufacturer and its already-large market presence, the potential financial impact on [UTC]'s business is too small to support a finding of irreparable harm." *Mylan Labs. Ltd. v. FDA*, 910 F. Supp. 2d 299, 313-14 (D.D.C. 2012) (Bates, J).

### III.   The balance of equities and public interest weigh against an injunction

Nor would the TRO or preliminary injunction UTC seeks be equitable or in the public interest. To the contrary, enjoining FDA before it has even taken final agency

action under a regulatory program committed to its administration would impede the public interest. *See Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interests of private litigants must give way to the realization of public purposes."). Indeed, the APA contemplates deferential review based upon an administrative record, and that record does not exist until there has been a reviewable final agency action. The public interest does not favor short-circuiting the APA. *See Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 2d 20, 29-30 (D.D.C. 1997) (noting the "strong argument[] that the public interest favors permitting an agency to proceed with its administrative process without interference"). That is especially true where, as here, the alleged injuries to the movant may never materialize.

### CONCLUSION

The Court should deny UTC's Motion for a Temporary Restraining Order and/or Preliminary Injunction.

DATED: March 18, 2024                              Respectfully submitted,

                                                   */s/ Noah T. Katzen*
                                                   NOAH T. KATZEN
                                                   SAMUEL BALLINGRUD
                                                   Trial Attorneys
                                                   Consumer Protection Branch
                                                   Civil Division, Department of Justice
                                                   P.O. Box 386
                                                   Washington, DC  20044-0386
                                                   (202) 305-2428 (Katzen)
                                                   202) 616-0509 (Ballingrud)
                                                   (202) 514-8742 (fax)
                                                   Noah.T.Katzen@usdoj.gov
                                                   Samuel.B.Ballingrud@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail through that system to all counsel of record.

March 18, 2024                                        */s/ Noah T. Katzen*

                                                      Noah T. Katzen