```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


    UNITED THERAPEUTICS CORPORATION,    .
                                        .
            Plaintiff,                  .   CA No. 24-0484 (JDB)
                                        .
        v.                              .
                                        .
    FOOD AND DRUG ADMINISTRATION,       .   Washington, D.C.
    et al.,                             .   Thursday, March 7, 2024
                                        .   2:21 p.m.
            Defendants.                 .
    . . . . . . . . . . . . . . . . . . .


                     TRANSCRIPT OF STATUS HEARING
                BEFORE THE HONORABLE JOHN D. BATES
                    UNITED STATES DISTRICT JUDGE

 APPEARANCES:

For Plaintiff:                  WILLIAM M. JAY, ESQ.
                                BRIAN T. BURGESS, ESQ.
                                Goodwin Procter LLP
                                1900 N Street NW
                                Washington, DC 20036

                                SHAUN R. SNADER, ESQ.
                                United Therapeutics Corporation
                                1735 Connecticut Avenue NW
                                Second Floor
                                Washington, DC 20009

For Defendants:                 NOAH T. KATZEN, ESQ.
                                U.S. Department of Justice
                                450 5th Street NW
                                Washington, DC 20530

For Intervenor Defendant:       BRYAN M. KILLIAN, ESQ.
                                Morgan, Lewis & Bockius LLP
                                1111 Pennsylvania Avenue NW
                                Washington, DC 20004

Court Reporter:                 BRYAN A. WAYNE, RPR, CRR
                                U.S. Courthouse, Room 4704-A
                                333 Constitution Avenue NW
                                Washington, DC 20001
                                (202) 354-3186
```

P R O C E E D I N G S

(Via Videoconference)

THE DEPUTY CLERK: Your Honor, we're on the record in civil case 24-484, United Therapeutic Corporation versus Food and Drug Administration and Liquidia Technologies. Starting with plaintiff's counsel, please state your appearances for the record.

MR. JAY: Good afternoon. William Jay, Goodwin Procter, for United Therapeutics.

MR. BURGESS: Good afternoon, Your Honor. Brian Burgess, also from Goodwin Procter, for United Therapeutics.

MR. SNADER: Shaun Snader, in-house counsel at United Therapeutics, also for United Therapeutics.

MR. KATZEN: For federal defendants, Your Honor, Noah Katzen from the Department of Justice.

MR. KILLIAN: And for the Intervenor Liquidia, Bryan Killian with Morgan, Lewis & Bockius.

THE COURT: All right. Good afternoon to you all, and thank you for your availability. I just wanted to get you together to talk about scheduling.

There's been a request for a schedule that I understand everyone, including Liquidia, has agreed to, which would have briefing take place with a response to the preliminary injunction on March 18, any reply on March 22, and then any hearing set thereafter with the government requesting that it

1    be held on March 27 or later.

2         And what's compelling the timing here, I understand, is

3    the expiration of the regulatory exclusivity on March 31, but

4    there's also the impact of Judge Andrews' decision that is, as

5    far as I know, no one has advised me otherwise, which is still

6    in place, ordering that any final approval by the FDA can't take

7    place until the expiration of the '793 patent, which is in 2027.

8         That, of course, is a patent that has been invalidated, if

9    you will, through a proceeding first before the Patent Trial and

10   Appeal Board and then to the federal circuit, although there's a

11   pending *en banc* petition at the federal circuit at this time.

12        So what I really want to find out is not anything about

13   the merits.  I'm not asking you to argue on the merits or give

14   me any views, although I wouldn't be shocked if one of you

15   touches the merits in what you say, but what I want to find out,

16   I guess principally from the FDA, is what are we really dealing

17   with in terms of timing?

18        UTC is concerned that as of -- let's call it April 1 rather

19   than March 31 -- as of April 1, a decision may come down at any

20   moment from the FDA approving the Liquidia application.  Is that

21   right?  Is that what I should be concerned about?  Or is there

22   something more subtle in terms of where things stand with

23   respect to the FDA?

