**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED THERAPEUTICS CORPORATION, <br> *Plaintiff*, <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, *et al.*, <br> *Defendants*, <br><br> and <br><br> LIQUIDIA TECHNOLOGIES, INC., <br> *Defendant-Intervenor*. | No. 24-cv-484-JDB <br><br> <u>**HEARING SCHEDULED FOR MARCH 29, 2024**</u> |

**PLAINTIFF UNITED THERAPEUTICS CORPORATION'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION FOR A TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Shaun R. Snader (D.C. Bar No. 492231)
UNITED THERAPEUTICS CORPORATION
1735 Connecticut Ave. NW, 2nd Floor
Washington, DC 20009
(202) 304-1701

Douglas Carsten (admitted *pro hac vice*)
Art Dykhuis (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633

Adam W. Burrowbridge (D.C. Bar No.
  1001783: admission pending)
Paul Hughes (D.C. Bar No. 997235)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8797

William C. Jackson (D.C. Bar. No. 475200)
William M. Jay (D.C. Bar No. 480185)
Brian T. Burgess (D.C. Bar No. 1020915)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20001
(202) 346-4000

Gerard J. Cedrone (D.D.C. Bar No. MA0019)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

March 22, 2024                                    *Counsel for United Therapeutics Corporation*

## TABLE OF CONTENTS

Introduction.................................................................................................................1

Argument .................................................................................................................3

    I.      Defendants' threshold arguments present no impediment to this Court's
          review..............................................................................................................3

          A.    UTC has Article III standing to pursue this APA action. .......................... 3

          B.    UTC challenges a final agency action. ...................................................... 6

                1.    FDA confuses its decision to accept Liquidia's amendment
                       as such with its substantive review of Liquidia's NDA................. 7

                2.    The agency's exercise of its power carries legal
                       consequences........................................................................................ 8

                3.    UTC's letter exchange with the agency does not undermine
                       finality. ............................................................................................. 10

          C.    Parallel patent litigation does not provide an adequate alternative
               remedy..................................................................................................... 11

          D.    The Court should maintain the status quo................................................. 13

    II.      UTC is likely to succeed on the merits. .................................................14

          A.    The Bundling Rule cannot be brushed aside as nonbinding. .................... 14

          B.    The Bundling Rule bars adding new indications through
               amendment. .............................................................................................. 15

          C.    Liquidia's amendment is a major amendment that improperly
               includes data to support a new indication under 21 C.F.R. §
               314.60(b)(6). ........................................................................................... 17

    III.    UTC will suffer ongoing irreparable harm absent an injunction. ..........................19

    IV.    The public interest and the balance of the equities favor relief for UTC. .............23

Conclusion .............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*32 County Sovereignty Comm. v. Dep't of State*,
   292 F.3d 797 (D.C. Cir. 2002) ..................................................................10

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*,
   840 F. Supp. 2d 327 (D.D.C. 2012) ...........................................................21

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
   141 S. Ct. 2485 (2021) .................................................................................21

*Am. Acad. of Pediatrics v. FDA*,
   379 F. Supp. 3d 461 (D. Md. 2019) ............................................................15

*\*Apotex, Inc. v. FDA*,
   2006 WL 1030151 (D.D.C. Apr. 19, 2006) (Bates, J.), *aff'd and remanded*,
   449 F.3d 1249 (D.C. Cir. 2006) ..............................................................8, 19

*Avadel CNS Pharms., LLC v. Becerra*,
   638 F. Supp. 3d 23 (D.D.C. 2022) .......................................................12, 13

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) .....................................................................................11

*\*Braeburn Inc. v. FDA*,
   389 F. Supp. 3d 1 (D.D.C. 2019) ............................................................6, 9

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ......................................................................21

*Chamber of Commerce of U.S. v. Edmondson*,
   594 F.3d 742 (10th Cir. 2010) ....................................................................21

*\*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) ..................................................................11

*Clevinger v. Advoc. Holdings, Inc.*,
   2023 WL 5220570 (D.D.C. Aug. 15, 2023) ...............................................23

*Columbia Falls Aluminum Co. v. EPA*,
   139 F.3d 914 (D.C. Cir. 1998) ....................................................................11

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
   438 U.S. 59 (1978) .........................................................................................6

*Everglades Harvesting & Hauling, Inc. v. Scalia,*
    427 F. Supp. 3d 101 (D.D.C. 2019) ...................................................20

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) .........................................................11

*Gen. Elec. Co. v. EPA,*
    290 F.3d 377 (D.C. Cir. 2002) .........................................................14

*Gonzalez Boisson v. Pompeo,*
    459 F. Supp. 3d 7 (D.D.C. 2020) (Bates, J.) ..............................11, 12

*Int'l Ladies' Garment Workers' Union v. Donovan,*
    722 F.2d 795 (D.C. Cir. 1983) ...........................................................5

*Iowa Utils. Bd. v. FCC,*
    109 F.3d 418 (8th Cir. 1996) ...........................................................21

*\*Ipsen Biopharmaceuticals, Inc. v. Becerra,*
    2023 WL 3319366 (D.D.C. May 8, 2023) ..........................................6

*Jibril v. Mayorkas,*
    20 F.4th 804 (D.C. Cir. 2021) ........................................................3, 4

*Lannett Co. v. FDA,*
    300 F. Supp. 3d 34 (D.D.C. 2017) ....................................................8

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ............................................................22

*Luokung Tech. Corp. v. Dep't of Def.,*
    538 F. Supp. 3d 174 (D.D.C. 2021) .................................................22

*Meredith v. Fed. Mine Safety & Health Rev. Comm'n,*
    177 F.3d 1042 (D.C. Cir. 1999) ........................................................8

*Mexichem Specialty Resins, Inc. v. EPA,*
    787 F.3d 544 (D.C. Cir. 2015) ........................................................21

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell,*
    915 F.3d 197 (4th Cir. 2019) ..........................................................21

*Mylan Pharms., Inc. v. Shalala,*
    81 F. Supp. 2d 30 (D.D.C. 2000) ....................................................20

*Nat'l Treasury Emps. Union v. FLRA,*
    745 F.3d 1219 (D.C. Cir. 2014) ........................................................7

*Norwich Pharms., Inc. v. Becerra,*
    2023 WL 7174558 (D.D.C. Nov. 1, 2023) ........................................................................13

*Nostrum Pharms., LLC v. FDA,*
    35 F.4th 820 (D.C. Cir. 2022) ...........................................................................................8

*In re NTE Conn., LLC,*
    26 F.4th 980 (D.C. Cir. 2022) .........................................................................................21

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.,*
    715 F.3d 1268 (11th Cir. 2013) .......................................................................................21

*Pfizer Inc. v. Shalala,*
    182 F.3d 975 (D.C. Cir. 1999) ...........................................................................................5

*Philip Morris USA Inc. v. FDA,*
    202 F. Supp. 3d 31 (D.D.C. 2016) ...................................................................................15

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    659 F.3d 1142 (Fed. Cir. 2011) ..................................................................................21, 23

*\*Sackett v. EPA,*
    566 U.S. 120 (2012) .........................................................................................................10

*Syncor Int'l Corp. v. Shalala,*
    127 F.3d 90 (D.C. Cir. 1997) ...........................................................................................15

