# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United Therapeutics Corporation,<br>Plaintiff,<br><br>    v.<br><br>U.S. Food & Drug Administration, *et al.*,<br>Defendants,<br><br>    &<br><br>Liquidia Technologies, Inc.,<br>Defendant-Intervenor. | Case No. 24-cv-484-JDB |

### Memorandum in Support of Federal Defendants' Motion to Dismiss

SAMUEL BAGENSTOS
General Counsel
Department of Health and Human
  Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4397
Silver Spring, MD 20993

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
  General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director

HILARY K. PERKINS
Assistant Director

SAMUEL BALLINGRUD
NOAH T. KATZEN
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 514-6786 (Ballingrud)
(202) 305-2428 (Katzen)
(202) 514-8742 (fax)
Samuel.B.Ballingrud@usdoj.gov
Noah.T.Katzen@usdoj.gov

# TABLE OF CONTENTS

BACKGROUND.................................................................................................. 2

LEGAL STANDARD ............................................................................................ 6

ARGUMENT ...................................................................................................... 7

   I.   UTC fails to establish this Court's subject-matter jurisdiction................................. 8

     A.   This case is not ripe for review. ................................................................. 9

     B.   UTC lacks standing. .............................................................................. 15

  II.   UTC fails to state a claim. .......................................................................... 18

     A.   UTC fails to allege final agency action. .................................................... 18

     B.   UTC has an adequate remedy in the Second Patent Litigation. ...................... 18

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

CASES

Am. Petroleum Inst. v. EPA,
   683 F.3d 382 (D.C. Cir. 2012) ................................................................... 14

*Arpaio v. Obama,
   797 F.3d 11 (D.C. Cir. 2015) ............................................................. 7, 16

Ass'n of Am. Physicians & Surgeons, Inc. v. FDA,
   539 F. Supp. 2d 4 (D.D.C. 2008) ............................................................. 14

*Avadel CNS Pharms., LLC v. Becerra,
   638 F. Supp. 3d 23 (D.D.C. 2022) ........................................................... 19

*Bennett v. Spear,
   520 U.S. 154 (1997) .................................................................... 10, 12

Browning v. Clinton,
   292 F.3d 235 (D.C. Cir. 2002) ................................................................... 7

Cal. Communities Against Toxics v. EPA,
   934 F. 3d 627 (D.C. Cir. 2019) ............................................................... 11

Citizens for Responsibility & Ethics in Washington v. Dep't of Justice,
   846 F.3d 1235 (D.C. Cir. 2017) ............................................................... 18

City of Dover v. EPA,
   36 F. Supp. 3d 103 (D.D.C. 2014) ......................................................... 1, 9

Conf. of State Bank Supervisors v. Off. of Comptroller of Currency,
   313 F. Supp. 3d 285 (D.D.C. 2018) ........................................................... 8

Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan,
   709 F.2d 1521 (D.C. Cir. 1983) ............................................................... 19

*DaimlerChrysler Corp. v. Cuno,
   547 U.S. 332 (2006) .................................................................. 6, 7, 8

Devia v. Nuclear Regulatory Comm'n,
   492 F.3d 421 (D.C. Cir. 2007) ............................................................... 15

Endo Par Innovation Co., LLC v. Becerra,
   24-cv-999-TJK (D.D.C. Apr. 8, 2024) ..................................................... 15

Food & Water Watch, Inc. v. Vilsack,
   808 F.3d 905 (D.C. Cir. 2015) ................................................................... 7

Garcia v. Vilsack,
   563 F.3d 519 (D.C. Cir. 2009) ........................................................... 18, 19

*Holistic Candlers & Consumers Ass'n v. FDA,
    664 F.3d 940 (D.C. Cir. 2012) ............................................................... 9, 18

ICC v. Bhd. of Locomotive Engineers,
    482 U.S. 270 (1987) ............................................................................... 13

Indep. Equip. Dealers Ass'n v. EPA,
    372 F.3d 420 (D.C. Cir. 2004) ................................................................ 10

King v. Leavitt,
    475 F. Supp. 2d 67 (D.D.C. 2007) .......................................................... 13

Lannett Co., Inc. v. FDA,
    300 F. Supp. 3d 34 (D.D.C. 2017) .......................................................... 12

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992) ......................................................................... 15, 16

Lujan v. Nat'l Wildlife Fed'n,
    497 U.S. 871 (1990) ............................................................................... 10

Manafort v. Dep't of Justice,
    311 F. Supp. 3d 22 (D.D.C. 2018) .......................................................... 20

Nat. Res. Def. Council v. EPA,
    643 F.3d 311 (D.C. Cir. 2011) .................................................................. 9

*Nat'l Ass'n of Immigration Judges v. Fed. Labor Relations Auth.,
    77 F.4th 1132 (D.C. Cir. 2023) .......................................................... 13, 14

