# EXHIBIT 1

1    unwound so that Liquidia would be in the position of having to
2    file a brand-new NDA now, because it's that filing of a
3    brand-new NDA, after patents have already been listed, that
4    gives rise to the right to a 30-month stay.
5         And a point that I think has not come out sufficiently in
6    the arguments yet today is that Liquidia is not going to and
7    does not have to as a matter of law file a new NDA even if the
8    amendment is ultimately rejected by FDA in this case.  And
9    that's because Liquidia has the right to supplement its NDA
10   after it's been approved.  There are two ways to modify an NDA:
11   amendments, which are changes made before FDA approval, and then
12   supplements, which are changes made after NDA approval.
13        And I think it's undisputed in this case that Liquidia has
14   the right to supplement even if FDA rejects this amendment.  And
15   I'll point the Court to three things.  First, the bundling
16   guidance, which UTC rests its entire case on, says explicitly on
17   page 5 that new indications can be added by supplement.  Second,
18   in its brief on page 13, FDA noted that Liquidia can supplement.
19        And I'd also point out that UTC itself supplemented.  That
20   is how the UTC got the PH-ILD indication added to its own NDA.
21   It supplemented after approval.  So by its own conduct, UTC has
22   to acknowledge that Liquidia could do the same thing, could
23   supplement after approval.
24        And the reason this is critical is back to the text of
25   section (c)(3)(C).  It says not only newly listed patents don't

1   to clear threshold hurdles to judicial review is ipso facto
2   unlikely to succeed on the merits, and those threshold hurdles
3   can include justiciability hurdles.  See, for example,
4   *Electronic Privacy Information Center v. Department of Commerce*,
5   928 F.3d 95, 104 (D.C. Cir. 2019).
6        So here, UTC has a significant finality problem.  UTC only
7   has a cause of action under the APA if there has been final
8   agency action.  To be final, agency action must generally meet
9   two requirements.  First, it must mark the consummation of the
10  agency's decisionmaking process rather than being of a merely
11  tentative or interlocutory nature; and second, it must be one by
12  which rights or obligations have been determined or from which
13  legal consequences will flow.
14       That's the *Bennett v. Spear* test, more recently set out in
15  *Army Corps of Engineers v. Hawkes*, 578 U.S. 590, jump cite 597,
16  2016.
17       The first requirement, which is what I will focus on, is
18  not met here.  FDA has neither issued a decision on Liquidia's
19  pending application, nor a decision on the issues raised in
20  UTC's December 2023 letter.  Indeed, the agency has consistently
21  represented that it is still actively considering the questions
22  at the heart of UTC's complaint in this case.
23       UTC maintains that the agency's September 2023
24  communications constituted a sufficiently definitive statement
25  of the agency's position and that the agency is unlikely to

1  change its mind.  I am not persuaded.

2       UTC hasn't directed the Court to any case law finding
3  finality in analogous circumstances with a relatively informal
4  initial decision -- and I'll put "decision" in quotation
5  marks -- and where the agency is affirmatively representing that
6  it has not reached final decision on relevant issues.  FDA's
7  representation here that it hasn't reached a final decision is
8  entitled to some weight.  See *NASDAQ Stock Market LLC v. SEC*, 1
9  F.4th 34, jump cite 38 (D.C. Cir. 2021).

10      And to accept UTC's argument would put the Court in the
11 position of opining on a nuanced regulatory question that FDA is
12 grappling with, as represented by counsel, on a continuing
13 basis.  And that would be before the relevant agency has weighed
14 in on the question.

15      I note that there are other threshold questions, including
16 standing, and whether the patent litigation affords UTC an
17 adequate remedy.  I'm not going to reach those questions at this
18 moment, but FDA and Liquidia are of course free to renew or
19 continue their arguments on those points in the future.

20      So I conclude that as the case stands before me today, UTC
21 has not demonstrated final agency action and therefore is
22 unlikely to succeed on the merits of its current claim for a
23 preliminary injunction or a temporary restraining order.  I will
24 thus deny UTC's motion.  Because UTC has such a low likelihood
25 of success based on that preliminary jurisdictional problem, the