## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United Therapeutics Corporation,<br>Plaintiff,<br><br>v.<br><br>U.S. Food & Drug Administration, *et al.*,<br>Defendants,<br><br>&<br><br>Liquidia Technologies, Inc.,<br>Defendant-Intervenor. | Case No. 24-cv-484-JDB |

### Reply in Support of Federal Defendants' Motion to Dismiss

SAMUEL BAGENSTOS
General Counsel
Department of Health and Human
  Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4397
Silver Spring, MD 20993

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
  General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director

HILARY K. PERKINS
Assistant Director

SAMUEL BALLINGRUD
NOAH T. KATZEN
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 514-6786 (Ballingrud)
(202) 305-2428 (Katzen)
(202) 514-8742 (fax)
Samuel.B.Ballingrud@usdoj.gov
Noah.T.Katzen@usdoj.gov

**TABLE OF CONTENTS**

ARGUMENT ......................................................................................................................... 2

    I.    This Court lacks subject matter jurisdiction.............................................................. 2

       A.    UTC's claims are not ripe. .............................................................................. 2

       1.   UTC's claims are not fit for review. ............................................................... 2

       2.   UTC does not face hardship from deferring review. ...................................... 5

       B.    UTC lacks standing. ......................................................................................... 6

    II.   UTC fails to state a claim under the APA ................................................................. 9

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Avadel CNS Pharms., LLC v. Becerra,*
  638 F. Supp. 3d 23 (D.D.C. 2022) ..................................................................... 10

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................................................... 2, 3, 4

*Gonzales Boisson v. Pompeo,*
  459 F. Supp. 3d 7 (D.D.C. 2020) ................................................................. 10, 11

*City of Dover v. EPA,*
  36 F. Supp. 3d 103 (D.D.C. 2014) ...................................................................... 3

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ....................................................................................... 6, 7

*Dep't of Transp. v. Pub. Citizen,*
  541 U.S. 752 (2004) ............................................................................................ 5

*Garcia v. Vilsack,*
  563 F.3d 519 (D.C. Cir. 2009) ....................................................................... 9, 10

*Holistic Candlers & Consumers Ass'n v. FDA,*
  664 F.3d 940 (D.C. Cir. 2012) ............................................................................ 2

*Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs,*
  482 U.S. 270 (1987) ............................................................................................ 5

*N.Y. Reg'l Interconnect, Inc. v. FERC,*
  634 F.3d 581 (D.C. Cir. 2011) ............................................................................ 8

*Nat. Res. Def. Council v. EPA,*
  643 F.3d 311 (D.C. Cir. 2011) ............................................................................ 3

*Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n,*
  680 F.2d 810 (D.C. Cir. 1982) ............................................................................ 2

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) ............................................................................................ 5

*Outland v. Civil Aeronautics Bd.,*
  284 F.2d 224 (D.C. Cir. 1960) ............................................................................ 5

*Teva Pharms. USA, Inc. v. Azar,*
  369 F. Supp. 3d 183 (D.D.C. 2019) ..................................................................... 8

*Women's Equity Action League v. Cavazos,*
  906 F.2d 742 (D.C. Cir. 1990) .......................................................................... 11

**Statutes**

5 U.S.C. § 704 ............................................................................................................. 9, 10

21 U.S.C. § 355(c)(3)(C) ................................................................................................. 5

35 U.S.C. § 271(e)(4)(A) ................................................................................................. 9

**Regulations**

21 C.F.R. §
   314.101 ................................................................................................................. 3, 4

   314.101(a) ............................................................................................................... 3

**Other Authorities**

FDA MAPP 6025.4, Good Review Practice: Refuse to File  ................................................. 3

In its opposition to Federal Defendants' motion to dismiss, United Therapeutics Corporation (UTC) fails to overcome the "significant finality problem" this Court previously identified when denying the preliminary injunction. ECF No. 37-3 at 72:6. Nothing in UTC's Opposition demonstrates that FDA has "accepted" Liquidia's amendment, let alone approved it. Nor does UTC show that FDA has reached any final (or even tentative) position on the propriety of that amendment or taken any action which determines rights or obligations or produces legal consequences. UTC's challenge thus remains unripe.