24             MR. KATZEN:  Thank you, Your Honor.  So as things

25   stand, no, there will not be any approval on March 31 because,

1    as Your Honor noted, there is in effect another district court
2    that blocks approval from becoming effective until March 14,
3    2027, and there's no indication that that's going to change.
4         Our understanding is the same as yours, that it remains
5    pending still and has not yet been ruled upon by that district
6    court.  So under the present state of the facts, no, there will
7    not be effective approval on March 31.
8              THE COURT:  Well, let's say those facts change.  Let's
9    say that on March 25 -- well, let's say on March 24th -- I don't
10   know if that's a weekday or not, but that doesn't matter for
11   purposes of my hypothetical.
12        Let's say on March 24 the federal circuit denies *en banc*
13   review, and then on March 25 Judge Andrews issues an order
14   vacating his earlier order requiring that the effective date
15   of any final approval has to be dependent upon the expiration
16   of the '793 patent.  So let's assume that that happens on March
17   24th and 25th.  What then is the situation with the FDA?
18             MR. KATZEN:  I can't make any representations about
19   the timing of any approval that there is no district court order
20   blocking us.  I can say, however, even then from our perspective
21   there's not really an emergency to rule before then.  It's quite
22   common for courts to adjudicate preliminary injunctions after
23   FDA approval has been given.  In many cases, the lawsuit hasn't
24   even been filed before the approval.  I can't imagine what the
25   FDA will do if there's no court order --

1          THE COURT: No, you're effectively arguing the merits
2  of the preliminary injunction and whether there's actually
3  irreparable harm.
4          MR. KATZEN: It bleeds into that a little bit,
5  Your Honor. But I think the point I'm trying to make is that
6  I don't think Your Honor should feel pressured to get a decision
7  by March 31, even if one assumes that FDA would approve the
8  product by then.
9          THE COURT: Well, to continue on with my discussion
10 with you, Mr. Katzen, would the FDA be amenable to agreeing to
11 provide notice sometime in advance of any decision on the
12 pending approval?
13         MR. KATZEN: So if that's what Your Honor orders us
14 to do, of course we'll do that. We can't agree to do that
15 voluntarily because, as we read the statute, once the conditions
16 for approval are satisfied under Section 355(c) and we're upon
17 the earliest effective date that approval can be had, FDA is
18 required to then make its approval decision at that time. Of
19 course, we'll comply with whatever Your Honor orders us.
20    I would also suggest that there's also a possibility --
21 I don't know what Liquidia's plans for launching the product
22 if it were to obtain the approval were, but maybe there's a
23 possibility that they be able to make some kind of representation
24 about when the product would actually be launched.
25         THE COURT: I'm going to get to that in a moment, but

1     it sounded like you said that, in saying that you couldn't
2     agree -- you on behalf of FDA -- couldn't agree to a notice
3     type of provision, that you're constrained because of what
4     the requirements are and that the requirements are that FDA
5     act immediately?  Explain that to me.
6               MR. KATZEN:  There's certain findings in Section
7     355(d), 21 U.S.C. § 355(d), the FDA has to make determinations.
8     Those findings are made and --
9               THE COURT:  They haven't been made yet?
10              MR. KATZEN:  I can't make any representations about
11    that.  I can say that, if they are and if the effective date of
12    the -- if the statutory, mandated effective date is now, then the
13    statute doesn't give FDA discretion to agree to postpone that.
14       If the court were to order us to give the -- I think the
15    court did something similar in the *Hi-Tech* case where I think
16    you ordered FDA to give 12 hours' advance notice.  We would, of
17    course, comply with that order if the court wanted to issue such
18    an order for administrative convenience purposes.
19              THE COURT:  All right.  So it sounds like the FDA
20    is not prepared to provide much assistance to the court in
21    terms of scheduling here, that your position is that you can't
22    voluntarily agree even to notice, and that you can't provide
23    any information with respect to when the FDA might act once the
24    impediments are removed, the March 31st date on the exclusivity
25    and Judge Andrews' order, which itself may be dependent somewhat

1  on the federal circuit's determination on *en banc*, but you can't
2  give any information that would be helpful to the court in terms
3  of when the court needs to decide.
4        In other words, even if I were to put in place the schedule
5  that the parties are suggesting, the March 18th filing date, the
6  March 22nd filing date, and a hearing on March 27th, 28th, or
7  29th, there's not much time between that hearing and March 31st
8  for the court to act.
9        And there's nothing that the FDA is willing or able to do
10 to alleviate that time circumstance other than to say if I order
11 notice you'll comply and to argue that there isn't really
12 irreparable harm and that I should ask Liquidia about its
13 launch.  Have I got your position roughly correct?
14              MR. KATZEN:  I cannot make the representation Your
15 Honor is asking for.  So I think that's accurate, Your Honor.
16              THE COURT:  All right.  So let me hear from Liquidia
17 in terms of the launch.  There is usually in these contexts some
18 time that is necessary once the FDA acts to actually get a
19 product on the market, and I mean really on the market so that
20 the product can be purchased in pharmacies, by individuals.
21              MR. KILLIAN:  Yes.  That's my general understanding as
22 well, Your Honor.  Liquidia's committed to getting its product
23 to the market as quickly as possible.  Exactly how much time it
24 would need between an approval and its ability to market would
25 relate to some sensitive business information that I'm not in a

position to disclose.  But, yes, there is a little bit of time that would be necessary after an approval.