*Teva Pharms. USA, Inc. v. Sebelius,*
    595 F.3d 1303 (D.C. Cir. 2010) .........................................................................................7

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ...........................................................................................................4

*Whole Woman's Health Alliance v. FDA,*
    2023 WL 5401885 (W.D. Va. Aug. 21, 2023) ................................................................23

*Xiaomi Corp. v. Dep't of Def.,*
    2021 WL 950144 (D.D.C. Mar. 12, 2021)........................................................................23

**STATUTES:**

5 U.S.C. § 704............................................................................................................................11

21 U.S.C. § 355(c)(3)(C) .............................................................................................................9

21 U.S.C. § 355(c)(3)(D)(ii) ......................................................................................................13

**REGULATIONS & RULEMAKINGS:**

21 C.F.R. § 10.115(d)(3)................................................................................................15

21 C.F.R. § 314.60(b)(6)....................................................................................17, 18, 19

*21 C.F.R. § 314.60(e)..................................................................................................16

21 C.F.R. § 314.101(a)(1) ...............................................................................................4

73 Fed. Reg. 39,588, 39,602 (July 10, 2008)...............................................................18

80 Fed. Reg. 6802 (Feb. 6, 2015) ........................................................................1, 16, 17

81 Fed. Reg. 69616 (Oct. 6, 2016)................................................................................16

**RULES:**

Fed. R. Civ. P. 60(b) ...............................................................................................22, 23

**LEGISLATIVE HISTORY:**

148 Cong. Rec. S6844 (daily ed. July 16, 2002) ..........................................................16

H.R. Rep. No. 108-391 (2003).................................................................................16, 17

*Hearing Before the Subcomm. on Health of the House Comm. on Energy &
    Commerce*, 107th Cong. (2002) ...............................................................................17

**GLOSSARY**

'327 patent ..........................................U.S. Patent No. 11,826,327

'793 patent ..........................................U.S. Patent No. 10,716,793

1993 Bundling Rule ..........................FDA, *Interim Guidance: Separate Marketing Applications and Clinical Data for Purposes of Assessing User Fees Under the Prescription Drug User Fee Act of 1992* (July 12, 1993)

2004 Bundling Rule ..........................FDA, *Guidance for Industry: Submitting Separate Marketing Applications and Clinical Data for Purposes of Assessing User Fees* (Dec. 2004)

ANDA .................................................abbreviated new drug application

Burgess Decl. ....................................Declaration of Brian T. Burgess in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 14-2)

FDA....................................................Food and Drug Administration

FDA Mem. .........................................Federal Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction (ECF No. 26)

FDCA .................................................Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq.

Katzen Decl........................................Declaration of Noah T. Katzen (ECF No. 26-1)

Liquidia ..............................................Liquidia Technologies, Inc.

Liquidia Mem.....................................Liquidia Technologies, Inc.'s Memorandum of Points and Authorities in Opposition to UTC's Motion for Interim Relief (ECF No. 24)

MMA...................................................Medicare Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066

NDA ...................................................new drug application

Orange Book ......................................FDA, *Approved Drugs with Therapeutic Equivalence Evaluations*

PAH.....................................................pulmonary arterial hypertension

PH .......................................................pulmonary hypertension

PH-ILD .............................................pulmonary hypertension associated with interstitial lung disease

PTAB ................................................Patent Trial and Appeal Board

UTC...................................................Plaintiff United Therapeutics Corporation

UTC Mem. ........................................Plaintiff United Therapeutics Corporation's Memorandum in Support of its Motion for a Temporary Restraining Order and/or Preliminary Injunction (ECF No. 14-1)

## INTRODUCTION

UTC's central argument stands unrefuted: FDA inexplicably set aside its own rules in accepting Liquidia's NDA amendment. Liquidia amended its NDA to apply to market Yutrepia for a new indication—treatment of PH-ILD—based on studies that UTC conducted to support using its product for that novel method. Under FDA's longstanding policies and precedents, that amendment was improper. The Bundling Rule provides that "a pending original or supplemental application *should not be amended to add a new indication*." Burgess Decl., Ex. 4, at 9 (emphasis added). Yet FDA accepted Liquidia's amendment for substantive review, preventing UTC from obtaining a 30-month stay. None of this is "speculation." FDA Mem. 2. FDA formally accepted Liquidia's amendment; set a review date; and informed Liquidia that no 30-month stay would apply to any patents listed after the submission of Liquidia's *original* NDA. *See* Compl. ¶ 55; Katzen Decl., Ex. A. Liquidia got the message. It has told the market it expects to launch Yutrepia for "both" the original indication and the new PH-ILD indications imminently, precisely because UTC's patents "won't trigger a regulatory stay." UTC Mem. 18.

FDA declines to defend its acceptance on the merits, and Liquidia never tries to reconcile its amendment with the Bundling Rule. Instead, Liquidia minimizes the Rule as mere guidance that applicants may disregard and implies that the 2003 MMA and its implementing regulations superseded the Rule's restriction on adding new indications by amendment. Until this case, however, FDA has treated the Bundling Rule as binding, refusing to accept amendments like Liquidia's that violate its terms. *See* UTC Mem. 11 n.6, 24-26 & n.10; p. 14, *infra*. FDA has adhered to that position before *and after* the MMA and the regulations that Liquidia touts. That is unsurprising: as FDA itself has recognized, Congress structured the MMA to "preserve rather than disrupt FDA processes regarding submission of amendments" to Section 505(b)(2) applications. Proposed Rule, Abbreviated New Drug Applications and 505(b)(2) Applications, 80 Fed. Reg.

6802, 6851 (Feb. 6, 2015).

Unable to defend FDA's decision on the merits, FDA and Liquidia lean heavily on a host of procedural objections. These arguments boil down to the contention that UTC cannot challenge FDA's acceptance decision unless and until FDA approves Liquidia's amended NDA. If that were correct, it would require UTC to have *already* suffered irreparable harm before it could obtain judicial review. Fortunately, FDA and Liquidia are wrong. As explained below, FDA took final action by accepting Liquidia's amended NDA for review, and that action had immediate legal consequences: it deprived UTC of its statutory right to a 30-month stay and exposed UTC to the imminent risk of unlawful competition. The possibility that FDA might rescind its acceptance decision does not undermine finality or deprive UTC of standing, and Defendants' speculation that Liquidia might find other ways to evade a 30-month stay if acceptance were revoked is legally irrelevant. Nor does it matter that UTC sought emergency relief in a parallel patent case. The point of the 30-month stay is to obviate the need for those procedures, and if FDA had followed the law, UTC would be entitled to an *automatic* stay of approval of Liquidia's amended NDA. The fact that FDA's unlawful decision forced UTC to seek emergency relief in its patent suit only underscores the harm from FDA's APA violation.

Defendants offer only cursory responses to UTC's irreparable-harm showing. They ignore case law holding that the loss of a statutory right like the 30-month stay is inherently irreparable, and they do not seriously dispute the substantial unrecoverable economic harm that UTC will suffer upon FDA's approval of Liquidia's amended NDA. Defendants suggest that the Court can ignore this impending harm because it will not bankrupt UTC, but that is not the law.

UTC urges this Court to preserve the status quo and enter the requested preliminary injunction to protect it from suffering irreparable harm while this case proceeds.