Nat'l Park Hosp. Ass'n v. Dep't of Interior,
    538 U.S. 803 (2003) ................................................................................. 9

New York Reg'l Interconnect, Inc. v. FERC,
    634 F.3d 581 (D.C. Cir. 2011) ................................................................ 17

Norwich Pharmaceuticals, Inc. v. Becerra,
    CV 23-1611 (RDM), 2023 WL 7174558 (D.D.C. Nov. 1, 2023) ........................... 7

*Nostrum Pharm., LLC v. FDA,
    35 F. 4th 820 (D.C. Cir. 2022) .......................................................... 11, 12

Pfizer Inc. v. Shalala,
    182 F.3d 975 (D.C. Cir. 1999) ................................................................ 16

Purepac Pharm. Co. v. Thompson,
    354 F.3d 877 (D.C. Cir. 2004) .................................................................. 3

Rempfer v. Sharfstein,
    583 F.3d 860 (D.C. Cir. 2009) .................................................................. 7

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999) ................................................................................. 8

*Sanofi-Aventis U.S. LLC v. FDA,*
  84 F. Supp. 2d 195 (D.D.C. 2012) ............................................................................... 15

*Simon v. E. Ky. Welfare Rts. Org.,*
  426 U.S. 26 (1976) ........................................................................................................ 16

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ...................................................................................................... 16

*Steel Co. v Citizens for a Better Env't,*
  523 U.S. 83 (1998) .......................................................................................................... 6

*Union Pacific Railroad Co. v. STB,*
  23-1125, 2023 WL 4982772 (D.C. Cir. Aug. 3, 2023) ................................................ 13

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
  No. 20-cv-755-RGA (D. Del. filed June 4, 2020) .......................................................... 4

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
  No. 23-cv-00975 (D. Del. filed Sept. 5, 2023) .............................................................. 5

*United Therapeutics,*
  No. 20-cv-755-RGA, ECF No. 16 (D. Del. filed July 22, 2020) .................................. 4

*Valero Energy Corp. v. EPA,*
  927 F.3d 532 (D.C. Cir. 2019) ..................................................................................... 11

*Whitman v. Am. Trucking Assocs.,*
  531 U.S. 457 (2001) ...................................................................................................... 10

*Wyo. Outdoor Council v. U.S. Forest Serv.,*
  165 F.3d 43 (D.C. Cir. 1999) ......................................................................................... 9

**STATUTES**

21 U.S.C. §
  355(b)(1)(A) ..................................................................................................................... 2

  355(b)(2)(B) ..................................................................................................................... 3

  355(b)(2)(A) ..................................................................................................................... 3

  355(b)(2)(A)(iv) ............................................................................................................... 3

  355(b)(3)(A)–(C) ............................................................................................................. 3

  355(c)(3)(C) ................................................................................................................. 3, 12

  355(c)(3)(C)(ii)(II) ........................................................................................................... 3

  355(b)(1)(A)(viii) ............................................................................................................. 2

  355(c)(3)(C)(i)-(iv) ........................................................................................................... 3

35 U.S.C. §

271(e)(2)(A) .................................................................................................................. 3

271(e)(4)(A) ............................................................................................................. 3, 21

5 U.S.C. §

551(10) ...................................................................................................................... 10

551(11) ...................................................................................................................... 10

551(13) ...................................................................................................................... 10

551(6) ........................................................................................................................ 10

551(8) ........................................................................................................................ 10

704 ............................................................................................................................ 18

551(4) ........................................................................................................................ 10

**REGULATIONS**

21 C.F.R. §

10.45(b) ..................................................................................................................... 14

314.110(a) ................................................................................................................. 11

United Therapeutics Corporation (UTC) challenges FDA's alleged acceptance of an amendment tendered by Intervenor Liquidia Technologies, Inc. (Liquidia) to its pending 505(b)(2) new drug application (NDA). ECF No. 1 (Compl.). For several reasons, this Court should dismiss UTC's Complaint.

UTC's challenge fails because it has not established that this Court has subject-matter jurisdiction on ripeness grounds. As this Court previously recognized, Ex. 1 at 73:20-23, FDA has not yet taken any agency action within the meaning of the Administrative Procedure Act (APA), much less *final* agency action, on the propriety of Liquidia's amendment. UTC's challenge is therefore unripe. *City of Dover v. EPA*, 36 F. Supp. 3d 103, 107 (D.D.C. 2014). In addition, even if FDA had taken final agency action with respect to Liquidia's amendment, as UTC alleges, UTC's pending request for FDA to change course and reconsider its alleged decision would render UTC's challenge incurably premature.