UTC also fails to establish standing. It has two theories: (1) that UTC would have obtained a 30-month stay if FDA had rejected Liquidia's amendment and Liquidia had then submitted a second new drug application (NDA), and (2) that FDA will soon approve Liquidia's amended application and thus erode UTC's market position. Both theories depend on impermissible speculation and counterfactuals. The first theory tries to establish UTC's injury and redressability by speculating that, had FDA rejected Liquidia's amendment or this Court ruled in UTC's favor, Liquidia would respond by filing a second NDA—something Liquidia has said it would not do. The second theory assumes that FDA will approve Liquidia's application as amended when the agency has given no indication it will do so. Standing cannot rest on such speculative theories.

Finally, lack of jurisdiction aside, UTC has no cause of action. Not only has it failed to identify final agency action, but it has an adequate remedy in the Second Patent Litigation against Liquidia where UTC seeks the same "genre" of relief sought in this

litigation—delaying Yutrepia's market entry for the PH-ILD indication. For all these reasons, the Court should grant FDA's motion to dismiss.

A<span style="font-variant:small-caps">RGUMENT</span>

### I.    This Court lacks subject matter jurisdiction.

### A.  UTC's claims are not ripe.

UTC's claims are not ripe because UTC does not challenge any agency action, much less final agency action. Ripeness turns on "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 680 F.2d 810, 817 n.19 (D.C. Cir. 1982). Absent final agency action, UTC's claims are not fit for review, and because UTC does not face any hardship from deferring review, the Court should dismiss the Complaint as unripe.

### 1.  UTC's claims are not fit for review.

A dispute "is not ripe if it is not fit," and it "is not fit if it does not involve final agency action." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 n.4 (D.C. Cir. 2012); *see also Nat. Res. Def. Council*, 680 F.2d at 817 n.19 (holding that fitness depends on "whether the agency's action is final within the meaning of § 10(c) of the APA"). Final agency action, in turn, is an "agency action" (1) that marks the consummation of the agency's decisionmaking process and (2) by which rights or obligations are determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). UTC has not challenged any agency action by FDA, much less final agency action. FDA has not "accepted" Liquidia's amendment or determined that the amendment is proper. And even if FDA's non-rejection of Liquidia's amendment upon submission could be viewed

2

as "agency action," that "action" did not mark the consummation of FDA's decisionmaking on the propriety of Liquidia's amendment. Nor did it determine any rights or obligations or produce legal consequences. Having failed to establish either *Bennett* prong, UTC's claims are not fit for judicial review and are therefore unripe.

Contrary to UTC's argument, Opp. 22-23, Federal Defendants are not "conflat[ing] APA review requirements with Article III jurisdiction." The lack of final agency action may *both* deprive the court of subject-matter jurisdiction *and* mean that a plaintiff is unable to state a claim. *See, e.g.*, *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 319 (D.C. Cir. 2011) (noting that the "jurisdictional issues—finality and ripeness—turn on the same question" of whether there is final agency action); *City of Dover v. EPA*, 36 F. Supp. 3d 103, 119 (D.D.C. 2014) (holding that a plaintiff must establish ripeness "[t]o satisfy Article III").

In support of its contention that it challenges "agency action," UTC incorrectly asserts that FDA's "acceptance" of Liquidia's amendment "is plainly an 'order.'" Opp. 27. But FDA has *not* accepted Liquidia's amendment and UTC fails to identify any action by FDA that constitutes such "acceptance." Instead, UTC assumes that such an "acceptance" occurred because FDA's regulations provide for a "written, threshold determination" whether to accept an application for substantive review. *See* Opp. at 27; *see also* 21 C.F.R. § 314.101(a). Under § 314.101's filing review process, however, FDA does not assess whether amendments to an NDA may be filed. *See* FDA MAPP 6025.4, Good Review Practice: Refuse to File at 1, available at https://www.fda.gov/files/about%20fda/published/Good-Review-Practice---Refuse-to-File.pdf (clarifying that § 314.101's NDA filing review process applies only to original NDAs and supplements).