THE COURT:  You say you're not in a position to disclose it.  You mean to disclose it to the public or your competitor?  You don't mean, I take it, that you're not in a position to disclose it to the court.

MR. KILLIAN:  That's correct, Your Honor.  It pertains to sensitive business information.

THE COURT:  But there is some period of time after March 31st that would elapse before the Liquidia product or products are actually available for purchase in the marketplace.

MR. KILLIAN:  Yes, Your Honor.  If we're using the same hypothetical of a federal circuit decision and Judge Andrews reconsidering or lifting his order on that 24th/25th date, right?  Because those are also in play for Liquidia to the same extent they are to the FDA.  There is some time that Liquidia would need between a final approval and its ability to launch the product.

THE COURT:  Yeah, I understand that you can't really do everything that is necessary until you have that final approval.

MR. KILLIAN:  Exactly.

THE COURT:  All right.  So now I'll turn to UTC and see if you can give me any help on scheduling.  And it may be that I should just schedule as you've suggested including

1  setting a hearing date and maybe put in place some kind of
2  notice requirement for the FDA and then deal with it as needed
3  and as promptly as I can.  I'm just concerned that there isn't
4  really very much time.
5       I think, in all likelihood, I have to have the hearing
6  on that Friday the 29th.  I will be out of the country until
7  shortly before then, and so probably it's the 29th that's the
8  date for a hearing.  And to have to issue a decision, and I hope
9  that you would expect me to issue a careful, well-thought-out
10 decision.  The next business day after the argument is something
11 that might be asking more than I really want to bargain for.
12      So what's UTC think about what it's heard so far relevant
13 to scheduling and whether, with the schedule that you propose
14 and a hearing date on the 29th, if I put in some -- a relatively
15 short; I don't mean 12 hours, but maybe a day or two -- notice
16 requirement from the FDA, whether that's a workable schedule
17 for us to deal with here.
18           MR. JAY:  Thank you, Your Honor.  Your questions to
19 my friends brought out exactly why UTC have come to the court.
20 We met and conferred with the FDA.  They were not able to give
21 us any information about timing, and your questions about the
22 possibility of Judge Andrews lifting his order brings out
23 exactly what we're worried about, that if that order is lifted,
24 that FDA could approve the NDA that same day and has not told us
25 that it wouldn't.

1        And then I would just bring to the court's attention, this
2   is at page 18 of our PI motion memorandum, that at the J.P.
3   Morgan Health Care Conference, Liquidia was asking --
4            THE COURT:  I'm sorry.  You'll have to start over.
5   You referred me to page 18?
6            MR. JAY:  So this is document 14-1, our memorandum,
7   and then the ECF pagination is page 27, but the page number at
8   the bottom is page 18 of the memo.
9            THE COURT:  All right.
10           THE DEPUTY CLERK:  I'm sorry, Your Honor.  I think we
11  lost one of the attorneys?
12           THE COURT:  We lost one of the attorneys.  The other
13  two attorneys for UTC may not be happy without the third attorney.
14           THE DEPUTY CLERK:  Okay.  There's somebody waiting in
15  the room.  I can just see if that's him trying to come back in.
16           THE COURT:  Just hold on a second.
17           THE DEPUTY CLERK:  Hi.  Good afternoon.  Can the
18  person who just -- I'm sorry?
19           MR. SNADER:  This is Shaun Snader for United
20  Therapeutics.  I'm sorry.  My connection died, so I'm trying
21  to dial in.
22           THE DEPUTY CLERK:  Okay, great.  Thank you.
23           MR. JAY:  Glad to have our client back.
24       Thank you, Your Honor.  Your Honor, were you able to find
25  the page that I had referred to?