## ARGUMENT

**I.      Defendants' threshold arguments present no impediment to this Court's review.**

FDA (but not Liquidia) attacks UTC's standing, and both Defendants advance non-jurisdictional threshold defenses.  But neither Defendant identifies a valid reason to shield the merits of FDA's decision from this Court's review.  Defendants claim that review of the decision to accept Liquidia's NDA amendment and deny a 30-month stay is premature, but they seek to block any review until after the statutory right to which UTC is entitled—a stay of approval—is lost and UTC suffers irreparable harm.

**A.      UTC has Article III standing to pursue this APA action.**

A lawsuit satisfies Article III's case-or-controversy requirement if: (1) the plaintiff seeks relief for an actual or imminent injury-in-fact, (2) the injury is fairly traceable to the defendant's conduct, and (3) a favorable judgment would provide relief from the injury.  *See Jibril v. Mayorkas*, 20 F.4th 804, 813 (D.C. Cir. 2021).  All three criteria are met here.  First, UTC has been injured by FDA's denial of the statutory 30-month stay and now faces permanent erosion of its market position upon Liquidia's launch of a PH-ILD product.  UTC Mem. 29-34.  Second, that injury flows directly from FDA's decisions.  The agency's acceptance of Liquidia's improper amendment deprives UTC of its statutory right to a 30-month stay, and the agency's impending approval of Liquidia's as-amended application will trigger the erosion of UTC's market position.  Third, a favorable judgment—one that bars the agency from approving Liquidia's application with the PH-ILD amendment—will avoid those injuries.  FDA argues (at 10-14) that there is "[n]o Article III case or controversy," but it fails to identify any constitutional impediment to UTC's claim.

1.      FDA argues (at 11-12) that UTC has not suffered an injury-in-fact because the agency "has [not] determined that Liquidia's amendment is proper" and "future resolution [of that issue] is unknown."  *See also* FDA Mem. 16 (arguing the agency merely "acknowledge[d] receipt"

of Liquidia's amendment).  That assertion is belied by regulation and past practice.  The agency does not just file any NDA that a party submits; it conducts an initial review within 60 days to "*determine* whether the NDA may be filed."  21 C.F.R. § 314.101(a)(1) (emphasis added).  "The filing of an NDA means that FDA has made a threshold determination that the NDA is sufficiently complete to permit a substantive review."  *Id.*  Moreover, in correspondence regarding Liquidia's July 2023 submission, FDA expressly "note[d] that the 45-day period" within which UTC may bring suit to trigger the 30-month stay "*does* apply with respect to the paragraph IV certification for" patents that UTC listed in the Orange Book before the submission date of Liquidia's original NDA.  Burgess Decl., Ex. 1, at 1 (Cooney Email).  Thus, FDA made clear that the 30-month stay *does not* apply to any patents that UTC added to the Orange Book after Liquidia submitted its original NDA.  FDA grudgingly agrees.  *See* FDA Mem. 16 ("[I]n September 2023, the agency implied that an amendment containing a Paragraph IV certification to the '793 patent would not trigger a 30-month stay because Liquidia originally submitted its NDA prior to the listing of that patent.").  If the agency were going to reject the amendment as facially improper, it could and would have done so then.  Indeed, that is exactly what the agency has done in the past: when an applicant has sought to add a new indication to a pending application by way of an amendment, FDA has promptly rejected the request.  *See, e.g.*, FDA, Administrative and Correspondence Documents, Application No. 021822, at PDF pp. 5-6 (May 2006), https://www.accessdata.fda. gov/drugsatfda_docs/nda/2008/021822s000admincorres.pdf ("Aptivus Correspondence").

Regardless, even assuming *arguendo* that FDA is still mulling the propriety of Liquidia's amendment, that does not deprive UTC of an Article III injury.  "[A]n alleged future injury may suffice to establish standing if … there is a substantial risk it will occur."  *Jibril*, 20 F.4th at 814; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) ("[A] person exposed to a risk of

future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). Such a "substantial risk" exists here. For the reasons just discussed, FDA has shown that it is treating Liquidia's amendment as properly submitted. And if the amendment is treated as proper, little else stands in the way of approval and launch of Liquidia's PH-ILD product. FDA has already granted *tentative* approval to the pre-amendment application, the relevant regulatory exclusivity will expire in just over a week, and Liquidia is actively seeking the elimination of any other barrier. *See* UTC Mem. 3-4. In short, there is an imminent risk that FDA will approve Liquidia's NDA *as amended*.

These facts readily distinguish *Pfizer Inc. v. Shalala*, 182 F.3d 975 (D.C. Cir. 1999), on which FDA relies (at 12). The standing decision there turned on the fact that the challenged action—the acceptance of Mylan's ANDA for processing—was "merely the first step in the agency's approval process." *Id.* at 978. And only final approval would cause Pfizer any injury. Here, by contrast, the challenged decision—FDA's acceptance of Liquidia's amendment—already has deprived UTC of its statutory right to a 30-month stay (and necessitated emergency proceedings in the patent litigation). FDA's invocation of *Pfizer* is particularly ironic because the court's no-injury determination in that case rested in part on the fact that Pfizer was protected by the 30-month stay. As the Court explained, FDA's action had "cause[d] Pfizer no hardship at present or in the near future," because "nothing untoward can happen to Pfizer until at least December 1999, when the 30-month [stay] … expires." *Id.* at 980.

2.      FDA also maintains (at 11-13) that UTC's injury is speculative because Liquidia might have found other means of seeking approval for the PH-ILD indication without triggering a 30-month stay. But Liquidia never did so, and the law is clear that a party invoking federal jurisdiction "need not negate every conceivable impediment to effective relief." *Int'l Ladies'*

*Garment Workers' Union v. Donovan*, 722 F.2d 795, 811 (D.C. Cir. 1983).

Numerous decisions in this district have rejected arguments like those FDA now raises. For example, in *Ipsen Biopharmaceuticals, Inc. v. Becerra*, 2023 WL 3319366 (D.D.C. May 8, 2023), Ipsen contended that FDA should have reviewed the competitor's product under a different regulatory framework than the one it used. The competitor argued that, "in the counterfactual world," its product "would have been approved through" that alternative framework regardless, so the regulatory treatment of its product caused Ipsen no injury. *Id.* at *6. The court disagreed, holding that "Ipsen does not have to negate these kind of speculative and hypothetical possibilities" to show standing. *Id.* (brackets and quotation marks omitted). All that mattered was that if Ipsen were right about the regulatory framework, FDA would have had to reject the competitor's application. *Id.* The court reached a similar conclusion in *Braeburn Inc. v. FDA*, 389 F. Supp. 3d 1 (D.D.C. 2019), rejecting intervenor Indivior's argument that Braeburn lacked standing to challenge Indivior's receipt of marketing exclusivity on the theory that Indivior might have received a different kind of exclusivity anyway. *Id.* at 16 ("Indivior's argument is that a hypothesized future event that might injure Braeburn in the same way as the challenged agency decision leaves Braeburn without standing. … Braeburn's access to judicial relief does not require that it disprove any speculated alternative source of injury that Indivior conjures ….").