UTC also fails to meet its burden to establish standing. UTC has not suffered any actual, concrete harm to a legally protected interest sufficient to meet the injury-in-fact requirement, nor can it point to any imminent future injury. Any potential injury to UTC is contingent on FDA's approval of Liquidia's amended application, which is too speculative to support standing. Nor can UTC establish an injury based on its speculation that it would have obtained an automatic 30-month stay of approval had FDA rejected Liquidia's amendment. All parties agree that such a stay was unavailable to UTC at the time Liquidia submitted its amendment (July 2023) and when FDA allegedly "accepted" that amendment (September 2023) because the relevant patent was not issued and

1

submitted for listing until November 28, 2023, Compl. ¶ 56. And UTC cannot establish standing based on speculation that, had FDA rejected Liquidia's amendment in September, Liquidia would have filed a second new drug application after November 28.

Even assuming jurisdiction exists, UTC fails to state a claim under the APA for two reasons. First, UTC does not challenge final agency action, which is a necessary element of an APA claim. Second, UTC has an adequate alternative remedy in its patent infringement litigation against Liquidia, and the presence of such an adequate remedy also precludes APA review. 5 U.S.C. § 704.

For all of these reasons, the Court should grant the Federal Defendants' motion to dismiss.

BACKGROUND

## I.      505(b)(2) Applications and Paragraph IV Certifications

To gain approval to market a "new drug" under the FDCA, an applicant must file an NDA. 21 U.S.C. § 355(b)(1)(A). The application must contain, among other things, information on any patent that claims the drug or a method of using the drug if that patent could reasonably be the basis for an infringement claim if a person not licensed by the patent owner engaged in the manufacture, use, or sale of the drug. *Id.* § 355(b)(1)(A)(viii).

Congress established a streamlined process in section 505(b)(2), by which an applicant can rely on FDA's finding of safety and/or effectiveness for a previously approved drug (known as the "listed drug").  A 505(b)(2) application must also contain

an appropriate patent certification or statement for each patent that covers the listed drug and was timely listed in FDA's "Orange Book."[1] *Id.* § 355(b)(2)(A), (B).

In one type of patent certification, a Paragraph IV certification, the applicant attests that the patent at issue "is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." *Id.* § 355(b)(2)(A)(iv). The 505(b)(2) applicant next notifies the NDA holder of the listed drug and the owner of the listed patent covered by the Paragraph IV certification. *Id.* § 355(b)(3)(A)–(C). The act of submitting a 505(b)(2) application that contains a Paragraph IV certification is deemed an act of infringement of the listed patent. 35 U.S.C. § 271(e)(2)(A).

If a patent holder sues the 505(b)(2) applicant for infringement within 45 days of receiving the notice, a statutory stay may delay the approval of the 505(b)(2) application. Specifically, if the Paragraph IV certification covers a patent that was filed with FDA "before the date on which the application (excluding an amendment or supplement to the application) was submitted," FDA generally may not give final approval of the application for 30 months. 21 U.S.C. § 355(c)(3)(C). The length of this stay can be varied by the patent litigation court. *Id.* § 355(c)(3)(C)(i)-(iv). If that court finds infringement and that judgment is not set aside on appeal, approval of the application will generally be enjoined until the patent expires. *Id.* § 355(c)(3)(C)(ii)(II); 35 U.S.C. § 271(e)(4)(A).

---

[1] The Orange Book is "an FDA publication that includes all patent information that companies have submitted to the agency." *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 880 (D.C. Cir. 2004).

## II.        UTC and Liquidia's Disputes

UTC manufactures the drug Tyvaso (treprostinil). In 2009, FDA approved Tyvaso to treat pulmonary arterial hypertension (PAH), and in 2021, the agency approved a supplement to UTC's original application for the treatment of pulmonary hypertension associated with interstitial lung disease (PH-ILD). Compl., ¶¶ 36, 42. Tyvaso is currently approved to treat both PAH and PH-ILD.

In January 2020, Liquidia submitted a 505(b)(2) application for its treprostinil product, Yutrepia, for the treatment of PAH. *Id.* ¶ 44. Liquidia submitted Paragraph IV certifications to the listed patents for Tyvaso and timely notified UTC of the certifications. *Id.* ¶ 45. UTC then sued Liquidia in the District of Delaware for patent infringement, which triggered an automatic 30-month stay on the effectiveness of any FDA approval. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-cv-755-RGA (D. Del. filed June 4, 2020) (First Patent Litigation).

In July 2020, while the First Patent Litigation was pending, UTC submitted U.S. Patent No. 10,716,793 ('793 patent) for listing in the Orange Book. The following day, UTC amended its complaint to allege infringement of that patent. *See* First Am. Compl., *United Therapeutics*, No. 20-cv-755-RGA, ECF No. 16 (D. Del. filed July 22, 2020). Liquidia amended its application in October 2020 to add a Paragraph IV certification to the '793 patent, after which it provided notice to UTC.

On July 24, 2023, Liquidia submitted an amendment to its 505(b)(2) NDA, seeking to add a new indication for treating PH-ILD. Compl., ¶ 50. Liquidia provided Paragraph IV certifications as part of that amendment, one of which was for the '793 patent. *Id.* ¶ 52.