Even assuming UTC challenged an "agency action," it has failed to show that such action marked the "consummation" of FDA's decisionmaking process, as required for the first *Bennett* prong. Opp. 28. UTC points to nothing in any agency document or correspondence that addressed—much less resolved—the legal question posed by UTC's Complaint: whether Liquidia's amendment was proper. UTC relies on a single email from a staffer, Opp. 14-15 (citing ECF No. 14-3), that implied what UTC does not dispute: that the paragraph IV certifications in the amendment would not trigger a 30-month stay with respect to patents that were listed after the original application was submitted. It said nothing about whether Liquidia's amendment was proper. Indeed, the only contested question—whether Liquidia should have submitted a second NDA instead of an amendment—is simply not addressed in any of FDA's correspondence to Liquidia.[1] Nor do FDA's regulations support UTC's view that FDA made a final determination on the propriety of Liquidia's amendment. As explained above, the NDA filing review process outlined in 21 C.F.R. § 314.101 does not apply to amendments. Accordingly, there is no consummation of the agency's decisionmaking process on that question and the case should be dismissed.

As to the second *Bennett* prong, UTC also fails to establish that anything FDA did determined any rights or obligations or produced legal consequences. *See* Opp. 32.

---

[1] Contrary to UTC's argument, the agency did not "necessarily impl[y] an acceptance decision for the amendment had already been made," nor "conced[e]" this point in its opposition to the preliminary injunction. Opp. 32. FDA merely stated unambiguous black-letter law that patents which post-date an application generally do not support a 30-month stay. UTC's mischaracterization of the agency's litigation documents only underscores how hard it must work to find any relevant decision to challenge.

Rather, it was Liquidia's decision to "submit a new indication by amendment" before the relevant patent was listed that determined the availability of a 30-month stay under 21 U.S.C. § 355(c)(3)(C), not anything the agency did, and the agency is therefore not responsible for that legal consequence. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004) ("[W]here an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect.").[2]

### 2. UTC does not face hardship from deferring review.

UTC also fails to establish hardship from deferring review. To determine whether a plaintiff faces such hardship, courts look to whether the challenged actions "command anyone to do anything or to refrain from doing anything," "subject anyone to any civil or criminal liability," or create "legal rights or obligations." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Here, FDA has not commanded "anyone to do anything" or acted to create any legal rights or obligations with respect to Liquidia's amendment. UTC also has not established that FDA will imminently approve Liquidia's product for the PH-ILD indication. But even if such approval were imminent, parties like UTC often

---

[2] UTC's response to FDA's incurably premature argument also misses the mark. Opp. 23-25. UTC relies on cases that do not involve the incurably premature doctrine and therefore do not inform the analysis or respond to the argument in Federal Defendants' motion to dismiss. *E.g.*, Opp. 23-25 (discussing *Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 279 (1987) (holding that a decision on reconsideration may sometimes be unreviewable) and *Outland v. Civil Aeronautics Bd.*, 284 F.2d 224, 227-28 (D.C. Cir. 1960) (holding that a request for reconsideration tolls the limitations period to review the initial decision)). In any event, the Court need not reach this argument if it concludes that there is no final agency action.

seek and obtain emergency relief after FDA approves the application. UTC suggests it will not get "meaningful judicial review" in the event of an FDA approval, Opp. 34, but offers no reason why that would be so.

**B.  UTC lacks standing.**

As Federal Defendants explained in their motion to dismiss, UTC lacks standing because UTC has no actual, concrete harm sufficient to meet the injury-in-fact requirement; nor can it point to any "certainly impending" injury sufficient to confer standing. Fed. Defs. Mot. at 15-18; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). UTC asserts that FDA's alleged "acceptance" of Liquidia's amendment in September 2023 deprived it of a 30-month stay of approval. But the patent at issue (the '327 patent) was not issued and submitted for listing in the Orange Book until November 2023, Compl. ¶ 56, so UTC did not have the "statutory entitlement" it now claims it lost. Opp. 17. UTC must therefore assume that if FDA had rejected Liquidia's amendment, Liquidia not only would have filed a second NDA but would not have done so until after the '327 patent was listed in the Orange Book. In addition, any future economic injury to UTC from the introduction of Liquidia's PH-ILD product into the market is contingent on FDA's approval of Liquidia's application as amended, which is too uncertain to support standing.