1          THE COURT:  I have page 18.  I'm not sure what exactly
2     you're referring to.
3          MR. JAY:  So under heading E, there's a quote from
4     Exhibit 5, which is a transcript of the J.P. Morgan Health Care
5     Conference in which Liquidia was asked "when will you be ready
6     to launch" and Liquidia said "we're ready now."
7          So that is, in one sentence, why we've come to the court,
8     because we're not able to be confident that if FDA were to
9     approve the product on, let's say, Monday, April 1, that
10    Liquidia would not start moving its product on Monday, April 1.
11         And I appreciate what Mr. Killian said this afternoon, but
12    because of what Liquidia has told the markets, I think we have
13    to go based on that representation, and we would need something
14    more definitive than Mr. Killian was able to state a few minutes
15    ago before saying that the court would not need to rule on this
16    PI.
17         Now, if the court put in some provision whereby the court
18    and the parties would have notice before FDA ruled, I think that
19    would address the reasons why we've come to the court, and if
20    FDA is not going to approve the NDA, then the court doesn't need
21    to rush.
22         THE COURT:  All right.  So I think I find myself
23    in the position that I expected to find myself in, and that
24    is that, if I adopt the schedule that all the parties have
25    proposed including setting a hearing date for the end of that

1    week and I require -- because FDA says it would have to be
2    something the court requires -- notice before the decision on
3    Liquidia's application -- I'll call it an application -- then
4    everybody can live with that and thinks that that would work.
5         But I have one question for the FDA in that context.
6    Should I expect -- and I know it's early, but I think that
7    in all likelihood the FDA and Mr. Katzen, its attorney, have
8    thought about this.  Should I expect that on March 18th I'll
9    only be seeing an opposition to the motion for preliminary
10   injunction, or is there any kind of a motion to dismiss that
11   the FDA would be contemplating filing at that same time?
12            MR. KATZEN:  I think I can say right now, our
13   intention is to file an opposition to the motion for preliminary
14   injunction.  I don't want to rule out any other possibility, but
15   I think right now our plan is to follow regular order and simply
16   oppose the motion for preliminary injunction at this time.
17            THE COURT:  All right.
18            MR. KATZEN:  May I make one other request if the court
19   enters an order as well?  Just to limit disclosure of any
20   advance information about the timing of an approval decision,
21   would Your Honor be amenable to us providing such notice either
22   under seal or *ex parte*?
23            THE COURT:  Is this a concern about impact on the
24   marketplace?
25            MR. KATZEN:  I think it's a concern about reviewing

1  pre-approval information about applications which FDA regards as
2  confidential and potentially implicated by various regulations
3  and statutory provisions.
4        THE COURT:  The notice that I'm contemplating would
5  not be notice of what the decision is, but just when decision
6  will be issued.
7        MR. KATZEN:  Understood, Your Honor.
8        THE COURT:  You still think that that would have to be
9  under seal, confidential?
10       MR. KATZEN:  I don't think so, but I will confer with
11 my client, and if we determine that we think it does need to be,
12 we may file an accompanying motion to seal which Your Honor can
13 rule on as you see fit.
14       THE COURT:  All right.  So while we're on that
15 question, there's also a motion that is pending to seal certain
16 materials, and I think -- well, let me ask this:  I'll be
17 careful in what I'm asking about it, but is the motion which
18 only deals with certain parts of the record, I think three
19 letters and a declaration, is the motion designed to keep any
20 of that information out of the hands of Liquidia?  The letters,
21 of course, I think they already have.
22       MR. JAY:  Well, not out of Liquidia's -- not out of
23 the hands of Liquidia's counsel so they can litigate the case,
24 but it does include commercially sensitive information that we
25 would not want to share with the public or with Liquidia's

1     business people.

2              THE COURT:  That includes the letters?  Are the
3     letters something that's not available to Liquidia already?

4              MR. JAY:  That's correct.  We're not concerned about
5     Liquidia having access to the letters.  As we understand it, the
6     letters are subject to confidential treatment under a regulation
7     that governs this form of letter exchange before the FDA, and so
8     they shouldn't be made public.  But the declaration that we
9     submitted is what poses the most significant considerations
10    about sharing it with Liquidia itself.  Again, we don't object
11    to Liquidia's outside counsel being able to see that.

12             THE COURT:  I'll have to look at the motion and look
13    at the order that's been provided with it to see if it actually
14    does what you're indicating, but I'm a little bit reluctant to
15    enter any kind of an order that would prevent one of the parties
16    to the case -- and Liquidia is now a party to the case -- from
17    litigating the case with full access to the materials that the
18    court is being asked to rely on.