FDA's logic is indistinguishable from that rejected in *Ipsen* and *Braeburn*. As those decisions made clear, the agency cannot negate standing by relying on "speculative and hypothetical possibilities." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 78 (1978). All that matters is that if UTC is right about the merits, the agency was required to reject Liquidia's PH-ILD indication in the form Liquidia submitted it.

**B.     UTC challenges a final agency action.**

FDA (at 16-19) and Liquidia (at 15-19) argue this lawsuit is improper because UTC does

not challenge a "final agency action." But "a final agency action need not be the last administrative action contemplated by the statutory scheme." *Nat'l Treasury Emps. Union v. FLRA*, 745 F.3d 1219, 1222 (D.C. Cir. 2014). Rather, the decision is final if it "mark[s] the consummation of the agency's decisionmaking process" *on the relevant question*. *Id.* (quotation marks omitted) ("That the [agency] remanded the attorney's fees issue therefore does not suggest that its decisionmaking process with respect to the independent unfair labor practice question is incomplete.").

FDA's decision is final with respect to the relevant question: whether Liquidia's July 2023 submission qualifies as an amendment. The agency acknowledges (at 16) that its September 2023 correspondence with Liquidia established (if not in so many words) that "an amendment containing a Paragraph IV certification to the '793 patent would not trigger a 30-month stay because Liquidia originally submitted its NDA prior to the listing of that patent." That is a sufficiently definitive statement of the agency's position. "While the FDA could in principle change its position," there is "virtually no doubt, as a practical matter, what approach the agency will apply." *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1309 (D.C. Cir. 2010). And the effects of that decision are already being felt in a concrete way. UTC has been forced to pursue preliminary-injunction proceedings in the patent suit only because FDA's decision already vitiated its right to a 30-month stay. There will be no further development in the agency proceedings that is relevant to this Court's review of the decision FDA has already made.

### 1.   FDA confuses its decision to accept Liquidia's amendment as such with its substantive review of Liquidia's NDA.

Both FDA (at 17-18) and Liquidia (at 17-18) argue that FDA's decision is not final for APA purposes because the agency has not yet approved Liquidia's NDA. That argument confuses the issues. UTC does not challenge FDA's imminent decision on Liquidia's NDA; it challenges FDA's decision to accept Liquidia's PH-ILD submission *as an amendment*.

7

That decision is subject to immediate review.  As the D.C. Circuit has explained, an agency decision "qualifies for immediate review if it: (i) conclusively determines a disputed question; (ii) resolves an important issue completely separate from the merits of the action; and (iii) is effectively unreviewable on appeal from a final judgment." *Meredith v. Fed. Mine Safety & Health Rev. Comm'n*, 177 F.3d 1042, 1048 (D.C. Cir. 1999).  Those criteria are satisfied here.  The lawfulness of Liquidia's amendment *as such* is separate from the merits of whether Liquidia's product would be safe and effective for PH-ILD.  And, contrary to FDA's suggestion (at 15), UTC cannot secure effective review of the challenged acceptance decision post-approval: once Liquidia has entered the market, the bell cannot be un-rung.  *See Apotex, Inc. v. FDA*, 2006 WL 1030151, at *17 (D.D.C. Apr. 19, 2006) (Bates, J.) ("Once the statutory entitlement has been lost, it cannot be recaptured."), *aff'd and remanded*, 449 F.3d 1249 (D.C. Cir. 2006).[1]

The finality cases that FDA cites (at 17-18) are not to the contrary.  In both cases, the plaintiff sought review of a "complete response letter"—essentially a rejection letter informing the applicant that its NDA or ANDA would require changes before it could be approved.  *See Nostrum Pharms., LLC v. FDA*, 35 F.4th 820, 825 (D.C. Cir. 2022); *Lannett Co. v. FDA*, 300 F. Supp. 3d 34, 43-44 (D.D.C. 2017).  Neither case, in other words, involved the kind of collateral order at issue here—which, again, is wholly separate from the merits of Liquidia's NDA.[2]

### 2.    The agency's exercise of its power carries legal consequences.

FDA also argues (at 18) that its decision to accept Liquidia's amendment does not "ha[ve]

---

[1] For these reasons, FDA errs in invoking the doctrine of prudential ripeness.  FDA's suggestion (at 15) that UTC "can challenge any … decision finding the amendment proper" by "pursu[ing] post-approval relief" is not a serious one.

[2] FDA also repackages its standing argument as a finality argument, suggesting (at 16) that its decision is not final because it "has *not* 'accepted' the amendment or determined that Liquidia's amendment is proper."  That argument fails for the reasons discussed above (pp. 6-7, *supra*).

legal consequences or determine[] UTC's or Liquidia's rights or obligations." FDA is wrong. The agency's decision (1) relieved Liquidia of the obligation to pay a user fee, no matter the ultimate result of the agency's review, (2) obligated the agency to conduct a substantive review of the submission, and (3) denied UTC the protection of a statutorily mandated 30-month stay. UTC Mem. 20-21, 25-26. All those legal consequences flow from the agency's acceptance decision *in its capacity as an acceptance decision*. Based on that decision, any final approval will be made effective immediately because no 30-month stay will apply.

FDA counters (at 18) that denial of a 30-month stay "flows not from anything FDA has done, but from the interplay between § 355(c)(3)(C) and the fact that Liquidia has submitted an amendment, not a second new drug application." That argument pretends that FDA must follow Liquidia's self-interested characterization of its submission. FDA need not do so. As past practice shows, FDA can—and regularly has—rejected improper amendments. *See* p. 4, *supra*; UTC Mem. 25-26 & n.10. Its decision to take a different course here is a but-for cause of UTC's injuries.

For its part, Liquidia argues (at 20-22) that UTC's injury does not flow from FDA's decision to accept its amendment because Liquidia might be able to submit the PH-ILD indication for review in some other way that also does not result in a 30-month stay. The agency made the same misguided argument in the standing context (*see* pp. 3-5, *supra*), and it is just as wrong here: an agency decision does not lack finality merely because it is possible to imagine "a hypothesized future event that might injure [the plaintiff] in the same way as the challenged agency decision." *Braeburn*, 389 F. Supp. 3d at 16.[3]

---

[3] Liquidia's arguments are also flawed on the merits. For example, Liquidia argues (at 20) that if the agency was wrong to accept its July 2023 submission as an amendment, the agency "could administratively unbundle the amendment and treat it," *nunc pro tunc*, as if Liquidia had filed a separate NDA in July 2023. But the single example of "unbundling" that Liquidia identifies, from

Liquidia also offers (at 21-22) the even flimsier argument that FDA has discretion to disregard the 30-month stay. Liquidia cannot cite a single case where this has happened because the argument rests on an obvious misreading of "may." In saying that an application "may be made effective upon the expiration of the thirty-month period," the statute specifies that an application *may not* be made effective before that period is up. It uses "may" to mean permission (the sense of *No, you may not*) rather than to mean a hypothetical possibility (in the sense of *I think it may rain*). The statute does not and cannot use the word "shall," as Liquidia suggests (at 22), because there might be reasons not to approve the application even after the stay expires.

### 3.   UTC's letter exchange with the agency does not undermine finality.

Finally, FDA is wrong to argue (at 18-19) that UTC's exchange of letters with the agency, which FDA has sat on for months, robs its decision of finality because "a party may not simultaneously seek both agency reconsideration and judicial review." As the Supreme Court explained in *Sackett v. EPA*, 566 U.S. 120 (2012), "[t]he mere possibility that an agency might reconsider [a decision] in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *Id.* at 127. That principle applies here: UTC voluntarily asked FDA to unwind its decision through an informal process that does not undermine the finality of that decision. UTC's request also does not rob the agency's acceptance of Liquidia's amendment of finality because UTC is not a party to FDA's review of Liquidia's application. Precedent makes clear that requests from a nonparty are akin to requests for *new* agency decisions, rather than motions for reconsideration that put a pause on *existing* decisions. *See 32 County Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir.

---

more than 20 years ago, does not involve an amendment. *See* Liquidia Mem. 18 n.3 (discussing the unbundling of a *supplement*). And even as FDA postulates a number of non-merits roadblocks, it conspicuously does not endorse Liquidia's unbundling theory.

2002); *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 919 (D.C. Cir. 1998).

      **C.**    **Parallel patent litigation does not provide an adequate alternative remedy.**

      Defendants' attempt to evade review of FDA's final regulatory action by reference to the separate patent litigation between UTC and Liquidia likewise falls short. This action is UTC's only avenue for challenging the FDA's unlawful decision accepting Liquidia's amendment and for restoring UTC's lost statutory right to a 30-month stay.

      Section 704 of the APA "reflects Congress' judgment that the general grant of review in the APA ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). But this "exception … to avoid duplication should not be construed to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *Bowen*, 487 U.S. at 903. Before precluding APA review, courts demand "clear and convincing evidence of legislative intent to create a special, alternative remedy." *CREW*, 846 F.3d at 1244 (quotation marks omitted). As this Court has noted, several principles guide review of adequacy under that standard. *Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 13 (D.D.C. 2020) (Bates, J.). First, "although an alternative remedy 'need not provide relief identical to relief under the APA,'" it "must nevertheless be of the 'same genre'; 'doubtful and limited relief' will not suffice." *Id.* (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)). Second, "an alternative is not adequate where it requires a person to undergo an arduous, expensive, and long process." *Id.* (quotation marks omitted). Third, "the alternative remedy must actually result in a determination of the underlying legal question, rather than a peripheral issue." *Id.*

      Under this framework, UTC's ability to pursue a patent-infringement claim against

Liquidia and to seek emergency relief in that case does not divest this Court of authority to review UTC's APA claim against FDA.  In this case, UTC challenges the legality of FDA's decision to accept Liquidia's amendment in violation of the agency's own rules, policies, and precedents (Compl. ¶¶ 77-95)—not whether Liquidia's product would infringe any UTC patents.  As a result, the patent-infringement case will not "actually result in a determination of the underlying legal question" presented in this lawsuit.  *Gonzalez Boisson*, 459 F. Supp. at 13.

Moreover, Defendants' contention that UTC's ability to file a motion for preliminary injunction in the patent case is an adequate substitute for UTC's loss of a statutory right to a 30-month stay reframes the problem as the solution.  Congress established the automatic 30-month stay *to avoid* forcing patent owners to pursue emergency relief to protect their patent rights before a market-altering launch of a potential infringing product.  Because patent litigation is typically fact- and discovery-intensive, early preliminary injunction motions are highly burdensome for both the parties and the court.  As Liquidia acknowledges (at 43), preliminary injunction proceedings in the patent case have already been "the subject of *intense discovery*," as UTC shoulders the burden of showing that it not only is likely to succeed on the merits but also satisfies the other equitable factors.  By contrast, this suit seeks to restore the *automatic* stay to which UTC is entitled, which would prevent FDA approval of Liquidia's amended NDA without imposing any evidentiary burden on UTC or necessitating the emergency proceedings now unfolding in the patent case.  Treating a preliminary injunction motion as an adequate substitute for APA relief restoring the 30-month stay thus gets matters backwards.  Defendants' approach would also make the loss of a valuable statutory right resulting from unlawful FDA action effectively unreviewable, since a preliminary injunction in a patent suit could always be touted as a substitute remedy.

Contrary to Defendants' assertions, *Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp.

3d 23 (D.D.C. 2022), does not support their effort to insulate FDA's decision from APA review. In *Avadel*, FDA required a 505(b)(2) applicant to provide a patent certification to an Orange Book-listed patent.  *Id.* at 31-35.  The applicant sued under the APA, alleging no such certification was required, but the district court held that the applicant had an adequate alternative remedy in the patent litigation resulting from its certification.  *Id.*  The court emphasized that Congress had created "an independent cause of action and an alternative review procedure" for applicants disputing patent certifications: they can file a "counterclaim" in the patent lawsuit "to challenge the patentholder's Orange Book listing," which, if successful, would remove any obligation to certify. *Id.* at 32, 34; *see* 21 U.S.C. § 355(c)(3)(D)(ii).  No such cause of action or review procedure exists here for UTC to challenge FDA's decision accepting Liquidia's amendment.  Moreover, Avadel's putative APA claim arguing that its drug product did not implicate a use claimed by a listed patent "was of the very sort that a patent infringement suit triggered by a Paragraph IV certification is intended to resolve." *Norwich Pharms., Inc. v. Becerra*, 2023 WL 7174558, at *13 (D.D.C. Nov. 1, 2023) (distinguishing *Avadel* on this ground).  Not so here, where UTC's legal challenge is directed at FDA's disregard of its own rules limiting amendments, rather than any issue bearing directly on UTC's and Liquidia's patent dispute.[4]

**D.     The Court should maintain the status quo.**

Even if there were some basis for awaiting a further FDA decision, the Court should take account—as it has already done in this case—of the fact that FDA generally makes such a decision

---

[4] Liquidia raises a distinct "alternative remedy" argument: it claims (at 26-27) that UTC needed to file its administrative request as a citizen petition.  But Liquidia cites no statutory or regulatory provision imposing such a rule.  To be sure, the regulations *allow* citizen petitions in certain circumstances, but they do not *require* that procedural mechanism.  Tellingly, FDA itself never suggests that UTC's letter was procedurally improper, and in fact, FDA points to its purported ongoing consideration of UTC's letters as a procedural defense.

at the exact same time it approves an NDA or other application, meaning that the decision is put into effect before the affected party can come to court. Given the imminent and irreparable injury to UTC, this Court should at least maintain the status quo long enough to enable reasoned briefing and argument on the substance of any to-be-issued agency decision. The requirement that FDA notify the Court three days before issuing such a decision is a suitable protection.

## II.     UTC is likely to succeed on the merits.

Everyone agrees on the key facts: Liquidia amended its NDA to add a new indication, and FDA formally accepted that amendment. That is precisely what FDA's Bundling Rule precludes: "After initial submission, a pending original or supplemental application should not be amended to add a new indication or claim." Burgess Decl., Ex. 4, at 9. There is no basis for FDA's departure from its own rule in this case, and the agency does not offer any defense of its decision on the merits. Liquidia offers a variety of arguments, but they boil down to a demonstrably incorrect argument that any labeling change, no matter how dramatic, is permitted during review. In fact, in regulatory documents that UTC cited and to which Liquidia has no response, FDA made clear that it was preserving, not overturning, the Bundling Rule in its regulations.

### A.     The Bundling Rule cannot be brushed aside as nonbinding.

As UTC explained, for decades FDA has adhered to the limitations set out in the Bundling Rule. And it has made new-drug applicants adhere to them, too. To take just one example, FDA told the applicant for Aptivus that its proposed amendment "does not follow the [Bundling Rule]" and thus "*must* be submitted as a new NDA application." Aptivus Correspondence at PDF pp. 5-6 (emphasis added); *see also* UTC Mem. 11 n.6, 25-26 & n.10 (citing more examples). That is a classic illustration of how a document not codified in the C.F.R. can still be "applied by the agency in a way that indicates it is binding." *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002); *see* UTC Mem. 22. Liquidia contends that the Bundling Rule is non-binding, but never even tries

to respond to UTC's points (Mem. 23) about the statute and regulations ratifying the Bundling Rule.

Liquidia does make general arguments about guidances, but they hold no water.  First, Liquidia recites the Bundling Rule's boilerplate disclaimer that it embodies FDA's "current thinking" and does not establish any rights.  But agencies cannot insulate their internal law from review through such "boilerplate language."  *E.g.*, *Am. Acad. of Pediatrics v. FDA*, 379 F. Supp. 3d 461, 488 (D. Md. 2019); *Philip Morris USA Inc. v. FDA*, 202 F. Supp. 3d 31, 46 (D.D.C. 2016); *accord Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997) (determining that a document labeled "guidance" was a substantive rule).  Second, Liquidia ignores language making clear that, because the guidance documents "represent the agency's current thinking," "FDA employees may depart from guidance documents only with appropriate justification and supervisory concurrence."  21 C.F.R. § 10.115(d)(3).  Third, Liquidia protests (at 32) that a guidance does not become binding just because the agency follows it.  But here, as noted above, FDA requires *applicants* to follow its internal rule and rejects attempts to depart from it.  Thus, the agency is not free to change course without formal action to acknowledge the change in position.  What matters is how the agency treats the relevant principles in its own decisionmaking, not whether it labels the document as "guidance."

### B.      The Bundling Rule bars adding new indications through amendment.

Liquidia appears to recognize that FDA's decision cannot be squared with the Bundling Rule, so it turns to other law.  For instance, Liquidia tries (at 35 & n.9) to brush aside several of the FDA decisions applying the Bundling Rule by asserting that they predate the 2016 rulemaking, which it says (at 33) should "supersede" the Bundling Rule.  But the text and history of the 2016 rule refute Liquidia's wild over-reading.  *See* UTC Mem. 10.  FDA's rulemaking expressly preserved its approach to NDA amendments—it did not reverse course.

First, Liquidia asserts (at 29) that because new indications are "absent from the list" of amendments expressly defined to be a change to a "different drug," 21 C.F.R. § 314.60(e), amendments to add new indications are permitted—without limitation.  Indeed, Liquidia asserts (at 29), there is now a bright line between "changes to a drug *itself* and changes just to a drug's *label*," with the latter categorically permitted.  That is incorrect.  Adding a new indication is not a mere "labeling change," because by definition a new indication requires a new safety and efficacy conclusion.  Indeed, the co-author of the relevant compromise language explained that it aimed at allowing "minor changes" by amendment without a 30-month stay, *as opposed to* "a different or improved use for the product."  148 Cong. Rec. S6844 (daily ed. July 16, 2002) (Sen. Collins). Nothing in Section 314.60(e) changes FDA policy to *authorize* the addition of a new indication via an amendment; the only express authorization is for amendments to change the strength.  And such a change would have been contrary to FDA's recognition that it should follow "Congress' expressed intent to preserve rather than disrupt FDA processes regarding submission of amendments and supplements to 505(b)(2) applications and ANDAs."  80 Fed. Reg. at 6851; *see* H.R. Rep. No. 108-391, at 835 (2003); UTC Mem. 12, 23.  Under that regime, amendments to change indications were not permitted, even if minor labeling changes were.

Second, Liquidia retreats to arguing (at 33) that because the regulations contemplate "*some* amendments adding indications," the Bundling Rule's prohibition must be no more.  That is incorrect.  The agency expressly stated that under the Bundling Rule—whose approach, again, the agency sought to preserve—"most requests for approval of a different indication or condition of use by a 505(b)(2) applicant could not be made as an amendment to the 505(b)(2) application." 80 Fed. Reg. at 6849; *see* 81 Fed. Reg. 69616 (Oct. 6, 2016).  FDA has identified only one circumstance where such an amendment might be permissible: changing an indication "from

prescription status to OTC use." 80 Fed. Reg. at 6849. Such a change does not implicate treating any new condition (let alone one that is protected by valuable patents), and allowing for such a change therefore does not raise the concern that the applicant will "use the amendment or supplement process to evade the possibility of a 30-month stay of approval." *Id.* at 6851. A "substantial change in indication," by contrast, is the type of "innovation" that requires a new drug application. *Examining Issues Related To Competition in the Pharmaceutical Marketplace: Hearing Before the Subcomm. on Health of the House Comm. on Energy & Commerce*, 107th Cong. 49 (2002) (colloquy between Rep. Waxman and the FDA Commissioner).

This is precisely the type of case in which the new indication is inappropriate for amendment because it seeks to capitalize on someone else's innovation while stripping the innovator of Hatch-Waxman's intellectual-property protections. UTC discovered and obtained a patent on the method of treating PH-ILD using treprostinil. Liquidia wants to piggyback on FDA's approval of UTC's Tyvaso® for PH-ILD, and it wants to do so during the term of UTC's patent. The purpose of the 30-month stay, under those conditions, is to allow the parties to litigate whether the new indication infringes *before* there is an FDA approval that transforms the market.

### C. Liquidia's amendment is a major amendment that improperly includes data to support a new indication under 21 C.F.R. § 314.60(b)(6).

UTC is also likely to succeed on its claim that Liquidia's amendment conflicts with FDA's rule for major amendments. Liquidia contends that its amendment does not run afoul of 21 C.F.R. § 314.60(b)(6) because the amendment—which attempts to add a *completely new* indication for *a different disease* and *different patient population*—is not "major." Liquidia is wrong.

Liquidia argues (at 37-38) that a major amendment must "contain[] significant new data from a previously unreported study or detailed analyses of previously submitted data." Applications for Approval to Market a New Drug; Complete Response Letter; Amendments to

17

Unapproved Applications, 73 Fed. Reg. 39,588, 39,602 (July 10, 2008).   Liquidia fails to acknowledge, however, that this is not a *requirement* for an amendment to be considered major. *Id*.  ("Previous § 314.60(a) did not define a major amendment; it only gave an example.").  In fact, FDA has explicitly declined to define "major amendment" because it is "uncertain that [it could] define major amendment in a way that encompasses all types of amendments that should be treated as major."  *Id.*  There can be no dispute that an amendment proposing a new indication to treat a different disease in a different patient population is "major," as FDA correctly acknowledged when it categorized Liquidia's amendment as a "Class 2 resubmission."[5] *Id.* ("A Class 2 resubmission … incorporate[es] major changes or a significant amount of additional data … whereas a Class 1 resubmission … incorporate[es] minor changes or a limited amount of additional data."); Liquidia Corp., Press Release, FDA Accepts Submission to Add PH-ILD to YUTREPIA™ Label (Sept. 25, 2023),  https://www.liquidia.com/node/10646/pdf.    Regardless,  even  if  the  Court  applied Liquidia's standard, it is undisputed that UTC's INCREASE study was "significant new data" not previously reported and reviewed in the context of Liquidia's pre-amended application.

Liquidia concedes (at 38) that 21 C.F.R. § 314.60(b)(6) bars amendments that contain data in support of a new indication.  Yet Liquidia reasons (at 38) that FDA, when implementing this regulation, "assum[ed] that most amendments seeking to add indications would include [new] data," and therefore, "should not be made as an amendment to a 505(b)(2) application."  Thus, the only  explanation  Liquidia  proffers  for  why  its  putative  amendment  passes  muster  under § 314.60(b)(6) is because it only "relies on FDA's approval of UTC's supplement to the TYVASO NDA for PH-ILD."  *Id.*  This fails to save Liquidia's amended NDA here, as the submission of

---

[5] FDA appears to have erroneously classified the amendment as a resubmission—which addresses deficiencies in response to a complete response letter—instead of an amendment, but Class 2 resubmissions and major amendments both contain major changes or additional data.

new data in an amendment to a 505(b)(2) application is effectively the same as relying on new findings of safety and effectiveness that had not been made at the time the original 505(b)(2) application was submitted.  Both scenarios implicate the same fundamental concern that FDA contemplated when implementing the MMA: that the underlying clinical data necessary to support the safety and effectiveness of an indication or claim sought via amendment must have been provided to FDA at the time of the original NDA.  Otherwise, the applicant is "developing the product on the review clock," which "is contrary to the spirit and intent of the [Hatch-Waman] Act."  Burgess Decl., Ex. 4, at  9.  FDA's acceptance of Liquidia's amendment therefore violated § 314.60(b)(6).

## III.    UTC will suffer ongoing irreparable harm absent an injunction.

UTC will be irreparably harmed absent an injunction for two independent reasons.  First, FDA's unlawful acceptance of Liquidia's July amendment has already deprived, and continues to deprive, UTC of its statutory right to litigate infringement under the protection of a 30-month stay.  Second, if Liquidia's Yutrepia product is allowed to come to market, UTC will suffer irreparable business and monetary harms, which independently support an injunction.

Defendants largely ignore the irreparable harm caused by the loss of UTC's statutory right to 30-month exclusivity, notwithstanding case law establishing that the loss of such a "statutory entitlement" is "recognized as sufficiently irreparable."  *Apotex*, 2006 WL 1030151, at *17; *see* UTC Mem. 29-30.  Indeed, FDA (at 23-24) never even addresses the loss of a statutory right, while Liquidia merely recycles its flawed merits arguments, insisting (at 39) that "UTC has no statutory right to lose."  As explained above, p. 8, *supra*, UTC has been deprived of its statutory right to a 30-month stay by FDA's unlawful acceptance of Liquidia's amendment for a new indication.  Liquidia's odd suggestion (at 40-41) that the 30-month stay is "not for UTC's economic benefit" is clearly wrong.  Although the 30-month stay benefits everyone by allowing for the orderly

resolution of patent litigation without burdensome emergency motions, *see* p. 12, *supra*, the stay exists "primarily for the benefit of the brand-name drug manufacturers" like UTC. *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 41 (D.D.C. 2000).  The stay is automatic if a patent owner brings a timely suit.  It does not turn on showing a likelihood of success in the patent case, much less actually prevailing in the infringement litigation by proving infringement and overcoming any invalidity defenses (on which the alleged infringer bears the burden).  Sales by Liquidia during the period when the automatic 30-month stay should have operated thus do not qualify as "lawful competition," Liquidia Mem. 41 (quotation marks omitted), regardless of the ultimate outcome of UTC's patent suit.

UTC's loss of a statutory entitlement to a 30-month stay thus establishes irreparable harm on its own, and that loss is not remotely "speculative."  FDA Mem. 23.  FDA grudgingly concedes (at 16) that the agency already communicated to Liquidia that certifications to patents listed after Liquidia "originally submitted its NDA" "would not trigger a 30-month stay."  And Liquidia has built its launch strategy around this understanding from FDA that Liquidia "know[s]" there "won't [be] a regulatory stay."  UTC Mem. 18 (quoting public statements from Liquidia).

In addition to the loss of its statutory right, UTC will also suffer irreparable injury in the form of economic harms that are unrecoverable and unquantifiable.  FDA and Liquidia assert that even though UTC's losses could not be recovered if it prevails in this litigation, they cannot qualify as irreparable unless UTC also shows the losses will "cause extreme hardship to the company or threaten its existence."  FDA Mem. 24; *see* Liquidia Mem. 39 (asserting that UTC must establish an "existential threat" to establish irreparable harm).  Courts in this Circuit have long been divided over the right way to analyze irreparable injury in suits against the federal government where damages are unavailable. *Compare Everglades Harvesting & Hauling, Inc. v. Scalia*, 427 F. Supp.

3d 101, 115 (D.D.C. 2019), *with Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012).  But in citing cases from only one side of that divide, FDA and Liquidia fail to acknowledge more recent appellate authority clarifying that "financial injury [can be] irreparable where no 'adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation.'" *In re NTE Conn., LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)) (awarding emergency relief premised on "significant future revenues" that were threatened by unlawful agency action, without requiring any showing that lost revenues would ruin the company); *see also Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (granting stay of an agency-imposed eviction moratorium, and explaining that the moratorium placed the plaintiffs "at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery").  This clarified standard aligns with precedent in numerous other circuits[6] and should control here.

      In any event, regardless of whether *all* significant economic losses are inherently irreparable if they are unrecoverable in the litigation, it is well established that severe business harms, such as loss of goodwill, reduction in research and development spending, loss of first-mover advantage, price erosion, and loss of market share represent irreparable injury. *See* UTC Mem. 31 (collecting authorities).  Neither FDA nor Liquidia meaningfully engages with these authorities, and their effort to dismiss the harms by equating them with ordinary economic loss

---

[6] *See, e.g.*, *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155-56 (Fed. Cir. 2011); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996).

(FDA Mem. 24) is wrong. *See, e.g.*, *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 192 (D.D.C. 2021) (reputational harm and related economic injury were irreparable).  FDA and Liquidia likewise offer no evidence to dispute that UTC will suffer these business harms, as they choose to ignore the detailed expert testimony UTC put forward.  *See* Selck Decl. ¶¶ 62-100; 153.

Instead, FDA and Liquidia rerun their ripeness and finality arguments, asserting that UTC's "harms are speculative" because FDA has not yet approved Liquidia's NDA.  FDA Mem. 23; *see also* Liquidia Mem. 41.  But just as those arguments pose no barrier to review, they fail to counter UTC's need for preliminary injunctive relief.  UTC need not wait until it is *already* suffering irreparable harm, after an FDA approval issues, to protect its rights: "As a preliminary injunction requires only a likelihood of irreparable injury, Damocles's sword does not have to actually fall on all appellants before the court will issue an injunction." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8-9 (D.C. Cir. 2016) (citation omitted).  Liquidia has announced its intention to launch Yutrepia at risk as soon as possible; if UTC must wait until Liquidia has secured approval and flooded the market with product, review would be too late.

The Delaware District Court's order enjoining approval of Liquidia's product based on infringement of the '793 patent is also no barrier to relief.  As Liquidia recounts (at 10), the Federal Circuit recently denied the petition for rehearing en banc from a decision affirming a Patent Office decision finding the '793 patent invalid, the Federal Circuit's mandate has issued, and Liquidia is pressing the Delaware Court to lift the bar on approval before the patent is cancelled and pending UTC's forthcoming request for Supreme Court review.  It is appropriate for UTC to pursue preliminary injunctive relief to prevent approval of the PH-ILD indication because the bar premised on the '793 patent may soon go away.  At a minimum, the Court should not deny the motion for preliminary injunction before the Delaware Court has ruled on the Rule 60(b) motion.

The out-of-circuit decision in *Whole Woman's Health Alliance v. FDA*, 2023 WL 5401885 (W.D. Va. Aug. 21, 2023), on which FDA relies (at 23), does not support a different approach.  There, the court noted that potential harm that could be realized after a hypothetical decision by the Supreme Court to lift its stay in the mifepristone litigation was "purely speculative."  *Id.* at *8.  The situation here, where a court is considering a Rule 60(b) motion premised on a patent invalidity decision affirmed by the Federal Circuit, is not purely speculative.

Defendants' remaining quibbles provide no basis to deny relief.  Liquidia notes (at 41) that UTC would be injured from lawful sales of Yutrepia for the PAH indication, separate from UTC's challenge to approval for the PH-ILD indication.  But UTC has extensively documented the incremental harm that will result if Liquidia gains approval for the PH-ILD indication while also explaining that simultaneous approval of both indications would make its injuries more difficult to precisely quantify.  *See* Selck Decl. ¶¶ 108-111.  Far from undermining UTC's irreparable harm, this fact confirms it, as courts in this district recognize that harms may be irreparable when they are "impossible to quantify."  *Clevinger v. Advoc. Holdings, Inc.*, 2023 WL 5220570, at *2 (D.D.C. Aug. 15, 2023); *see also Xiaomi Corp. v. Dep't of Def.*, 2021 WL 950144, at *9 (D.D.C. Mar. 12, 2021) (harm may be irreparable where it "is not easily measurable").  Liquidia (but not FDA) also argues that the possibility that UTC may later recover damages in its patent suit is "relevant" to the irreparable harm analysis.  Liquidia Mem. 40.  But Liquidia never even responds to UTC's evidence that Liquidia lacks the resources to make UTC whole, Selck Decl. ¶¶ 137-144, negating Liquidia's point even if the Court might otherwise consider it.  *See Robert Bosch*, 659 F.3d at 1155-1156 (defendant's inability to satisfy damages judgment renders economic loss irreparable).

## IV.    The public interest and the balance of the equities favor relief for UTC.

The public interest and balance of harms both favor entry of preliminary relief.  *See* UTC Mem. 34-36.  None of Defendants' arguments to the contrary provides any basis to deny relief.

FDA's only public interest argument relates to the timing of UTC's motion, as it contends (at 24-25) that the Court should not enjoin the agency "before it has even taken final agency action." But as explained above, pp. 6-10, *supra*, FDA has taken a final action: it accepted Liquida's amendment and determined that no 30-month stay would apply to patents listed after Liquidia's original application. An action that preserves the status quo and prevents FDA from violating UTC's statutory entitlement to a 30-month stay will not result in any undue interference with ongoing agency processes, which is focused on the distinct question of whether Liquidia's amended 505(b)(2) application meets the statutory requirements for approval. In any event, FDA's objection on this point comes with a built-in expiration date. If FDA provides notice to the Court of an imminent final decision on Liquidia's amended 505(b)(2) application, then any objection related to the pendency of FDA review or the need to lock in an administrative record falls away.

In contrast to FDA's assertion that UTC sought preliminary injunctive relief *too soon*, Liquidia asserts (at 41-43) that the motion came *too late*. It was not until November 2023 that UTC learned of FDA's position that Liquidia's amendment would bypass the 30-month stay. Compl. ¶ 55-56. UTC's injury from that final decision then became concrete and imminent when, on December 26, 2023, Liquidia moved the Delaware court to lift the bar on approval of Liquidia's 505(b)(2) application. UTC then submitted its letter to FDA just three days later, on December 29, 2023. UTC thus acted with appropriate dispatch. In any event, it makes no sense for Liquidia simultaneously to argue (at 41) that UTC's injury is speculative until the Delaware Court modifies its order while also faulting UTC for not acting earlier. Liquidia also criticizes (at 42) UTC for presenting its arguments to FDA rather than skipping directly to court, asserting that UTC should have known that a letter submission was improper and could not have induced FDA to reconsider its decision. Notably, *FDA disagrees*. *See* FDA Mem. 8; p. 10, *supra*. UTC made a good-faith

effort to avoid the need for suit and emergency relief by presenting its objections to FDA's final action directly to the agency. Such effort should be encouraged, not punished.

Liquidia's accusations (at 42-43) of "manipulation" and "gamesmanship" are likewise off-base. It points to the fact that UTC and Liquidia are "engaged in substantial" discovery in the Delaware patent litigation, but not here. But that procedural difference is the result of local rules, not gamesmanship: this Court generally resolves preliminary injunction motions without live testimony (LCvR65.1(d)), whereas preliminary injunctive proceedings in a patent-infringement case are inevitably record-intensive and require substantial discovery. *See* p. 12, *supra*. Liquidia could have put forward its own evidence to counter UTC's expert here or otherwise attempted to challenge his declaration, but it declined to do so.

Ultimately, Liquidia gets it right when it concludes that "in FDA cases, 'the public interest is … inextricably linked with the merits of the case.'" Liquidia Mem. 43 (citation omitted). Because UTC is likely to succeed in its claim that FDA acted unlawfully by accepting Liquidia's amendment in defiance of FDA's Bundling Rule, precedents, and policies, and because UTC will suffer imminent irreparable harm as a result, this Court should enter a preliminary injunction to maintain the status quo. At a minimum, the Court should keep in effect its order requiring FDA to provide the Court with advance notice of a decision on Liquidia's application, to ensure that UTC will have a fair opportunity to defend its interests before FDA issues an approval that permanently alters the market.

## CONCLUSION

The Court should enter a preliminary injunction precluding FDA from approving Liquidia's amended section 505(b)(2) application for the PH-ILD indication. If FDA informs the Court that it is about to make a decision on the application, the Court should enter a temporary restraining order pending a reasoned decision on preliminary injunctive relief.

March 22, 2024

Shaun R. Snader (D.C. Bar No. 492231)
UNITED THERAPEUTICS CORPORATION
1735 Connecticut Ave. NW, 2nd Floor
Washington, DC 20009
(202) 304-1701

Douglas Carsten (admitted *pro hac vice*)
Art Dykhuis (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633

Adam W. Burrowbridge (D.C. Bar No.
   1001783: admission application pending)
Paul Hughes (D.C. Bar No. 997235)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8797

Respectfully submitted.

 /s/ *Brian T. Burgess*
William C. Jackson (D.C. Bar. No. 475200)
William M. Jay (D.C. Bar No. 480185)
Brian T. Burgess (D.C. Bar No. 1020915)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

Gerard J. Cedrone (D.D.C. Bar No. MA0019)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
(617) 570-1000

*Counsel for United Therapeutics Corporation*