Upon receiving notice of the Paragraph IV certifications accompanying the July 2023 amendment, UTC again sued Liquidia in the District of Delaware for infringement of the '793 patent. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 23-cv-00975 (D. Del. filed Sept. 5, 2023) (Second Patent Litigation). In September 2023, FDA sent Liquidia an "Information Request" concerning its obligation to comply with patent certification and notice requirements. ECF No. 14-3. The request indicated that the 45-day period during which a patent-infringement suit could trigger a 30-month stay applied to certain patents—namely, those that had been submitted for listing before the date on which the application was originally submitted and were the subject of Paragraph IV certifications in the amendment.[2] ECF No. 14-3. FDA sent Liquidia a letter acknowledging its amendment shortly thereafter. ECF No. 26-2.

On November 28, 2023, UTC listed U.S. Patent No. 11,826,327 ('327 patent) in the Orange Book and amended its Complaint in the Second Patent Litigation to include a claim of infringement of the '327 patent. First Am. Compl., ECF No. 8, Second Patent Litigation (D. Del. Nov. 30, 2023). The parties later voluntarily dismissed the '793 patent from the Second Patent Litigation, leaving only the '327 patent at issue. *Id.*, ECF No. 17 (D. Del. Jan. 22, 2024).

Outside of the court proceedings, UTC raised objections directly to FDA about Liquidia's July 2023 amendment. On December 29, 2023, UTC sent a letter to FDA challenging the putative "acceptance" of Liquidia's amendment and asking FDA to reject

---

[2] Because the '793 patent was listed after that date, it was not among those mentioned as triggering the 45-day clock.

it. ECF No. 14-8 at 2. Both Liquidia and UTC submitted further correspondence to FDA on the issue, the last of which was received by FDA in mid-February 2024. ECF Nos. 14-9, 14-10. FDA is actively reviewing the arguments presented to it for decision in the exchange of letters and intends to respond.

Rather than wait for FDA to respond, on February 20, 2024—just days after the letter exchange concluded—UTC filed this lawsuit challenging FDA's alleged "acceptance" of Liquidia's amendment, claiming that FDA in doing so deprived it of the benefit of an automatic 30-month stay of approval of Liquidia's application while it proceeded with the Second Patent Litigation. Compl.,¶ 58. This is so, UTC alleges, because "if Liquidia were now required to submit a new application for approval of the PH-ILD indication, a paragraph IV certification to the '327 patent would result in a 30-month stay." *Id.*

On March 4, UTC moved for a preliminary injunction, ECF No. 14, seeking to prevent FDA from approving Liquidia's application. At a hearing on March 29, 2024, the Court denied the motion, finding that UTC failed to establish final agency action. Ex. 1 at 73:20-24; March 29, 2024 Minute Entry. Federal Defendants now move to dismiss UTC's Complaint.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction. Subject-matter jurisdiction, including ripeness and standing, must "be established as a threshold matter." *Steel Co. v Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The Court

is "presume[d]" to "lack jurisdiction" unless the party invoking jurisdiction meets its "burden of establishing it." *DaimlerChrysler*, 547 U.S. at 342 n.3 (quotations omitted). When evaluating jurisdiction, courts "do not assume the truth of legal conclusions, nor do we accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (cleaned up). In determining standing, courts may consider materials outside of the complaint. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

A Rule 12(b)(6) motion "tests the legal sufficiency of the Complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "[P]roperly read," a complaint under the APA "presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). In assessing a Rule 12(b)(6) motion, courts may consider "facts contained within the four corners of the Complaint, along with any documents attached to or incorporated into the Complaint, matters of which the court may take judicial notice, and matters of public record." *Norwich Pharmaceuticals, Inc. v. Becerra*, CV 23-1611 (RDM), 2023 WL 7174558, at *9 (D.D.C. Nov. 1, 2023) (quotations omitted).

### ARGUMENT

UTC's Complaint should be dismissed for two reasons. *First*, the court lacks subject-matter jurisdiction because UTC's challenge is not ripe. As this Court already recognized, there is no final agency action. Indeed, FDA has not taken any agency action within the meaning of the APA with respect to Liquidia's amendment, much less *final* agency action. But even if FDA had taken final agency action, UTC's pending

administrative request that FDA reject the amendment would render UTC's challenge incurably premature and therefore unripe. Further, UTC lacks standing because the company has no cognizable injury in fact, nor has it alleged an injury that is sufficiently imminent and not speculative. Any potential injury to UTC is contingent on FDA's approval of Liquidia's amended application, which is too speculative to support standing. *Second*, UTC fails to state a claim under the APA because there is no final agency action *and* the pending patent infringement litigation against Liquidia affords UTC an adequate alternative remedy. For any of these reasons, UTC's Complaint should be dismissed.

## I.   UTC fails to establish this Court's subject-matter jurisdiction.

UTC has not met its burden of establishing this Court's subject-matter jurisdiction for two reasons—ripeness and standing—though only one is required for dismissal. *DaimlerChrysler*, 547 U.S. at 342 n.3; *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (recognizing "a federal court [may] choose among threshold grounds for denying audience to a case on the merits"). UTC's claims are not ripe because UTC does not challenge any agency action by FDA, much less final agency action. Further, even if FDA had taken final agency action with respect to Liquidia's amendment, UTC's pending administrative request that FDA reject the amendment independently renders its claims incurably premature and therefore unripe. Additionally, UTC lacks a sufficiently concrete and imminent future injury to support standing. Thus, whether for ripeness or standing deficiencies, the Complaint should be dismissed under Rule 12(b)(1). *Conf. of*

*State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 294 (D.D.C. 2018).

### A. This case is not ripe for review.

Ripeness is a "justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (cleaned up). To establish this Court's jurisdiction, UTC "must show that the [challenged] agency action is fit for judicial review and that [it] would face hardship if review is withheld." *City of Dover*, 36 F. Supp. 3d at 119; *see Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) ("Article III court cannot entertain the claims of a litigant unless they are constitutionally and prudentially ripe."). UTC has failed to establish either of these requirements.

### 1. UTC's claims are not fit for review because FDA has not taken any agency action, much less final agency action.

An APA case is not "fit" for judicial review if it does not involve final agency action. *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 n.4 (D.C. Cir. 2012); *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 319 (D.C. Cir. 2011). As this Court correctly held at the preliminary injunction hearing, UTC has not established final agency action. Ex. 1 at 72:17-22. Its claims are therefore unripe and should be dismissed.

To begin, UTC "must identify some 'agency action'" within the meaning of 5 U.S.C. § 551(13); the company is only entitled to "judicial review 'thereof.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). And the APA provides specific definitions for "rule," "order," "license," "sanction," and "relief." *Id.* § 551(4), (6), (8), (10), (11). These cover "manner[s] in which an agency may exercise its power," *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 478 (2001), but they are "not so all-encompassing as to authorize . . . judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.).

UTC does not identify any conduct of FDA that constitutes "agency action" under 5 U.S.C. § 551(13). Although the Complaint baldly asserts that FDA "accept[ed]" Liquidia's amendment, *see* Compl. ¶ 80, it identifies no specific action constituting acceptance. In fact, FDA has not "accepted" the amendment or determined that Liquidia's amendment is proper. As the Court recognized, the agency is actively considering that very issue in the first instance. Ex. 1, at 72:14-22. And without an agency action on which it bases its claims, UTC's claims are not ripe for review.

Even if UTC could identify some agency action, as this Court already held, such action does not rise to the level of *final* agency action. Ex. 1 at 72:17-22. Finality has two requirements. "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from

which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). "The failure to satisfy either prong means that the challenged action is nonfinal." *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019).

When denying UTC's motion for a preliminary injunction at the March 29th hearing, the Court held that UTC failed, at the first *Bennett* prong, to establish finality; there was no consummation of the agency's decision-making process. Ex. 1, at 72:14-22. The Court recognized that "FDA has neither issued a decision on Liquidia's pending application, nor a decision on the issues raised in UTC's December 2023 letter." *Id.* at 72:18-20. Indeed, the agency "is still actively considering the questions at the heart of UTC's Complaint in this case." *Id.* at 72:21-22. As a result, "UTC has not demonstrated final agency action." *Id.* at 73:20-21.

That conclusion remains true. Looking to "the unique constellation of statutes and regulations that govern the action at issue," *Cal. Communities Against Toxics v. EPA*, 934 F.3d 627, 631 (D.C. Cir. 2019), the FDCA and implementing regulations collectively establish a drug approval process with a number of "interim step[s]" but a single culmination point: "FDA's final determination on the application." *Nostrum Pharm., LLC v. FDA*, 35 F. 4th 820, 825 (D.C. Cir. 2022). Until a final determination issues, the interim steps are not reviewable.

Courts have consistently recognized that these interim steps to approval are non-final. For example, FDA may issue a "complete response letter" if it "determines that [it] will not approve the application or abbreviated application in its present form." 21 C.F.R.

§ 314.110(a). Because a complete response letter requires further action from an applicant, *id.* § 314.110(b), courts have held that such letters are not final agency action, *Nostrum*, 35 F. 4th at 825; *Lannett Co., Inc. v. FDA*, 300 F. Supp. 3d 34, 43-44 (D.D.C. 2017). So too here. "[M]ultiple doors for further processing" remain open after FDA's receipt of Liquidia's amendment, including, as UTC has argued to the agency, a determination that the amendment was not proper. *Nostrum*, 35 F.4th at 826. Thus, UTC cannot show that FDA's decision-making process has concluded.

Although UTC's failure at *Bennett* prong one alone dooms the suit, the company also cannot clear prong two: the alleged decision is not one from "which legal consequences will flow." *Bennett*, 520 U.S. at 178. UTC argues that it cannot obtain an automatic 30-month stay based on Liquidia's Paragraph IV certifications submitted via amendment with respect to patents that were not listed at the time Liquidia's NDA was originally submitted. Compl. ¶ 72. However, that does not flow from anything FDA has done, but from the interplay between 21 U.S.C. § 355(c)(3)(C) and the fact that Liquidia has submitted an amendment, not a second new drug application. FDA has not determined the propriety of the amendment at this time. And even if FDA ultimately determines that the amendment was not proper, UTC could obtain a 30-month stay only if Liquidia then chose to submit a second new application (which Liquidia states it would not do, *see infra* p.17) and the other elements of § 355(c)(3)(C) that govern the availability

of a 30-month stay are satisfied. Thus, absent agency action that is final, UTC's challenge is not ripe for review.

### 2.   UTC's challenge is not fit for review because it is incurably premature.

Even if FDA had taken final agency action, UTC's claims would not be fit for review because they are incurably premature. It is "well-established that a pending request for administrative reconsideration renders an agency action nonfinal and unreviewable with respect to the party who made the request." *Nat'l Ass'n of Immigration Judges v. Fed. Labor Relations Auth.*, 77 F.4th 1132, 1137 (D.C. Cir. 2023) (per curiam). The doctrine applies where a request is "in substance a petition for reconsideration," even if it is not styled as such. *King v. Leavitt*, 475 F. Supp. 2d 67, 72 (D.D.C. 2007); *see also ICC v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 280 (1987). What matters is that the request requires the agency to change its position, even if there is no stated intent to seek "reconsideration." *See Union Pacific Railroad Co. v. STB*, 23-1125, 2023 WL 4982772, at *1 (D.C. Cir. Aug. 3, 2023) (rejecting petition as premature in light of a prior letter to the agency which expressly disclaimed intent to seek reconsideration).

When a party seeks both "agency reconsideration" and "judicial review of the same underlying order," the challenge is "incurably premature" and "must be dismissed." *Immigration Judges*, 77 F.4th at 1137. An incurably premature challenge is "not just 'premature,' but 'incurably' so" such that "subsequent action by the agency on a motion for reconsideration does not ripen the earlier-filed petition for review." *Id.* at 1138.

"[T]he challenging party must file a new petition for review from the [subsequently issued]-final agency order." *Id.* (cleaned up).

UTC contends that FDA took final agency action in September 2023. Compl. ¶ 54. Given this contention, UTC's December 2023 letter, in which it "urg[ed] FDA to rescind that unlawful action," *id.* ¶ 76, can only be understood to reflect UTC's considered decision to pursue "agency reconsideration over immediate judicial review," *Immigration Judges*, 77 F.4th at 1138, making this suit incurably premature.

Exhaustion principles reinforce the unripeness of UTC's challenge. By regulation, "[a] request that [FDA] take or refrain from taking any form of administrative action must first be the subject of a final administrative decision . . . before any legal action is filed in a court complaining of the action or failure to act." 21 C.F.R. § 10.45(b). As this Court has recognized, § 10.45(b) ensures the agency has an opportunity to "address new arguments that were never presented to the agency." *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 22 (D.D.C. 2008), *aff'd* 358 F. App'x 179 (D.C. Cir. 2009). Judicial review thus would be inappropriate before FDA has made a final administrative determination on UTC's argument that Liquidia's amendment is improper.

At bottom, as the Court recognized, "to accept UTC's argument would put the Court in the position of opining on a nuanced regulatory question that FDA is grappling with . . . before the relevant agency has weighed in on the question." Ex. 1, at 73:10-14. The agency should be permitted to reach a decision before that decision is subject to judicial review. Then, once FDA "appl[ies] its expertise," judicial review can occur in a

"more final and concrete setting." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012). Until that occurs, UTC's challenge is not ripe.

### 3.  UTC does not face hardship from delaying review.

"In order to outweigh institutional interests in the deferral of review, the hardship to those affected by the agency's action must be immediate and significant." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007) (citation omitted). Here, UTC faces no hardship—certainly no immediate hardship—from deferring review.

If FDA decides to approve Liquidia's amended application, UTC may pursue post-approval relief as drug manufacturers often do. *See, e.g.,* Motion for Temporary Restraining Order, ECF No. 7, *Endo Par Innovation Co., LLC v. Becerra*, 24-cv-999-TJK (D.D.C. Apr. 8, 2024*); Sanofi-Aventis U.S. LLC v. FDA*, 84 F. Supp. 2d 195 (D.D.C. 2012) (considering motion for a preliminary injunction filed by drug manufacturer after FDA's approval of a competitor's application). UTC has not articulated how it is differently situated from plaintiffs who challenge FDA approvals on an expedited basis, nor explained how it would suffer unique hardship that is not common to every litigant seeking emergency relief.

In short, UTC has failed to establish that FDA's alleged September 2023 action is ripe for judicial review or that UTC will suffer hardship if review were deferred. The Court should therefore dismiss the Complaint.

### B.  UTC lacks standing.

To establish standing, UTC must show an injury-in-fact—the invasion of a legally protected interest which is both concrete and particularized, and actual or imminent, not

conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). UTC lacks standing to bring this case because it has not suffered any actual, concrete harm to a legally protected interest. Nor can it point to any imminent future injury. UTC's argument rests on speculation about FDA's potential approval decision concerning Liquidia's application and further speculation that actions thereafter that may or may not come to pass will cause injury. Yet such "speculation will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976).

The Complaint contends that FDA's purported acceptance of Liquidia's amendment "constitutes a violation of regulations" and agency policy. Compl. ¶ 74. A "bare procedural violation," though, cannot "satisfy the injury-in-fact requirement of Article III"; there must be "concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). But UTC's alleged inability "to litigate its patent claims in an orderly manner," Compl. ¶ 72 — is "abstract" rather than "real," as required for concreteness, *Spokeo*, 578 U.S. at 340.

While a plaintiff may base standing on an injury it has not yet suffered, *id.*, such injury must be concrete and particularized, and actual or imminent. *Lujan*, 504 U.S. at 560. UTC's hypothesized future harm is not sufficiently certain or imminent to establish standing. Any harm to UTC is contingent on the approval of the PH-ILD indication in Liquidia's amended application. *See, e.g.*, Compl., ¶ 72 (referring to the "irrevocabl[e] alter[ation of] the market" upon the introduction of Liquidia's drug Yutrepia). "When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)." *Arpaio*, 797 F.3d at 21. Courts have recognized that FDA's

review of a drug application entails a rigorous scientific review and approval is an uncertain contingency. *Pfizer Inc. v. Shalala*, 182 F.3d 975, 979 (D.C. Cir. 1999) (holding that challenge to "FDA's acceptance of" a drug application "for processing" was not ripe until "FDA . . . approves [the] application"). Thus, UTC's theory of injury, which is contingent on Yutrepia's approval, impermissibly rests on a "hypothetical chain of events, none of which is certain to occur." *New York Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011).

Nor can UTC establish an injury-in-fact based on its speculation that it would have obtained an automatic 30-month stay of approval based on Liquidia's Paragraph IV certification to the '327 patent had FDA rejected Liquidia's amendment. Compl., ¶¶ 56, 72. All parties agree that such a stay was unavailable to UTC at the time Liquidia submitted its amendment (July 2023) and when FDA allegedly "accepted" that amendment (September 2023) because the '327 patent was not issued and submitted for listing until November 28, 2023, *id.*, ¶ 56. UTC's assumption that it would have obtained a 30-month stay thus relies on speculation that, had FDA rejected Liquidia's amendment, Liquidia would have then filed a second new drug application—and would not have done so until after the '327 patent was listed. Not only is this speculative, it is implausible given that Liquidia has *expressly disclaimed* an intent to do so, Ex. 1 at 56:6-8 ("Liquidia is not going to and does not have to as a matter of law file a new NDA even if the amendment is ultimately rejected by FDA in this case."); and it presumes that Liquidia would not simply wait for its application with the PAH indication to be approved and then submit a supplement to its application to add the PH-ILD indication without having

17

to pay the multi-million-dollar filing fee a new application would require. For that reason, UTC also fails to show redressability because it is clear that Liquidia does not intend to file a new drug application that could trigger a 30-month stay.

UTC fails to establish standing because any alleged harm can only issue from FDA's ultimate approval of Liquidia's amended application, and that is an uncertain contingency too remote to support standing. Thus, UTC's Complaint should be dismissed.

## II.   UTC fails to state a claim.

### A.   UTC fails to allege final agency action.

Even if the Court finds subject-matter jurisdiction, UTC's Complaint still should be dismissed under Rule 12(b)(6). For the reasons stated above in Section I, *see supra* pp. 9-13, there is no agency action, much less final agency action, in UTC's suit. The APA only provides a cause of action to review final agency action. *Holistic Candlers*, 664 F.3d at 943. Absent a final agency action, a "complaint is not cognizable under the APA and *must* be dismissed for failure to state a claim." *Id.* at 946 (emphasis added).

### B.   UTC has an adequate remedy in the Second Patent Litigation.

UTC can assert APA claims in this Court only if it has no other "adequate remedy." 5 U.S.C. § 704. To qualify as adequate, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). Where no "yawning gap" exists between the relief offered under the APA and that offered through the alternative avenue, the alternative is adequate. *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*,

846 F.3d 1235, 1246 (D.C. Cir. 2017). That is so even if the plaintiff may not be able to obtain all the relief it might have obtained under the APA, *id.* at 1244, the adequate remedy involves a claim against a private party, *Garcia*, 563 F.3d at 522, or that remedy is practically less effective than relief against the agency, *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983).

The doctrine applies even when a party claims that a federal agency has failed to enforce the law against a third-party. UTC cannot "maintain an action under the APA directly against a federal agency for failure to investigate and rectify the wrongdoing of a third party where Congress had provided the plaintiff with a private right of action against the third party." *Garcia*, 563 F.3d at 524-25 (describing development of the adequate remedy jurisprudence). "The relevant question under the APA . . . is not whether private lawsuits against the third-party wrongdoer are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate." *Id.* at 525.

*Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23 (D.D.C. 2022), illustrates the operation of this doctrine. There, the court held that patent litigation between private parties provided an adequate alternative remedy to an APA suit against FDA. *Id.* at 31-33. The court explained that "the test for determining adequacy of relief is not whether there is perfect alignment of the legal 'questions' before the respective courts," but whether "the remedies available to the plaintiff" can "put the plaintiff in the position in which they seek to be placed." *Id.* at 33. In short, "the adequate remedy inquiry focuses on the outcome sought by the movant rather than the questions they raise in their

pleadings." *Id.* at 34. "Indeed, the outcome available in the alternative cause of action need not even be 'as effective as an APA lawsuit' so long as the remedy is of the 'same genre.'" *Id.* (internal citations omitted); *see also Manafort v. Dep't of Justice*, 311 F. Supp. 3d 22, 32 (D.D.C. 2018) (holding adequate remedy precluded APA claim despite different scope of available relief because "the law does not require that a claimant must be able to obtain an identical remedy elsewhere, as long as the legal avenue available to him provides an 'adequate' one").

Here, UTC seeks relief from what it alleges is an improper amendment to Liquidia's NDA, the effect of which is an alleged loss of a 30-month stay of approval of that NDA while litigating the Second Patent Litigation. UTC has available an adequate alternative remedy in the Second Patent Litigation, as its experience seeking preliminary relief there shows. In the Second Patent Litigation, UTC is currently seeking the same genre of relief that it previously sought here: a preliminary injunction prohibiting Liquidia from manufacturing, selling, or distributing Yutrepia for PH-ILD pending a decision on infringement of the '327 patent. Mot. for Preliminary Injunction, ECF No. 25, Second Patent Litigation (D. Del. Feb. 26, 2024). UTC already (unsuccessfully) sought that relief in this case by requesting a preliminary injunction against FDA's anticipated approval. The party that UTC is seeking to enjoin in this Court and in the District of Delaware may differ—FDA or Liquidia—but that presents no practical difference for UTC as relief in either court would avoid UTC's claimed harm: the introduction of the allegedly infringing product into the market. The same "genre" of relief is therefore

available in both cases, even if UTC was unsuccessful in obtaining preliminary relief here. That alone is enough to preclude an APA claim.

In addition, an adequate alternative remedy is available beyond the preliminary injunction stage because the same "genre" of relief is available. In this case, the relief that UTC seeks is a 30-month stay of the approval of Liquidia's amended application while UTC litigates the Second Patent Litigation. Compl. Prayer for Relief ¶¶ (c)-(e). If UTC is correct that the ultimate relief available in this case is a 30-month stay, its claims also fail because under 35 U.S.C. § 271(e)(4)(A), a court can prohibit FDA approval of an NDA until the expiration of an infringed patent, a remedy that can last longer and be more potent than a 30-month stay. A Section 271(e)(4)(A) order is available in the Second Patent Litigation, and UTC is pursuing that relief. Indeed, the court in the First Patent Litigation issued such an order, since vacated,[3] prohibiting FDA approval of Liquidia's application until expiration of the '793 patent.

In short, UTC can pursue relief in the Second Patent Litigation that would avoid the introduction of Liquidia's product into the market, which is the basis of its claimed harm here. Compl. ¶ 72. Because the Second Patent Litigation affords UTC an adequate remedy, it cannot proceed under the APA before this Court.

---

[3] On March 28, 2024, the court in the First Patent Litigation vacated the portion of its order that prohibited approval of Liquidia's application.

## CONCLUSION

For the foregoing reasons, the Court should grant the Federal Defendants' motion to dismiss.

DATED: May 7, 2024                        Respectfully submitted,

                                          /s/ *Samuel Ballingrud*
                                          SAMUEL BALLINGRUD
                                          NOAH T. KATZEN
                                          Trial Attorneys
                                          Consumer Protection Branch
                                          Civil Division
                                          U.S. Department of Justice
                                          PO Box 386
                                          Washington, DC  20044-0386
                                          (202) 514-6786 (Ballingrud)
                                          (202) 305-2428 (Katzen)
                                          (202) 514-8742 (fax)
                                          Samuel.B.Ballingrud@usdoj.gov
                                          Noah.T.Katzen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

May 7, 2024                                              /s/ *Samuel Ballingrud*
                                                              SAMUEL BALLINGRUD