At the outset, UTC wrongly asserts that the loss of a 30-month stay is a "concrete" and "actual" injury for Article III purposes. Opp. 18 & 20. The only harms it claims from this bare alleged statutory violation are the non-fulfillment of UTC's preference for the orderly litigation of its infringement claims and UTC's self-inflicted litigation costs. Opp.

18 (noting that "UTC devoted significant resources to seeking a preliminary injunction"). Such procedural rights and self-inflicted costs do not meet the requirements of Article III. Fed. Defs. Mot. at 16; *Clapper*, 568 U.S. at 418.

Contrary to UTC's assertion, Opp. 19-21, it is UTC's theories of standing that rely on speculation and counterfactuals. UTC's primary theory is that FDA's alleged "acceptance" of Liquidia's amendment deprived UTC of a statutory right to a 30-month stay while it litigates the alleged infringement of the '327 patent. Opp. 17-18. To establish that it would have had such a statutory right but for FDA's alleged actions, UTC asserts that Liquidia would have "been required to file a new original application" if FDA had rejected Liquidia's amendment. Opp. 20 (citing Compl. ¶ 58). But UTC does not specify how FDA could "require" an applicant like Liquidia to file an NDA. While Liquidia *may* have opted to file a second NDA in response to a rejection of its amendment, it is entirely speculative whether it would have done so. There would have been several options available to Liquidia that would have avoided a 30-month stay, and UTC makes no effort to address these alternatives or establish that Liquidia would have filed a new application if FDA had rejected the amendment. Fed. Defs. Mot. at 17-18 (discussing alternatives). Likewise, to establish redressability, UTC rests on the same speculation that Liquidia would *now* respond to a decision in this case in favor of UTC by submitting a second NDA, Opp. 20—something Liquidia has affirmatively stated it would not do. Fed. Defs. Mot. at 17.

Further, UTC asserts for the first time in its opposition that FDA's actions deprived it of a 30-month stay based on the '793 patent, which (unlike the '327 patent) was listed

7

at the time of Liquidia's amendment. Opp. 20-21. UTC fails to establish why this matters; its harms are based on its litigation of the '327 patent without the benefit of the stay, not the '793 patent. Regardless of which patent UTC relies on, it would have acquired a statutory right to a 30-month stay only if Liquidia had actually submitted a second NDA.

UTC's secondary theory is that it would suffer "irreversible erosion of [its] market position" if Liquidia's amended application were approved. Opp. 18-19. UTC acknowledges that this injury is contingent on the approval of Yutrepia *for PH-ILD* and not Yutrepia *for PAH*, but argues that the tentative approval of Yutrepia for PAH is a "signal" that approval of PH-ILD is sufficiently imminent. *Id.* UTC's argument fails on its own terms. Tentative approval of a drug product for one indication is not a "signal" of approval of that same drug product for a different indication. FDA has not approved Yutrepia for the PH-ILD indication or given any indication whether it will do so. Indeed, UTC's own authority recognizes that "[w]ithout tentative approval as a signal or any other indication about the status of the FDA's review, the Court has no means of assessing whether any ANDA is likely to receive approval, and if so, when that is likely to occur." *Teva Pharms. USA, Inc. v. Azar*, 369 F. Supp. 3d 183, 203 (D.D.C. 2019).

UTC's asserted injuries rest on speculation and "a hypothetical chain of events, none of which is certain to occur." *N.Y. Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011). UTC fails to establish standing because any alleged harm can only issue from FDA's ultimate approval of Liquidia's amended application, and that is an uncertain contingency far too remote to support standing. Thus, UTC's Complaint should be dismissed.

## II.   UTC fails to state a claim under the APA.

A claim under the Administrative Procedure Act is only available if a plaintiff challenges a "final agency action" for which the plaintiff has no other "adequate remedy." 5 U.S.C. § 704. As explained above, UTC does not challenge a "final agency action." *Supra* pp. 2-5. UTC also has an "adequate remedy" because, as Federal Defendants explained in their motion to dismiss, UTC can obtain the "same genre" of relief through its patent litigation. Fed. Defs. Mot. at 18-21.

In this litigation, UTC seeks to delay entry onto the market of Yutrepia for PH-ILD, which it alleges will cause it harm. *E.g.*, Opp. 17, 18, 32-33. That relief is also available in the Second Patent Litigation through a preliminary injunction or an order under 35 U.S.C. § 271(e)(4)(A), which allows a court to stay the effective date of any FDA approval of an NDA until the expiration of an infringed patent.[3] Indeed, the court in the Second Patent Litigation recognized as much in denying UTC's preliminary injunction. Second Patent Litigation, ECF No. 96 at 26 (noting that "[w]ithout FDA approval, an injunction would indeed leave Defendant [Liquidia] in the same position as it was in before").

In response, UTC argues that these are not "adequate" remedies of the same "genre," but its arguments conflict with controlling precedent. Under *Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009), it is not relevant to the adequate-remedy inquiry that the

---

[3] Although UTC's request for a preliminary injunction was denied in the Second Patent Litigation, this development does not alter the adequate remedy analysis. UTC can still seek a stay of the effective date of any FDA approval through a § 271(e)(4)(A) order.  UTC can also renew its request for an injunction or seek appellate review of the denial of its request for an injunction.

Second Patent Litigation "will not actually result in a determination of the underlying legal question presented in this lawsuit," or that it will not directly address "the legality of FDA's decision." Opp. 36. *Garcia* held that a non-APA claim against a private party was an adequate remedy under § 704 even though that remedy "would not vindicate appellants' interest in ensuring that the USDA adheres to its duty-to-investigate regulations." *Garcia*, 563 F.3d at 525. Nor does it matter that FDA is not a defendant in the patent litigation. *Id.* (holding that "a direct action against a regulated private party was an adequate remedy at law for whatever additional injury a plaintiff suffered as a result of a federal agency's failure to remedy that violation administratively"). Although UTC also seeks to distinguish *Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23 (D.D.C. 2022), Opp. 37-38, its efforts amount to little more than restating its erroneous focus on FDA's compliance with its regulations. Opp. 38 (distinguishing *Avadel* because "UTC's legal challenge is directed at FDA's disregard of its own rules"). Both *Avadel* and *Garcia* make clear that the adequate remedy inquiry rests on the *outcome* offered by the alternative cause of action—not on whether the Second Patent Litigation will address the propriety of FDA's alleged "acceptance" of Liquidia's amendment.

*Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7 (D.D.C. 2020), is not to the contrary. The declaratory relief sought in that case—resolving Plaintiff's citizenship—was only available from a federal defendant and could only come by answering a discrete legal question regarding plaintiff's citizenship and parentage. *Id.* at 10-11, 13-14. Here, on the other hand, the relief UTC seeks is to avoid Yutrepia's market entry for PH-ILD, and UTC does not deny that the Second Patent Litigation can lead to that same outcome. In

addition, UTC's ability to seek a preliminary injunction in the patent litigation is nothing like the arduous non-APA path available to the plaintiff in *Boisson*, where the plaintiff faced a "complicated and onerous" process that involved multiple preliminary steps before culminating in a habeas corpus proceeding. *Id.* at 13-14. UTC faces no such procedural hurdles; filing a patent infringement claim is in fact a precondition to the 30-month stay it seeks. UTC's focus on the different legal standards in this case and in the Second Patent Litigation—and consequently the different probability of success—is simply not a relevant factor. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) ("imperfect" adequate remedy, though "more arduous and less effective," nonetheless precludes APA claim). UTC has, and is pursuing, an adequate remedy in the Second Patent Litigation. It thus fails to state a claim under the APA, and its Complaint must be dismissed.

CONCLUSION

For the foregoing reasons, the Court should grant Federal Defendants' motion to dismiss.

DATED: June 25, 2024                    Respectfully submitted,

                                        */s/ Samuel Ballingrud*
                                        SAMUEL BALLINGRUD
                                        D.D.C. Bar No.: CO00116
                                        NOAH T. KATZEN
                                        D.C. BAR NO. 1014909
                                        Trial Attorneys

11

Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC  20044-0386
(202) 514-6786 (Ballingrud)
(202) 305-2428 (Katzen)
(202) 514-8742 (fax)
Samuel.B.Ballingrud@usdoj.gov
Noah.T.Katzen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

June 25, 2024                                    /s/ Samuel Ballingrud
                                                 SAMUEL BALLINGRUD