19             MR. JAY:  If it would help, Your Honor, we have and
20    can share with the other parties online a draft protective order
21    that we could reach agreement -- I'm sure we could reach
22    agreement on the terms of that and propose it to the court.
23    As is not uncommon, some information that's filed with the court
24    is reviewed by the parties on an outside-counsel basis if
25    there's a reason for designating it as such.  Again, I don't

1    think the letters would be designated for outside counsel
2    treatment only.
3            THE COURT:  Well, why don't you do what you're
4    suggesting.  I was going to suggest this myself, and that is,
5    see if you can't expedite any protective-order treatment for
6    those materials or anything else that would be subject to it,
7    and that will be the best way to handle it.
8           Because it sounds like you're urging different treatment
9    for different materials — you know, one set of materials is the
10   three letters, one set of materials is one declaration, and I
11   think if you all can discuss and agree to a proper protective
12   order, that will be the best way to deal with it.
13           I'll wait to hear further on that and won't rule with
14   respect to that sealing motion at this time.  I will, however,
15   issue a scheduling order that adopts the schedule that you've
16   proposed and sets a hearing on March 29.  That's a Friday.
17   Let's say at eleven o'clock?  Will that work?
18            MR. JAY:  Yes.
19            MR. KATZEN:  Yes.
20            MR. KILLIAN:  Yes.
21            THE COURT:  So eleven o'clock on March 29.  And I
22   am also -- I'll look at it carefully, but I'm also inclined to
23   include the type of notice -- just notice that a decision will
24   be made, not what the decision is, but just notice to the
25   parties and the court that a decision will be made -- I'd like

   1    to say two business days in advance?  Is there -- I know you
   2    can't agree to anything, Mr. Katzen, but I do want to give you
   3    the opportunity to tell me that that will be the end of the
   4    world.
   5            MR. KATZEN:  If Your Honor's going to issue an order
   6    requiring advance notice, I don't have a particular objection to
   7    two days.
   8            THE COURT:  All right.  With that, is there anything
   9    else that someone thinks would be profitable for us to discuss
  10    here today?  First I'll turn to UTC.
  11            MR. JAY:  Not for UTC.  You thank you, Your Honor.
  12            THE COURT:  From the FDA, Mr. Katzen?
  13            MR. KATZEN:  Not from FDA, Your Honor.
  14            THE COURT:  And from Liquidia.  Mr. Killian.
  15            MR. KILLIAN:  Only one question, Your Honor.  When
  16    you asked earlier about entertaining -- about FDA's position
  17    on a motion to dismiss, were you inviting one, or were you just
  18    asking?
  19            THE COURT:  I'm not inviting anything.  I asked
  20    it only because -- well, I guess maybe for two reasons, but
  21    primarily I ask it trying to anticipate how much work lies
  22    ahead of me.
  23            MR. KILLIAN:  Understood.
  24            THE COURT:  That's the main reason to ask it.  I
  25    suppose -- you know, this isn't an unusual situation in these

1   pharmaceutical cases, but it is a situation where a complaint
2   is filed that is challenging a decision that according to the
3   plaintiff has already been made, that is, the decision to accept
4   the amended NDA.  But the preliminary injunction relates to a
5   different decision that has not yet been made, and that is the
6   decision to approve the NDA.
7        There's very little in the complaint that goes beyond the
8   decision to accept, but I understand that it's hard to separate
9   the -- at least from UTC's perspective, it's hard to separate
10  that earlier decision to accept from the feared decision to
11  approve.
12             MR. KILLIAN:  Understood.  And I guess Your Honor
13  wanted to communicate that.  I think it is eventually Liquidia's
14  goal to file a motion to dismiss in this case, and so if the
15  court would prefer to have that done sooner, that's why
16  I followed up.  But if the court would prefer to hear it later,
17  we can do that as well.
18             THE COURT:  I'm not going to dictate the strategy of
19  the counsel and the parties.
20             MR. KILLIAN:  Okay.
21             THE COURT:  I deal with things as they are presented
22  to me.  Often, an argument for dismissal is also an argument
23  relevant to the likelihood of success for purposes of preliminary
24  injunction consideration, so the two are not totally removed
25  from each other.

1        MR. KILLIAN:  Okay.  Thank you.  That's all from
2 Liquidia.
3        THE COURT:  All right.  Well, thank you all very much
4 again for your availability and for the enlightening, although
5 cautious and reserved, particularly with respect to the FDA,
6 information.
7         I will look for the filings to come in the next two weeks
8 and then for a hearing on March 29 at 11 a.m.  And then you can
9 look for a decision sometime soon thereafter, but we'll see
10 exactly where we are with respect to the timing of things.
11 Thank you all.
12        (Proceedings adjourned at 3:05 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne